# United States District Court

FOR THE

**NORTHERN DISTRICT OF CALIFORNIA**

VENUE: SAN FRANCISCO

FILED

2014 JUL 17 P 2: 14

HEATHERN DISTRICT COURT
DISTRICT COURT
DISTRICT OF CALIFORNIA

WHO

---

UNITED STATES OF AMERICA,

V.

## CR 14 380

FEDEX CORPORATION,
FEDEX EXPRESS, INC., and
FEDEX CORPORATE SERVICES, INC.,

DEFENDANT(S).

---

# INDICTMENT

VIOLATIONS:
21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances;
21 U.S.C. § 841 – Distribution of Controlled Substances;
18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs;
21 U.S.C. §§ 331, 333, and 353 – Misbranding Drugs;
18 U.S.C. § 982; 21 U.S.C. § 853 and 28 U.S.C. § 2461 – Forfeiture

---

A true bill.

*Nancy J. Peterson*
Foreman

Filed in open court this ___17th___ day of

___July 2014___.

*Rose Maler* ROSE MAHER
Clerk

NANDOL J. VADAS    Bail, $ *Summons for July 29, 2014  9:30*
U.S. MAGISTRATE JUDGE        *before MBJ*        A.M.

## DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: ☐ COMPLAINT   ☐ INFORMATION   ☒ INDICTMENT
☐ SUPERSEDING

─── OFFENSE CHARGED ───

See Attached

☐ Petty
☐ Minor
☐ Misde-
meanor
☒ Felony

PENALTY:   See Attached

─── Name of District Court, and/or Judge/Magistrate Location ───

NORTHERN DISTRICT OF CALIFORNIA

─ DEFENDANT - U.S ─

FEDEX CORPORATION, FEDEX EXPRESS, INC., FEDEX
CORPORATE SERVICES, INC.   ➕

DISTRICT COURT NUMBER

─────────── DEFENDANT ───────────

**IS *NOT* IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) ☒ If not detained give date any prior
summons was served on above charges ➡

2) ☐ Is a Fugitive

3) ☐ Is on Bail or Release from (show District)

**IS IN CUSTODY**

4) ☐ On this charge

5) ☐ On another conviction   } ☐ Federal ☐ State

6) ☐ Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution

─── PROCEEDING ───

Name of Complaintant Agency, or Person (& Title, if any)

DEA, FDA

☐ person is awaiting trial in another Federal or State Court,
give name of court

☐ this person/proceeding is transferred from another district
per (circle one) FRCrp 20, 21, or 40.  Show District

☐ this is a reprosecution of
charges previously dismissed
which were dismissed on motion
of:
☐ U.S. ATTORNEY   ☐ DEFENSE   } SHOW DOCKET NO.

☐ this prosecution relates to a
pending case involving this same
defendant

☐ prior proceedings or appearance(s)
before U.S. Magistrate regarding this
defendant were recorded under   } MAGISTRATE CASE NO.

Name and Office of Person
Furnishing Information on this form   MELINDA HAAG
☒ U.S. Attorney ☐ Other U.S. Agency

Name of Assistant U.S.
Attorney (if assigned)   KIRSTIN M. AULT

Has detainer ☐ Yes
been filed?   ☐ No   } If "Yes"
give date
filed

DATE OF
ARREST ➡   Month/Day/Year

Or... if Arresting Agency & Warrant were not

DATE TRANSFERRED
TO U.S. CUSTODY ➡   Month/Day/Year

☐ This report amends AO 257 previously submitted

─── ADDITIONAL INFORMATION OR COMMENTS ───

PROCESS:
☒ SUMMONS ☐ NO PROCESS* ☐ WARRANT   Bail Amount:

If Summons, complete following:
☒ Arraignment ☐ Initial Appearance
Defendant Address:

*Where defendant previously apprehended on complaint, no new summons or
warrant needed, since Magistrate has scheduled arraignment

Date/Time: July 29, 2014 9:30 a.m.   Before Judge: Maria-Elena James

Comments: Summons should be provided to DEA SA Jason Chin for service.

## ATTACHMENT TO PENALTY SHEET

**Counts 1 and 12**: 21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances
Maximum Penalties:

*For conduct prior to April 13, 2009*:

5 years of probation and a fine of up to $1,000,000 or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

*For conduct after April 13, 2009*:

5 years of probation and a fine of up to $2,500,000 (Schedule III) or $1,000,000 (Schedule IV), or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

**Counts 2-10 and 13-14**: 21 U.S.C. § 841 – Distribution of Controlled Substances
Maximum Penalties:

Same as for Counts 1 and 12.

**Counts 11 and 15**: 18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs
Maximum Penalties

5 years of probation and a fine of up to $500,000 or twice the gross gain derived from the offense up to $820,000,000, whichever is greater.

**Forfeiture**: 18 U.S.C. § 982; 21 U.S.C. § 853, and 28 U.S.C. § 2461

Any property constituting or derived from any proceeds defendants obtained, directly or indirectly, as a result of the violations and any property used or intended to be used to commit or facilitate the commission of the violations, as well as any property traceable to such property and any substitute assets.

1 | MELINDA HAAG (CABN 132612)
United States Attorney

2

*FILED*
*2014 JUL 17 P 2: 14*

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

**WHO**

9 NORTHERN DISTRICT OF CALIFORNIA

10 SAN FRANCISCO DIVISION

**CR 14 380**

11 | UNITED STATES OF AMERICA, ) NO. CR

12 | Plaintiff, ) VIOLATIONS: 21 U.S.C. § 846 – Conspiracy to
) Distribute Controlled Substances;
13 | v. ) 21 U.S.C. § 841 – Distribution of Controlled
) Substances;
14 | FEDEX CORPORATION, ) 18 U.S.C. § 371 – Conspiracy to Distribute
FEDEX EXPRESS, INC., and ) Misbranded Drugs;
15 | FEDEX CORPORATE SERVICES, INC., ) 21 U.S.C. §§ 331, 333, and 353 – Misbranding Drugs;
) 18 U.S.C. § 982; 21 U.S.C. § 853 and 28 U.S.C.
16 | Defendants. ) § 2461 – Forfeiture
)
17 | ) SAN FRANCISCO VENUE
)
18 | )
)
19 | )

20 INDICTMENT

21 The Grand Jury charges:

22 INTRODUCTORY ALLEGATIONS

23 At all times relevant to this indictment:

24 Defendants

25 1. Defendants FEDEX CORPORATION, FEDEX EXPRESS, INC. ("FEDEX EXPRESS"),

26 and FEDEX CORPORATE SERVICES, INC. ("FEDEX SERVICES") (collectively, "FEDEX"), were

27 package delivery companies and providers of specialized transportation and logistics services that

28 delivered packages to persons located in the Northern District of California and throughout the United

INDICTMENT

1  States. FEDEX EXPRESS and FEDEX SERVICES were wholly owned subsidiaries of FEDEX
2  CORPORATION.

3                                    Summary of Alleged Conduct

4  A.    Illegal Internet Pharmacies

5        2.      Beginning in approximately 1998, numerous companies began offering consumers
6  prescription drugs, including controlled substances, based on the provision of information over the
7  Internet. These companies came to be known as Internet or online pharmacies, both terms used
8  interchangeably throughout this indictment. Some Internet pharmacies were managed by well-known
9  pharmacy chains that required valid prescriptions and visits to the patient's personal physician before an
10 order was filled. Others failed to require a prescription before filling orders for any drugs, and
11 distributed controlled substances and prescription drugs based solely on the completion of an online
12 questionnaire, without a physical examination, diagnosis, or face-to-face meeting with a physician.
13 Such practices violated federal and state laws governing the distribution of prescription drugs and
14 controlled substances.

15       3.      Internet pharmacies generally operated websites that advertised the sale of various
16 controlled substances and prescription drugs. Through the websites, customers typically placed orders
17 for drugs by answering an online questionnaire calling for basic information such as height, weight and
18 date of birth, making payment arrangements, and providing a shipping address. Internet pharmacies
19 worked with fulfillment pharmacies that carried an inventory of controlled substances and prescription
20 drugs. After filling the order referred by the Internet pharmacy, the fulfillment pharmacy delivered the
21 drugs to the customer by a shipper such as FEDEX.

22       4.      From at least as early as 2004, on no less than six different occasions, the DEA, FDA, or
23 members of Congress and their staff informed FEDEX that illegal Internet pharmacies were using its
24 shipping services to distribute controlled substances and prescription drugs in violation of the Controlled
25 Substances Act (CSA) and Food Drug and Cosmetic Act (FDCA). These government officials informed
26 senior FEDEX management that a prescription based solely on a customer's completion of an online
27 questionnaire was invalid and that controlled substances and prescription drugs dispensed based on such
28 an invalid prescription were distributed in violation of the CSA, FDCA, and numerous state laws. The

2

1 government officials similarly informed FEDEX that doctors writing such prescriptions and pharmacists
2 filling them were acting outside the usual course of professional practice and not for a legitimate
3 medical purpose, according to guidelines published by the American Medical Association (AMA),
4 Federation of State Medical Boards (FSMB), and National Association of Boards of Pharmacy (NABP).

B.    The Chhabra-Smoley Organization and Superior Drugs

5.    During the time covered by this indictment, FEDEX shipped controlled substances and
prescription drugs for two illegal Internet pharmacy organizations, among others: (1) the Chhabra-
Smoley Organization, which operated a network of illegal Internet and fulfillment pharmacies through
its principals Vincent Chhabra and Robert Smoley, and (2) Superior Drugs, which was an illegal
fulfillment pharmacy that filled drug orders for illegal Internet pharmacies. FEDEX knew that the
Chhabra-Smoley Organization and Superior Drugs were each distributing controlled substances and
prescription drugs based solely on a customer's completion of an online questionnaire, and that these
organizations were distributing drugs outside the usual course of professional practice and not for a
legitimate medical purpose in violation of the law. Nevertheless, FEDEX continued to ship controlled
substances and prescription drugs for the Chhabra-Smoley Organization and Superior Drugs.

6.    In 2003, the DEA shut down RxNetwork, the Chhabra-Smoley Organization's primary
fulfillment pharmacy, and Chhabra was arrested for violating the CSA. FedEx learned of these events
promptly after they occurred, but FEDEX continued to distribute controlled substances and prescription
drugs for the Chhabra-Smoley Organization through Internet and fulfillment pharmacies that were
controlled by and affiliated with Smoley and other members of the Chhabra-Smoley Organization.
FEDEX knew of the connection between these Internet and fulfillment pharmacies and RxNetwork and
Chhabra as demonstrated by the principals, company names, shipping addresses and billing addresses
that were initially connected to Chhabra and RxNetwork and remained common to Smoley and the
members of the Chhabra-Smoley Organization who continued operations after Chhabra's arrest.
FEDEX's employees explicitly recognized this connection. For example, in a discussion with FEDEX
managers in the Sales and Revenue Operations departments, one employee stated that the controller for
Smoley's Internet pharmacy Icom had two other Internet pharmacy accounts: RxNetwork and Dipardi
Pharmacy, another fulfillment pharmacy used by Chhabra prior to his arrest.

INDICTMENT

3

1    7.    In addition to knowing that Superior Drugs illegally distributed controlled substances and
2  prescription drugs based on an online questionnaire, FEDEX knew that Superior Drugs filled orders for
3  Internet pharmacies that were shut down by the DEA or other law enforcement agencies. FEDEX
4  further knew Superior Drugs would fill orders for Internet pharmacies after a fulfillment pharmacy they
5  had been using was shut down by law enforcement. Despite this knowledge, FEDEX continued to
6  distribute controlled substances and prescription drugs for Superior Drugs. For example, when the DEA
7  closed the Waterview fulfillment pharmacy in Maryland, employees in FEDEX's Sales department
8  discussed the fact that CNL Financial, an Internet pharmacy that had used Waterview, had transferred its
9  orders to Superior Drugs. FEDEX continued to ship controlled substances and prescription drugs for
10  CNL Financial from Superior Drugs.

11  C.    FEDEX's Internet Pharmacy Policies

12    8.    By 2004, illegal Internet pharmacies increasingly were being investigated and closed by
13  DEA and other law enforcement and government agencies, which in turn affected FEDEX's revenue.
14  During this time, Internet pharmacy customers were increasingly causing safety issues for FEDEX
15  drivers in their efforts to secure the controlled substances and prescription drugs they had ordered
16  online. In response to these issues, FEDX enacted policies and procedures that allowed FEDEX to
17  continue to ship controlled substances and prescription drugs for illegal Internet pharmacies while
18  protecting against lost revenue and addressing its employees' compensation and safety issues.

19    i.    *FEDEX's Online Pharmacy Credit Policy*

20    9.    In virtually all cases, when law enforcement closed an illegal Internet pharmacy, FEDEX
21  was unable to collect outstanding accounts payable from that customer. To address this issue, beginning
22  in June 2004, FEDEX established an Online Pharmacy Credit Policy that applied only to its Internet
23  pharmacy shippers. Under this policy, all Internet pharmacy shippers had to be approved by the Credit
24  Department prior to opening a new account. Existing Internet pharmacies had to be reviewed by the
25  Credit Department to ensure that they had adequate financial security. In arguing for the Online
26  Pharmacy Credit Policy, FEDEX's Managing Director of Revenue Operations stated "[a]s the past few
27  weeks have unfolded it is becoming more apparent to us that many of these companies are fraudulent
28  and doing business outside Federal regulations." After receiving this e-mail, FEDEX's Vice President

INDICTMENT

4

1    of Worldwide Revenue Operations approved FEDEX's continued shipment of drugs pursuant to the
2    proposed Online Pharmacy Credit Policy. The policy was also approved by FEDEX EXPRESS's Chief
3    Financial Officer and FEDEX SERVICES' President of Customer Information Services and Senior Vice
4    President of Sales.

5       10.    By 2006, FEDEX had strengthened the Online Pharmacy Credit Policy to require that all
6    online pharmacies be placed on restricted credit terms and provide FEDEX with a security deposit or
7    bank letter of credit. On July 6, 2006, the Credit Policy was circulated to FedEx's Managing Directors
8    of Sales with the following explanation for "Why this is important": "Many of these companies operate
9    outside federal and state regulations over the sale of controlled drugs, which require diagnosis and
10    prescription by a licensed physician. Drugs purchased from these sites may be diluted or counterfeit.
11    Several sites have been shut down by the government without warning or simply disappeared leaving
12    large balances owing to FEDEX."

13       11.    Beginning in 2004, FEDEX's Credit analysts maintained a list of FEDEX's online
14    pharmacy customers that was regularly reviewed by FEDEX's Senior Manager and Managing Director
15    of Revenue Operations. As of July 2004, FEDEX employees had identified over 200 accounts that were
16    associated with online pharmacies. By September of 2010, the list had increased to over 600 online
17    pharmacy accounts.

18       *ii.    FEDEX's Use of its "Catchall" Classification for Internet Pharmacies*

19       12.    FEDEX maintained a Field Sales Department that was responsible for recruiting new
20    customers for FEDEX with potential revenue of up to approximately $1 million. Within Field Sales,
21    each employee was assigned a fiscal-year sales goal, which was a factor in FEDEX's Variable
22    Compensation Plan. A Sales employee's goal was determined, in part, by the Sales employee's previous
23    year sales. Each year, FEDEX's Sales employees were expected to increase the revenue in their
24    territory. Any customers that were lost were expected to be replaced with new customers with an equal
25    amount of revenue, so that the Sales employee could meet his or her goal for the year.

26       13.    Beginning in 2004, Sales employees began to experience revenue losses due to the
27    closure of online pharmacies by law enforcement. At the end of 2005, FEDEX's Sales Department
28    began looking for a streamlined way to address the impact on the Field Sales executives' compensation

1  caused by Internet pharmacy accounts quickly opening, shipping large amounts of express packages,
2  and then being shut down by law enforcement.

3      14.    FEDEX maintained a shipping account classification known as "catchall." Catchall
4  accounts were not assigned to specific account executives and did not affect the yearly sales goals of
5  account executives or their managers. In 2006, a group of FEDEX's Sales employees proposed that all
6  online pharmacy accounts be assigned to the catchall classification because, as one Managing Director
7  stated to the Vice President of Field Sales for the Eastern Region, "I can assure you that these types of
8  accounts will always result in a loss at some point. They have a very short lifespan and will eventually
9  be shut down by the DEA."

10     15.    On March 29, 2007, a Senior Sales Analyst sent an e-mail to Sales employees informing
11  them that any currently known online pharmacy accounts were to be moved to the "catchall"
12  classification pursuant to an agreement between the Field Sales Vice Presidents. The stated reason for
13  this policy was, "The internet pharmacy industry is governed by strict DEA laws. This type of business
14  is generally very volatile in nature (i.e., here one day and gone the next). There are often numerous
15  large volume shifts associated with internet pharmacies as they move the shipping location often to
16  avoid detection from the DEA."

17      *iii.    FEDEX's Holding of Shipments for Internet Pharmacy Customers*

18     16.    As early as 2004, FEDEX couriers and customer service agents in Kentucky, Tennessee,
19  and Virginia expressed safety concerns to their management, including the following: FEDEX trucks
20  had been stopped on the road by Internet pharmacy customers demanding packages of pills; delivery
21  addresses included parking lots, schools, and vacant homes where people would wait for deliveries of
22  drugs; customers would jump on FEDEX trucks and demand Internet pharmacy packages; FEDEX
23  drivers were threatened if they insisted on delivering a package to the address instead of giving the
24  package to the customer who demanded it; and customers would use multiple names and identification
25  documents to pick up packages of drugs.

26     17.    A FEDEX employee also raised concerns to FEDEX management that some recipients of
27  Internet pharmacy packages were engaged in "doctor shopping," were "known to be selling and using,"
28  and that "some of the recipients have overdosed and died."

INDICTMENT

6

1    18.    In response to these concerns, FEDEX's Senior Vice President of Security approved a

2  procedure whereby Internet pharmacy packages from problematic shippers were held for pick up at

3  specific stations, rather than delivered to the recipient's address. This policy was eventually expanded

4  to include all Internet pharmacy packages delivered to the stations that were experiencing concerns.

5

6  **COUNT ONE**:    (21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances)

7    19.    Paragraphs 1 through 18 are realleged and reincorporated herein by reference.

8    20.    Beginning at a time unknown to the grand jury, but no later than January of 2000, and

9  ending on or about February 20, 2008, in the Northern District of California and elsewhere, the

10  defendants,

11    FEDEX CORPORATION;
FEDEX EXPRESS, INC.; and
12    FEDEX CORPORATE SERVICES, INC.,

13  together with Vincent Chhabra, Sabina Faruqui, Robert Smoley, RxNetwork, United Mail Pharmacy

14  Services, Icom Group, and others known and unknown to the grand jury, conspired to distribute, and to

15  possess with intent to distribute outside the usual course of professional practice and not for a legitimate

16  medical purpose one or more controlled substances, knowing and intending that the distribution and

17  possession with intent to distribute was outside the usual course of professional practice and not for a

18  legitimate medical purpose, which offense involved substances containing: (a) Phendimetrazine, a

19  Schedule III controlled substance; (b) Ambien, a Schedule IV controlled substance; (c) Phentermine, a

20  Schedule IV controlled substance; (d) Diethylpropion, a Schedule IV controlled substance;

21  (e) Diazepam, a Schedule IV controlled substance; (f) Alprazolam, a Schedule IV controlled substance;

22  (g) Clonazepam, a Schedule IV controlled substance; and (h) Butalbital, a Schedule III controlled

23  substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D) and (b)(2), all of

24  which conduct was in violation of Title 21, United States Code, Section 846.

25                              Manner and Means of the Conspiracy

26  It was part of the conspiracy that:

27  A.    Operation of the Chhabra-Smoley Organization

28    21.    Unindicted co-conspirators Vincent Chhabra and Robert Smoley owned, operated and

7

INDICTMENT

1 managed a widespread organization of Internet pharmacy websites, fulfillment pharmacies, and support
2 systems for the purpose of providing controlled substances directly to consumers without valid
3 prescriptions (the "Chhabra-Smoley Organization").

4      22.    The Chhabra-Smoley Organization consisted of websites with which Chhabra and
5 Smoley were affiliated, including get-it-on.com, cybrx.com, USAPrescription.com, myrxeasy.com,
6 ezrxovernight.com, fastplanetrx.com, ezmedsonline.com, and others, which offered for sale controlled
7 substances on Schedules III and IV, by means of the Internet, to customers who were only required to
8 complete an online questionnaire and were not examined, diagnosed, or contacted by the physicians who
9 issued the prescriptions in connection with their orders.

10     23.    The Chhabra-Smoley Organization also included physicians whom Chhabra and Smoley
11 partnered with, recruited, and hired to review the customers' online questionnaires and to issue
12 prescriptions for controlled substances based solely upon the customers' responses.

13     24.    The Chhabra-Smoley Organization also included fulfillment pharmacies that Chhabra
14 and Smoley owned, operated, partnered with, and recruited throughout the United States, including
15 RxNetwork, Next Generation Health Systems, Prescriptions & Travel, Prescription Resources,
16 Lakeridge Pharmacy, C&V Pharmacy, 2U Net-Mail (Choice Rx), Rx Direct, Dipardi Pharmacy, Falks
17 Lignell (Falk's Home Medical Supply), United Mail Pharmacy Services, United Care Pharmacy, Kwic
18 Fill, and Tri-Phasic Pharmacy, among others, to fill invalid prescriptions for controlled substances and
19 to ship those controlled substances to customers in the Northern District of California and elsewhere in
20 the United States.

21     25.    The Chhabra-Smoley Organization also included employees and associates whom
22 Chhabra and Smoley hired to call, respond to calls, and send e-mails to existing and prospective
23 customers in the Northern District of California and elsewhere in the United States to solicit orders for
24 controlled substances and refills of invalid prescriptions for controlled substances.

25     26.    Chhabra and Smoley arranged for the continuation of the Chhabra-Smoley Organization
26 following Chhabra's December 3, 2003, arrest on charges of violating the CSA, by entering into an
27 arrangement whereby Smoley assumed responsibility for the running of the Chhabra-Smoley
28 Organization.

8

INDICTMENT

B.      FEDEX's Shipment of Illegal Drugs for the Chhabra-Smoley Organization

27.     FEDEX employees – including those who (a) negotiated and entered into the written agreements with the Chhabra-Smoley Organization on behalf of FEDEX, (b) managed the Chhabra-Smoley Organization accounts for FEDEX, and (c) maintained the Chhabra-Smoley Organization's business relationship with FEDEX, including its credit and payment terms – knew that the Chhabra-Smoley Organization was distributing controlled substances based on prescriptions issued by doctors after reviewing customers' responses to an online questionnaire.

28.     Chhabra and Smoley and their employees and associates entered into agreements with FEDEX in which FEDEX agreed to ship packages for the Chhabra-Smoley Organization. As part of these agreements, FEDEX opened over 30 accounts for the Chhabra-Smoley Organization, which the Chhabra-Smoley Organization used to illegally distribute controlled substances into the Northern District of California and elsewhere in the United States.

29.     FEDEX's employees communicated on a regular basis with Chhabra, Smoley, and other employees of the Chhabra-Smoley Organization in writing, by telephone, and in person regarding the Chhabra-Smoley Organization's business trends, volume, and shipping and logistics needs.

30.     FEDEX employees visited the premises of the Chhabra-Smoley Organization, including its headquarters and the locations of its fulfillment pharmacies. These employees observed the Chhabra-Smoley Organization's operations, including the taking of orders for controlled substances over the telephone and Internet and the filling of orders for controlled substances.

31.     FEDEX employees observed packages from the Chhabra-Smoley Organization containing pill bottles filled with controlled substances; FEDEX employees assisted with preparing these packages for shipment and subsequently distributed these packages for the Chhabra-Smoley Organization in the Northern District of California and throughout the United States.

32.     FEDEX employees and their contractors communicated with employees of the Chhabra-Smoley Organization on a regular basis regarding lost, stolen, or delayed FEDEX shipments of controlled substances.

33.     FEDEX employees knew that online pharmacies and fulfillment pharmacies affiliated with the Chhabra-Smoley Organization were closed down by state and federal law enforcement

INDICTMENT

9

1  agencies, including the FDA and DEA, and that their owners, operators, pharmacists, and doctors were

2  indicted, arrested, and convicted of violating the CSA, including:

3        a.    On July 23, 2002, a FEDEX employee placed a note in FEDEX's electronic

4               account record for Rx Network, "Co has had its license suspended by the state of

5               Florida in an emergency order that said the pharmacy constitutes 'an immediate

6               and serious danger.'"

7        b.    On November 12, 2003, a FEDEX employee received an e-mail in which she was

8               "advised Rx Network license was suspended for selling illegal prescriptions thru

9               the internet – I forward email to [the Sales] A/E – advised cust has to increase

10              weekly pmt to 150,000 to ensure shipping privileges."

11       c.    On January 30, 2004, a Sales executive informed his co-worker that he should not

12             be responsible for increasing business from the Prescription Resources account, a

13             fulfillment pharmacy for the Chhabra-Smoley Organization, because "State/Fed

14             law closed this facility down about two months ago. It continues to pop up at

15             various places in the country, one step ahead of state regulators, I believe."

16       d.    In June 2004, FEDEX's Senior Manager of Revenue Operations learned that

17             Chhabra had been indicted for his involvement with Internet drug sales. He

18             further learned that three doctors and two pharmacists involved in the Chhabra-

19             Smoley Organization had pleaded guilty to drug trafficking based on "illegally

20             selling excessive quantities of controlled substances – diet pills – through

21             websites by simply having customers fill out online questionnaires without

22             anyone checking the accuracy of the questionnaires."

23       e.    On March 17, 2006, FEDEX's Managing Director of Sales for the Gulf States

24             Region approved a goal adjustment for the Sales executive responsible for one of

25             Smoley's accounts based on the reason "FDA forced closure of primary supplier

26             for Internet pharmacy. Unable to supply customers with product."

27

28

INDICTMENT

34.     In each instance, with the knowledge that these and other members of the Chhabra-Smoley Organization had been subject to law enforcement action for illegally shipping controlled substances, FEDEX continued to deliver controlled substances for the Chhabra-Smoley Organization.

35.     FEDEX employees knew that the purpose of the Chhabra-Smoley Organization was to provide controlled substances to consumers without the need for a face-to-face meeting with, or physical examination, laboratory tests, or diagnosis, by a physician.  FEDEX employees knew that this practice violated the CSA, FDCA, and numerous state laws.  FEDEX employees knew that the practice of prescribing medication based solely on a physician's review of an online questionnaire, without a physical examination, laboratory tests, or face-to-face meeting was not in accordance with the usual course of medical and pharmacy practice according to the positions of the AMA, FSMB, NABP, and numerous state laws.  FEDEX employees further knew that the Chhabra-Smoley Organization distributed controlled substances to customers who had no legitimate medical need for them.

36.     FEDEX departed from its usual business practices to participate in and facilitate the Chhabra-Smoley Organization's unlawful sale of controlled substances.  According to FEDEX's Service Guide and Tariff, as well as the understanding of its employees, FEDEX did not ship contraband, including illegal drugs, in the usual course of business.  FEDEX also deviated from its usual course of business by applying its Online Pharmacy Credit Policy to the Chhabra-Smoley Organization.  FEDEX further deviated from its usual course of business by placing assigning accounts associated with the Chhabra-Smoley Organization to the catchall classification for purposes of determining compensation for its sales executives, pursuant to FEDEX's Online Pharmacy Catchall Policy.

All in violation of Title 21, United States Code, Section 846.

///

///

///

///

///

///

///

**COUNTS TWO THROUGH TEN**: (21 U.S.C. § 841 – Distribution of Controlled Substances)

37.    Paragraphs 1 through 18 and 21 through 36 are realleged and reincorporated herein by reference.

38.    On or about the dates listed below, in the Northern District of California and elsewhere, the defendants,

FEDEX CORPORATION;
FEDEX EXPRESS, INC.; and
FEDEX CORPORATE SERVICES, INC.,

did possess with intent to distribute and distribute outside the usual course of professional practice and not for a legitimate medical purpose one or more controlled substances, knowing and intending that the distribution and possession with intent to distribute was outside the usual course of professional practice and not for a legitimate medical purpose, which offense involved substances containing those listed below:

| COUNT | DATE | TRACKING NUMBER | CONTROLLED SUBSTANCE |
|---|---|---|---|
| 2 | 7/19/2007 | 799181999045 | Diethylpropion |
| 3 | 7/24/2007 | 799681810394 | Phentermine |
| 4 | 7/24/2007 | 792529082334 | Phentermine |
| 5 | 7/25/2007 | 798227118185 | Phentermine |
| 6 | 7/25/2007 | 790791710858 | Phentermine |
| 7 | 7/26/2007 | 798726973512 | Adipex |
| 8 | 7/26/2007 | 790792659716 | Phentermine |
| 9 | 7/27/2007 | 790792659841 | Diazepam |
| 10 | 7/27/2007 | 790301123749 | Phentermine |

Each in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(D) and/or (b)(2).

///

///

///

INDICTMENT

12

1  **COUNT ELEVEN**:  (18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs in Interstate
2                                  Commerce)

3      39.    Paragraphs 1 through 18 and 21 through 36 are realleged and reincorporated herein by
4  reference.

5      40.    Beginning at a time unknown to the grand jury, but no later than January of 2000, and
6  ending on or about February 20, 2008, in the Northern District of California and elsewhere, the
7  defendants,

8                                  FEDEX CORPORATION;
                                 FEDEX EXPRESS, INC.; and
9                          FEDEX CORPORATE SERVICES, INC.,

10  together with Vincent Chhabra, Sabina Faruqui, Robert Smoley, RxNetwork, United Mail Pharmacy
11  Services, Icom Group, and others known and unknown to the grand jury, conspired to distribute and
12  dispense prescription drugs to consumers in various locations throughout the United States, including
13  the Northern District of California, without valid prescriptions from licensed practitioners, which caused
14  the drugs to be misbranded while held for sale after their shipment in interstate commerce, and did so
15  with the intent to defraud and mislead as to a material matter, in violation of Title 21, United States
16  Code, Sections 331(k), 333(a)(1), (a)(2), and 353(b), all of which conduct was in violation of Title 18,
17  United States Code, Section 371.

18                          Manner and Means of the Conspiracy
19  It was part of the conspiracy that:

20      41.    Paragraphs 1 through 18 and 21 through 36 are realleged and reincorporated herein by
21  reference.

22      42.    It is further alleged that each and every aspect of the conduct alleged in paragraphs 21
23  through 36 as the manner and means of the conspiracy involving controlled prescription drugs also
24  involved non-controlled prescription drugs.

25      43.    The prescription drugs were distributed with the intent to defraud and mislead in that:

26          a.    The Chhabra-Smoley Organization and its related online and fulfillment
27                pharmacies falsely and fraudulently represented to consumers and government
28                agencies that physicians had written valid prescriptions for the drugs they were

                                          13
INDICTMENT

1    distributing.

2        b.    The Chhabra-Smoley Organization falsely and fraudulently represented to

3            consumers and government agencies that no prescription was required to obtain

4            the controlled and non-controlled prescription drugs advertised on its websites

5            and that the "prescription" issued by a doctor employed by the online pharmacy

6            based solely on his or her review of the responses to an online questionnaire was

7            valid and in accordance with federal and state law.

8        c.    The Chhabra-Smoley Organization and its associated fulfillment pharmacies and

9            pharmacists falsely and fraudulently represented to consumers and government

10           agencies that the prescription drugs were dispensed pursuant to valid prescriptions

11           after review by a pharmacist in accordance with federal and state law.

12       d.    The Chhabra-Smoley Organization falsely and fraudulently represented to

13           customers who sought to obtain prescription drugs, but who lacked prescriptions

14           from their personal physicians, and to government agencies, that the websites

15           were a legitimate, lawful, safe, and responsible source for these drugs.

16                                    Overt Acts

17   44.    On or about April 26, 2000, FEDEX delivered 30 pills of Meridia, a controlled

18   prescription drug, from ChoiceRx, 14300 Justice Road, Ste. B, Midlothian, Virginia, that had been

19   ordered by FDA agents in Maryland on or about April 7, 2000, from privacyrx.com by completing an

20   online questionnaire.

21   45.    On or about February 7, 2001, FEDEX delivered 30 pills of Phentermine, a controlled

22   prescription drug, from Rx Network of Florida, 5400 S University Dr., Ste. 104, Davie, Florida, that had

23   been ordered by the Federation of State Medical Boards (FSMB) on or about February 6, 2001, from

24   eprescribe.com by completing an online questionnaire.

25   46.    On or about December 3, 2001, FEDEX delivered 10 pills of Viagra, a prescription drug,

26   from United Mail Pharmacy Services, 800 E Hallandale, Hallandale, Florida, that had been ordered by

27   the FSMB on or about November 30, 2001, from viagraovernight.com by completing an online

28   questionnaire.

                                        14

     INDICTMENT

1    47.    On or about June 28, 2002, FEDEX delivered 30 pills of Phentermine, a controlled

2  prescription drug, from Rx Network, 5400 S University Dr., Ste. 107, Davie, Florida, that had been

3  ordered by agents with the Arkansas Attorney General on or about June 27, 2002, from

4  USAPrescription.com by completing an online questionnaire.

5    48.    On or about February 13, 2003, FEDEX delivered 90 pills of Bontril, a controlled

6  prescription drug, from Rx Network of Florida, 5400 S University Dr., Ste. 107, Davie, Florida, that had

7  been ordered by DEA agents in Miami, Florida, on or about February 13, 2003, from eprescribe.com by

8  completing an online questionnaire. The instructions on the website stated that an adult signature would

9  be required for delivery; however, the drugs were shipped to a Mailboxes Etc. and signed for by an

10  employee at the store.

11    49.    On or about November 12, 2003, a FEDEX employee received an e-mail in which she

12  was "advised Rx Network license was suspended for selling illegal prescriptions thru the internet – I

13  forward email to [the Sales] A/E – advised cust has to increase weekly pmt to 150,000 to ensure

14  shipping privileges."

15    50.    On or about November 25, 2003, FEDEX delivered 30 pills of Ambien, a controlled

16  prescription drug, from C&V Pharmacy, 1803 SW 8th Street, Miami, Florida, that had been ordered by

17  FDA agents in Miami, Florida, on or about November 21, 2003, from medpharmacy.com by filling out

18  an online questionnaire.

19    51.    On or about March 4, 2004, FEDEX delivered 10 pills of Cialis, a prescription drug, from

20  United Mail, 800 E Hallandale Bch Blvd #18, Hallandale, Florida, that had been ordered by the FSMB

21  on or about March 3, 2004, from completerxonline.com by filling out an online questionnaire.

22    52.    On or about March 31, 2004, FEDEX Credit analysts sent a list of FEDEX's online

23  pharmacy accounts to the Managing Director and Senior Manager of Revenue Operations that included

24  over 20 accounts associated with the Chhabra-Smoley Organization.

25    53.    In or about September of 2004, FEDEX's Credit analysts worked with FEDEX's Sales

26  employees to obtain financial security for accounts used by the Chhabra-Smoley Organization pursuant

27  to FEDEX's Online Pharmacy Credit Policy.

28    54.    In or about April of 2007, accounts associated with the Chhabra-Smoley Organization

15

1  were assigned to the catchall classification by FEDEX's Field Sales employees, pursuant to the Online

2  Pharmacy Catchall Policy that had been approved by FEDEX's Field Sales Vice Presidents.

3      55.    On or about July 26, 2007, FEDEX delivered 30 pills of Phentermine, a controlled

4  prescription drug, from United Mail Pharmacy, 800 Hallandale Beach Blvd., Hallandale Beach, Florida,

5  that had been ordered by a customer located in Napa, California, on or about July 25, 2007, from

6  fastplanetrx.com by completing an online questionnaire.

7      56.    In or about October of 2007, FEDEX's Sales analysts reviewed the placement of

8  accounts associated with the Chhabra-Smoley Organization in catchall and obtained the approval of the

9  Senior Vice President of Field Sales to maintain these "high value" accounts in the catchall

10  classification pursuant to the Online Pharmacy Catchall Policy.

11      57.    In or about January of 2008, a FEDEX contractor sent to a FEDEX Security manager a

12  list of packages containing "Red Flag Pharmaceuticals" that had been identified for destruction. The list

13  included a package containing Phentermine, a controlled prescription drug, that had been shipped by

14  FEDEX for United Mail LLC, a fulfillment pharmacy used by the Chhabra-Smoley Organization.

15      All in violation of Title 18, United States Code, Section 371.

16

17  **COUNT TWELVE**: (21 U.S.C. § 846 – Conspiracy to Distribute Controlled Substances)

18      58.    Paragraphs 1 through 18 are realleged and reincorporated herein by reference.

19      59.    Beginning at a time unknown to the grand jury, but no later than September of 2002, and

20  ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

21  FEDEX CORPORATION;<br>FEDEX EXPRESS, INC.; and

22  FEDEX CORPORATE SERVICES, INC.,

23  together with Creative Pharmacy Services (doing business as Superior Drugs), Wayne White, Anthony

24  Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall Kanner, David Glass,

25  Michael Bezonsky, Claude Covino, Genetechnica, Physicians Online Network, The Spence Group,

26  Pharmacom, Carmel Management, SaveOn Rx, SafescriptsOnline, Affpower, and others known and

27  unknown to the grand jury, conspired to distribute, and to possess with intent to distribute outside the

28  usual course of professional practice and not for a legitimate medical purpose one or more controlled

16

INDICTMENT

1  substances, knowing and intending that the distribution and possession with intent to distribute was
2  outside the usual course of professional practice and not for a legitimate medical purpose, which offense
3  involved substances containing (a) Phendimetrazine, a Schedule III controlled substance;
4  (b) Phentermine, a Schedule IV controlled substance; (c) Butalbital, a Schedule III controlled substance,
5  and (d) Ambien, a Schedule IV controlled substance, in violation of Title 21, United States Code,
6  Sections 841(a)(1), (b)(1)(D), and (b)(2) (before April 13, 2009), and in violation of Title 21, United
7  States Code, Sections 841(a)(1), (b)(1)(E)(i), (b)(2), (h)(1), and (h)(4) (after April 13, 2009), all of
8  which conduct was in violation of Title 21, United States Code, Section 846.

9  Manner and Means of the Conspiracy

10  It was part of the conspiracy that:

11  A.    Operation of Superior Drugs

12        60.    Unindicted co-conspirator Wayne White ("White") was the chief pharmacist at Creative
13  Pharmacy Services, doing business as Superior Drugs ("Superior"). White operated Superior as a
14  fulfillment pharmacy that illegally distributed controlled substances without valid prescriptions directly
15  to consumers who had ordered them from Internet pharmacies owned and operated by unindicted co-
16  conspirators Anthony Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall
17  Kanner, David Glass, Michael Bezonsky, and others known and unknown to the grand jury.

18        61.    The Internet pharmacies for which Superior filled orders for controlled substances,
19  including discreetonlinemeds.com, pricebustersrx.com, safescriptsonline.com, safetrustprocessing.com,
20  rx-max.com, integrarx.com, medscriptsmd.com, dietpillscheap.com, and buymeds.com, offered for sale
21  controlled substances in Schedules III and IV, by means of the Internet, to customers who were only
22  required to complete an online questionnaire and were not examined or diagnosed by the physicians who
23  issued the prescriptions in connection with their orders.

24        62.    The Internet pharmacies for which Superior filled orders for controlled substances based
25  on invalid prescriptions partnered with, recruited, and hired throughout the United States and Puerto
26  Rico physicians to review the customers' online questionnaires and to issue invalid prescriptions for
27  controlled substances based solely upon the customers' responses.

28        63.    To meet the high demand for illegally obtained controlled substances, the Internet

17

1 pharmacies for which Superior filled orders for controlled substances based on invalid prescriptions
2 partnered with, recruited, and hired other fulfillment pharmacies throughout the United States, including
3 Gem Pharmacy, Universal Pharmacy, Union Pharmacy, Waterview Pharmacy, United Care Pharmacy,
4 Kwic Fill, and SaveOn Rx, among others, to fill invalid prescriptions for controlled substances and to
5 ship them to customers in the Northern District of California and elsewhere in the United States.

6      64.    The Internet pharmacies for which Superior filled orders for controlled substances based
7 on invalid prescriptions hired employees to call, respond to calls, and send e-mails to existing and
8 prospective customers in the Northern District of California and elsewhere in the United States to solicit
9 them to order controlled substances or to refill invalid prescriptions for controlled substances.

10 B.    FEDEX's Shipment of Illegal Drugs for Superior

11     65.    FEDEX employees, including those (a) who negotiated and entered into the written
12 agreements with Superior and its related Internet and fulfillment pharmacies on behalf of FEDEX,
13 (b) who managed these accounts for FEDEX, and (c) who maintained the business relationship between
14 FEDEX and Superior and its related Internet and fulfillment pharmacies, including credit and payment
15 terms, knew that Superior and its related Internet and fulfillment pharmacies were distributing controlled
16 substances based on prescriptions issued by doctors after only reviewing customers' responses to online
17 questionnaires.

18     66.    Unindicted co-conspirators Wayne White, Anthony Spence, Christopher Napoli, Sanford
19 Cohen, Orlando Birbragher, Marshall Kanner, David Glass, Michael Bezonsky, Claude Covino, and
20 others known and unknown to the grand jury and their employees and associates entered into
21 agreements with FEDEX in which FEDEX agreed to ship packages for Superior and the Internet
22 pharmacies for which Superior filled orders for controlled substances based on invalid prescriptions. As
23 part of these agreements, FEDEX opened over 50 accounts for Superior and the Internet pharmacies for
24 which Superior filled orders for controlled substances based on invalid prescriptions. Superior and its
25 related Internet and fulfillment pharmacies used these FEDEX accounts to illegally distribute controlled
26 substances into the Northern District of California and elsewhere in the United States.

27     67.    FEDEX's employees communicated on a regular basis with Wayne White, Anthony
28 Spence, Sanford Cohen, Orlando Birbragher, Marshall Kanner, Claude Covino, David Glass, Michael

INDICTMENT                                                    18

1 Bezonsky, and other employees of Superior and its related Internet and fulfillment pharmacies in
2 writing, by telephone, and in person regarding, among other things, business trends, volume, and
3 shipping and logistics needs.

4     68.     FEDEX employees visited the premises of Superior. These employees observed
5 Superior's operations, including the filling of orders for controlled substances.

6     69.     FEDEX employees observed packages from Superior containing pill bottles filled with
7 controlled substances; FEDEX employees assisted with preparing these packages for shipment and
8 subsequently distributed these packages for Superior and its related Internet and fulfillment pharmacies
9 in the Northern District of California and throughout the United States.

10     70.     FEDEX employees and their contractors communicated with employees of Superior and
11 its related Internet and fulfillment pharmacies on a regular basis regarding lost, stolen, or delayed
12 FEDEX shipments of controlled substances.

13     71.     FEDEX employees knew that the purpose of Superior was to provide controlled
14 substances to consumers without the need for a face-to-face meeting with, or physical examination or
15 laboratory tests by, a physician. FEDEX employees knew that this practice violated the CSA, FDCA,
16 and numerous state laws. FEDEX employees further knew that the practice of prescribing medication
17 based solely on a physician's review of an online questionnaire, without a physical examination,
18 laboratory tests, diagnosis, or face-to-face meeting was not in accordance with the usual course of
19 medical and pharmacy practice according to the positions of the AMA, FSMB, NABP, and numerous
20 state laws. FEDEX employees further knew that Superior distributed controlled substances to customers
21 who had no legitimate medical need for them.

22     72.     FEDEX departed from its usual business practices to participate in and facilitate
23 Superior's unlawful sale of controlled substances. According to FEDEX's Service Guide and Tariff, as
24 well as the understanding of its employees, FEDEX did not ship contraband, including illegal drugs, in
25 the usual course of business. FEDEX also deviated from its usual course of business by applying its
26 Online Pharmacy Credit Policy to Superior and its related online and fulfillment pharmacies. FEDEX
27 further deviated from its usual course of business by assigning shipping accounts associated with

28

19

Superior to the catchall classification for purposes of determining compensation for its sales executives pursuant to FEDEX's Online Pharmacy Catchall Policy.

73.     FEDEX employees knew that Superior and online and fulfillment pharmacies affiliated with Superior were closed down by state and federal law enforcement agencies, including the FDA and DEA, and that their owners, operators, pharmacists, and doctors were indicted, arrested, and convicted of violating the CSA, including:

a.     In June of 2004, a FEDEX Sales manager sent an e-mail regarding Superior stating, "they were shut down for a few days by the DEA and the company they were fulfilling for moved the business to [another fulfillment pharmacy]." The fulfillment pharmacy to which the business was moved when Superior was shut down was also a FEDEX customer.

b.     In March of 2005, the account executive for Superior submitted a request for an adjustment to his sales goals because Superior represented a "significant revenue loss" when "FDA raided their property. No longer ship same volume."

c.     In June of 2004, FEDEX's Senior Manager of Credit learned that the online pharmacy American Medical Services, which had been using Superior to ship its drugs, had been closed down by the FDA and DEA, but was now operating as Dynamic Health Solutions.

d.     In June of 2006, a district sales manager and credit analyst learned that SaveOn Rx owner Claude Covino had stopped shipping drugs from SaveOn Rx because he was under investigation by the DEA. The manager and analyst determined that Covino was using other fulfillment pharmacies, including Superior Drugs, to continue to ship controlled substances for Internet pharmacies while avoiding detection by the DEA.

74.     After April 13, 2009, FEDEX continued to distribute controlled substances for Superior Drugs that had been obtained by means of the Internet, despite the fact that neither Superior Drugs, nor any of the websites that referred orders to Superior Drugs, had obtained a modified DEA registration, despite the fact that the websites did not display any of the statements required by 21 U.S.C. § 831, and

20

INDICTMENT

1  despite the fact that prescriptions were issued by doctors employed by the online pharmacies after either

2  review of an online questionnaire or after reviewing a report of a physical examination conducted by a

3  physician who was not unavailable at the time the prescription was issued and who had not requested

4  that the doctor employed by the online pharmacy serve as a covering physician.

5          All in violation of Title 21, United States Code, Section 846.

6

7  **COUNTS THIRTEEN AND FOURTEEN**: (21 U.S.C. § 841 – Distribution of Controlled Substances)

8          75.     Paragraphs 1 through 18 and 60 through 74 are realleged and reincorporated herein by

9  reference.

10         76.     On or about the dates listed below, in the Northern District of California and elsewhere,

11  the defendants,

12                          FEDEX CORPORATION;
                          FEDEX EXPRESS, INC.; and
13                    FEDEX CORPORATE SERVICES, INC.,

14  did possess with intent to distribute and distribute outside the usual course of professional practice and

15  not for a legitimate medical purpose controlled substances knowing and intending that the distribution

16  and possession with intent to distribute was outside the usual course of professional practice and not for

17  a legitimate medical purpose, which offense involved substances containing those listed below:

| COUNT | DATE | TRACKING NUMBER | CONTROLLED SUBSTANCE |
|-------|------|-----------------|----------------------|
| 13 | 2/7/2008 | 960103326342 | Phentermine |
| 14 | 5/27/2008 | 798448652979 | Phentermine |

21

22          Each in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(2).

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

21

INDICTMENT

1 **COUNT FIFTEEN**: (18 U.S.C. § 371 – Conspiracy to Distribute Misbranded Drugs in Interstate
2 Commerce)

3    77.    Paragraphs 1 through 18 and 60 through 74 are realleged and reincorporated herein by
4 reference.

5    78.    Beginning at a time unknown to the grand jury, but no later than September of 2002, and
6 ending on or about May 12, 2010, in the Northern District of California and elsewhere, the defendants,

7                              FEDEX CORPORATION;
                              FEDEX EXPRESS, INC.; and
8                        FEDEX CORPORATE SERVICES, INC.,

9 together with Creative Pharmacy Services (doing business as Superior Drugs), Wayne White, Anthony
10 Spence, Christopher Napoli, Sanford Cohen, Orlando Birbragher, Marshall Kanner, David Glass,
11 Michael Bezonsky, Claude Covino, Genetechnica, Physicians Online Network, The Spence Group,
12 Pharmacom, Carmel Management, SaveOn Rx, SafescriptsOnline, Affpower, and others known and
13 unknown to the grand jury, conspired to dispense and distribute prescription drugs, including the
14 prescription drugs identified in paragraphs 10 and 18, to consumers in various locations throughout the
15 United States, including the Northern District of California, without valid prescriptions from licensed
16 practitioners, which caused the drugs to be misbranded while held for sale after their shipment in
17 interstate commerce, and did so with the intent to defraud and mislead as to a material matter, in
18 violation of Title 21, United States Code, Sections 331(k), 333(a)(1), (a)(2), and 353(b), all of which
19 conduct was in violation of Title 18, United States Code, Section 371.

20                              Manner and Means of the Conspiracy

21 It was part of the conspiracy that:

22    79.    Paragraphs 1 through 18 and 60 through 74 are realleged and reincorporated herein by
23 reference.

24    80.    Each and every aspect of the conduct alleged in paragraphs 60 through 74 as the manner
25 and means of the conspiracy involving controlled prescription drugs also involved non-controlled
26 prescription drugs.

27    81.    The prescription drugs were distributed with the intent to defraud and mislead in that:

28         a.    Superior and its related online and fulfillment pharmacies falsely and fraudulently

                                        22
INDICTMENT

1        represented to consumers and government agencies that physicians had written

2        valid prescriptions for the drugs they were distributing.

3        b.    The online pharmacies falsely and fraudulently represented to consumers and

4              government agencies that no prescription was required to obtain the controlled

5              and non-controlled prescription drugs advertised on their websites and that the

6              "prescription" issued by a doctor employed by the online pharmacy based solely

7              on his or her review of the responses to an online questionnaire was valid and in

8              accordance with federal and state law.

9        c.    Superior and its associated fulfillment pharmacies and pharmacists falsely and

10             fraudulently represented to consumers and government agencies that the

11             prescription drugs were dispensed pursuant to valid prescriptions after review by

12             a pharmacist in accordance with federal and state law.

13       d.    The Internet pharmacies falsely and fraudulently represented to customers who

14             sought to obtain prescription drugs, but who lacked prescriptions from their

15             personal physicians, and to government agencies, that the websites were a

16             legitimate, lawful, safe, and responsible source for these drugs.

17                                          Overt Acts

18       82.    On or about August 5, 2002, FEDEX delivered 30 pills of Phentermine, a controlled

19  prescription drug, from Superior that had been ordered by FDA agents in Miami, Florida, on or about

20  June 18, 2002, from medscriptsmd.com by completing an online questionnaire.

21       83.    On or about April 8, 2003, FEDEX delivered 30 pills of Bontril, a controlled prescription

22  drug, from Superior that had been ordered by DEA agents in Seattle, Washington, on or about April 4,

23  2003, from integrarx.com by completing an online questionnaire.

24       84.    On or about May 10, 2004, employees in FEDEX's Credit Department prepared a list of

25  FEDEX's online pharmacy customers for FEDEX EXPRESS's Chief Financial Officer.  Accounts used

26  by Superior were included on this list.

27       85.    In or about September of 2004, employees in FEDEX's Credit Department worked with

28  employees in FEDEX's Sales Department to obtain financial security for accounts used by Superior

                                              23

INDICTMENT

1   pursuant to FEDEX's Online Pharmacy Credit Policy.

2       86.     On or about September 26, 2005, FEDEX delivered 10 pills of Cialis, a prescription drug,
3   from Superior that had been ordered by the Federation of State Medical Boards (FSMB) on or about
4   September 21, 2005, from order-viagra-online.net by completing an online questionnaire.

5       87.     On or about February 27, 2006, FEDEX delivered 60 pills of Phentermine, a controlled
6   prescription drug, from Kwic Fill, Inc. to fill an order placed by DEA agents in San Jose, California, on
7   or about February 24, 2006, for 30 pills of Phentermine from safescriptsonline.com by completing an
8   online questionnaire. FEDEX billed the shipping charges to the account for Superior Drugs.

9       88.     In or about May of 2007, accounts used by Superior were assigned to the catchall
10  classification pursuant to FEDEX's Online Pharmacy Sales Catchall Policy.

11      89.     On or about May 30, 2008, FEDEX shipped Phentermine, a controlled prescription drug,
12  from Superior to San Mateo, California, in response to an order placed by a customer on or about May
13  27, 2008 from the RxSource Network by completing an online questionnaire.

14      90.     On or about August 7, 2009, FEDEX delivered 30 pills of Phentermine, a controlled
15  prescription drug, from Superior that had been ordered by DEA agents in Philadelphia, Pennsylvania, on
16  or about June 1, 2009, from discreetonlinemeds.com by completing an online questionnaire and
17  submitting a fictitious report of physical examination that had been created by the agents without the
18  input of a doctor.

19      91.     On or about November 2, 2009, FEDEX delivered 90 pills of Butalbital, a controlled
20  prescription drug, from Superior that had been ordered by FDA agents in Philadelphia, Pennsylvania, on
21  or about October 26, 2009, from discreetonlinemeds.com by completing an online questionnaire.

22      All in violation of Title 18, United States Code, Section 371.

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

24

INDICTMENT

1  **FORFEITURE ALLEGATION**:

2      92.   Paragraphs 1 through 91 of this Indictment are realleged and fully incorporated herein by

3  reference for the purpose of alleging forfeiture.

4      93.   Upon a conviction of any of the offenses alleged in Counts One through Ten and Twelve

5  through Fourteen, the defendants,

6   FEDEX CORPORATION;<br/>FEDEX EXPRESS, INC.; and
7   FEDEX CORPORATE SERVICES, INC.,

8  shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 853(a)(1) and (2),

9  any property constituting and derived from any proceeds defendants obtained, directly or indirectly, as a

10  result of said violations, and any property used, or intended to be used, in any manner or part, to commit

11  or to facilitate the commission of said violations.

12      94.   Upon a conviction of any of the offenses alleged in Counts Eleven and Fifteen, the

13  defendants,

14   FEDEX CORPORATION;<br/>FEDEX EXPRESS, INC.; and
15   FEDEX CORPORATE SERVICES, INC.,

16  shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any

17  property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds

18  traceable to the commission of said offenses.

19      95.   If any of said property, as a result of any act or omission of the defendants:

20          a.   cannot be located upon the exercise of due diligence;

21          b.   has been transferred to, sold to, or deposited with a third person;

22          c.   has been placed beyond the jurisdiction of the Court;

23          d.   has been substantially diminished in value; or

24          e.   has been commingled with other property which cannot be subdivided without

25             difficulty;

26  any and all interest defendants have in other property shall be vested in the United States and forfeited to

27  the United States pursuant to Title 21, United States Code, Section 853(p), Title 28, United States Code,

28  Section 2461(c), and Rule 32.2 of the Federal Rules of Criminal Procedure.

25

INDICTMENT

1 **SENTENCING ALLEGATION**

2      96.     With respect to the charges in this Indictment, for purposes of determining the alternative

3 maximum fine pursuant to Title 18, United States Code, Section 3571(d), the defendants,

4

FEDEX CORPORATION,
FEDEX EXPRESS, INC., and
FEDEX CORPORATE SERVICES, INC.,

5

6 and their coconspirators derived gross gains of at least $820,000,000.

7

8 DATED: July 17, 2014                               A TRUE BILL.

9

10                                          Nancy J. Peterson
                                         FOREPERSON

11

12 MELINDA HAAG
United States Attorney

13

14 /s/ Douglas Wilson
  DOUGLAS WILSON

15 Chief, Criminal Division

16

17 (Approved as to form)
                AUSA Ault

18

19

20

21

22

23

24

25

26

27

28

INDICTMENT