1   Cristina C. Arguedas (CalBN 87787)      Allen J. Ruby (CalBN 47109)
        Email: arguedas@achlaw.com             Email: allen.ruby@skadden.com
2   Ted W. Cassman (CalBN 98932)           Jack P. DiCanio (CalBN 138782)
        Email: cassman@achlaw.com              Email: jack.dicanio@skadden.com
3   Raphael M. Goldman (CalBN 229261)     Patrick Hammon (CalBN 255047)
        Email: goldman@achlaw.com              Email: patrick.hammon@skadden.com
4   ARGUEDAS, CASSMAN & HEADLEY, LLP       SKADDEN, ARPS, SLATE, MEAGHER
5   803 Hearst Avenue                          & FLOM LLP
6   Berkeley, CA 94710                     525 University Avenue, Suite 1100
    Telephone: (510) 845-3000             Palo Alto, CA  94301
7   Facsimile: (510) 845-3003             Telephone: (650) 470-4500
                                          Facsimile: (650) 470-4570
8

9   *Counsel for FedEx Corporation,*
    *Federal Express Corporation and*
10  *FedEx Corporate Services, Inc.*

11                    UNITED STATES DISTRICT COURT

12              FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14

15  UNITED STATES OF AMERICA,          )   **No. CR 14-380 (CRB)**
                                       )
16                                     )   **FEDEX DEFENDANTS' MOTION FOR A**
                   Plaintiff,          )   **BILL OF PARTICULARS [RULE 7(f),**
17                                     )   **FED. R. CRIM. PRO.]**
                                       )
18            v.                       )
                                       )   DATE:  February 18, 2015
19                                     )   TIME:   2:00 p.m.
    FEDEX CORPORATION, FEDERAL         )   COURT: 8
20  EXPRESS CORPORATION, and FEDEX     )
    CORPORATE SERVICES, INC.,          )
21                                     )
                                       )
22            Defendants.              )
                                       )
23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................i

TABLE OF AUTHORITIES ..............................................................................ii

I.      INTRODUCTION ..................................................................................1

II.     SUMMARY OF THE REQUESTED BILL OF PARTICULARS...........................2

III.    FACTS.................................................................................................3

        A.      FedEx, A Common Carrier...................................................3

        B.      The Superseding Indictment ................................................4

        C.      The Status of Discovery and Proceedings .............................6

IV.     ARGUMENT .......................................................................................6

        A.      Applicable Law ..................................................................6

        B.      A Bill of Particulars Is Necessary for Effective Preparation of the
                Defense and to Avoid Surprise at Trial ..................................10

                1.      The Nature and Circumstances of Alleged Warnings to
                        FedEx Concerning the Illegality of the Internet Pharmacy
                        Industry ................................................................12

                2.      The Identity of the FedEx Employees Who Allegedly
                        Observed and Participated in the Business Operations of the
                        Co-Conspirators' Operations or Knew of the Illegal Nature of
                        those Operations.......................................................12

                3.      The False Representations that the Charged Co-
                        Conspirators Allegedly Made to the Government and to the
                        Public ...................................................................14

                4.      The Supporting Data and Method of Calculation of the
                        "Gross Gain" for the Alternative Fine Allegation ...........15

        C.      A Bill of Particulars is Necessary to Preserve FedEx's Double
                Jeopardy Rights.................................................................16

V.      CONCLUSION...................................................................................17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF AUTHORITIES**

## Cases

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ........................................................15

*Cooper v. United States*, 282 F.2d 527 (9th Cir. 1960) ...................................8

*Russell v. United States*, 369. U.S. 749 (1962) ........................................6

*Southern Union Co. v. United States*, __U.S.__, 132 S. Ct. 2344 (2012)...................15

*United States v. Ablett*, No. CR 09-00749 RS, 2010 U.S. Dist. LEXIS 87122 (N.D. Cal. Aug. 3, 2010) ..............................................................7

*United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1971) .................................9

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1991) ...........................8, 16

*United States v. Cecil*, 608 F.2d 1294 (9th Cir. 1979) .................................6

*United States v. Cerna*, CR 08-730 WHA (N.D. Cal. 2009), Dkt. No. 632 ...................8

*United States v. Chen*, No. C 05-375 SI, 2006 U.S. Dist. LEXIS 84786 (N.D. Cal. Nov. 9, 2006)..............................................................10

*United States v. Cooper*, No. CR 09-156 SI, 2014 U.S. Dist. LEXIS 105617 (N.D. Cal. 2014)..............................................................6

*United States v. Cruikshank*, 92 U.S. 542 (1876) ......................................6, 7

*United States v. Feil*, No. CR 09-00863 JSW, 2010 U.S. Dist. LEXIS 48262 (N.D. Cal. Apr. 15, 2010) .......................................................9, 11

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979).......................8, 9, 16

*United States v. Hsiung*, 758 F.3d 1074 (9th Cir. 2014) ...............................15

*United States v. Inryco, Inc.*, 642 F.2d 290 (9th Cir. 1981).........................8

*United States v. Long*, 706 F.2d 1044 (9th Cir. 1979) ...............................8, 9

*United States v. Pfaff*, 619 F.3d 172 (2d Cir. 2010).....................................15

*United States v. Trumpower,* 546 F. Supp. 2d 849 (E.D. Cal. 2008).......................7, 9

*United States v. Wong,* No. CR 06-428 SI, 2007 U.S. Dist. LEXIS 10729 (N.D. Cal. Feb. 2, 2007) ...........................................................7, 10

*Will v. United States*, 389 U.S. 90 (1967) ...................................................................8


<u>Other Authorities</u>

18 U.S.C. § 3571 ...........................................................................................................15

21 U.S.C. § 301 ...............................................................................................................3

21 U.S.C. § 801 ...............................................................................................................3

21 U.S.C. § 822 ...............................................................................................................3

H.R. Rep. No. 91-1444, 1970 U.S.C.C.A.N. at 4566 ...................................................3

116 Cong. Rec. 977-78 ...................................................................................................3

Federal Rule of Criminal Procedure 7 .....................................................................8, 9

## I.    INTRODUCTION

FedEx is in the business of delivering packages.  Every day, the company delivers millions of them to and from destinations throughout the United States and around the world.  Hundreds of thousands of customers have FedEx shipping accounts.  Over the last two decades, online pharmacies — i.e., businesses that distribute prescribed medications after receiving orders over the internet — have emerged as retailers who use the services of FedEx and its competitors, UPS and the United States Postal Service, to ship packages containing medicine.

In its thirty-six page Superseding Indictment against FedEx Corporation, Federal Express Corporation, and FedEx Corporate Services, Inc. (collectively, "FedEx"), the government charges that from 2000 through 2010 FedEx conspired with two ill-defined online pharmacy networks — the Chhabra-Smoley and Superior Drugs networks — to ship packages containing medication dispensed in reliance on prescriptions that had been issued in violation of federal law.  To support the charges, the Superseding Indictment includes numerous broad and conclusory allegations that FedEx or FedEx's employees *knew* that these online pharmacy networks operated illegally as a general matter and, more specifically, that the packages FedEx transported for the online pharmacies charged as co-conspirators contained medications that had been dispensed without a valid prescription.  But the Superseding Indictment fails to explain in detail which employees supposedly had such knowledge, how and when they gained it, or from whom.  Nor have the government's allegations been meaningfully fleshed out by the millions of pages of discovery received to date.  As a matter of fundamental fairness and in the interests of efficient case management, the government should be ordered to

particularize its allegations so that FedEx may have a fair opportunity to prepare its defense.

## II.    SUMMARY OF THE REQUESTED BILL OF PARTICULARS

FedEx requests a bill of particulars to particularize four discrete issues that are implicated by the charges but left vague and unspecific in the Superseding Indictment, and therefore require clarification in order for FedEx to prepare its defense:

1.  The nature and circumstances — including the declarant and recipient — of alleged disclosures by government officials to FedEx employees concerning the illegality of the internet pharmacy industry.

2.  The nature and circumstances — including the identity of the individuals involved — of instances in which FedEx employees were allegedly aware of the nature of the Chhabra-Smoley and Superior Drugs networks' operations and, specifically, the illegality of those operations.

3.  The identity of the allegedly false representations that the Chhabra-Smoley and Superior Drugs networks supposedly made to the government and public at large asserting the legitimacy of their operations.

4.  The supporting data and method of calculation for the Superseding Indictment's allegation concerning FedEx and its alleged co-conspirators' "gross gain," as asserted in the Sentencing Allegation for the alternative maximum fine.

A proposed order setting forth the topics about which the government should file a bill of particulars accompanies this motion.

III.     **FACTS**

A.      **FedEx, a Common Carrier**

The distribution of controlled substances by manufacturers, wholesalers, prescribers and dispensers is regulated by the Drug Enforcement Administration ("DEA") as part of a "closed system" under the Controlled Substances Act ("CSA"), 21 U.S.C. § 801 *et seq.  See* H.R. Rep. No. 91-1444, 1970 U.S.C.C.A.N. at 4566; 116 Cong. Rec. 977-78.  All such entities are required to register with the DEA.  *See* 21 U.S.C. § 822.  Similarly, the dispensation of prescription medications is regulated by the Food and Drug Administration ("FDA") under the Food, Drug and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.*

But FedEx is not a manufacturer, wholesaler, prescriber or dispenser of prescription or controlled pharmaceuticals.  Rather, it is one of the world's largest common carriers.[1]  Each day FedEx Express ships 3.9 million packages — of virtually every product and commodity.  Collectively, the FedEx defendants employ more than 180,000 people and serve more than 220 countries and territories.  Considering turnover, the total number of FedEx employees over the time period of the indictment is substantially higher than 250,000.

Hundreds of thousands of customers have FedEx accounts.  These accounts permit customers to ship packages through FedEx, but pay for the shipping services

---

[1] Common carriers like FedEx are specifically exempted from the CSA's registration requirements.  21 U.S.C. § 822(c) provides in relevant part that "[t]he following persons shall not be required to register and may lawfully possess any controlled substance or list I chemical under this title: . . . . (2) A common or contract carrier or warehouseman, or an employee thereof, whose possession of the controlled substance or list I chemical is in the usual course of his business or employment."

only on a periodic basis — much like using a credit card.  Many customers set up

FedEx accounts by filling out a simple online form.  Over the past decade or so,

FedEx's many customers included some online pharmacies.

### B.    The Superseding Indictment

The Superseding Indictment charges FedEx with conspiracies to violate the CSA

and FDCA, and the federal money-laundering statutes, as well as with several

substantive violations of the CSA.  All of the charges relate to a basic scenario: FedEx's

shipment of packages for two alleged networks of online pharmacies.  The government

calls one of these networks the "Chhabra-Smoley Organization," and asserts that the

other network involved an entity called Creative Pharmacy Services, a.k.a. Superior

Drugs.

Together, the two purported conspiracies span more than 10 years,[2] include 24

alleged co-conspirators, and involve at least 15 websites and 16 fulfillment pharmacies

through which those co-conspirators allegedly distributed invalidly prescribed

medication.  Superseding Indictment ¶¶ 23, 25, 27, 71, 73 & 75.  The government

claims that these two online pharmacy networks illegally distributed prescription

pharmaceuticals because the prescriptions from which the shipments arose were not

issued for a legitimate medical purpose and because the doctors who issued the

prescriptions were not acting in the usual course of medical practice.  The government

---

[2] The Superseding Indictment charges that the conspiracy involving the Chhabra-Smoley Organization extended from January 2000 through February 20, 2008, and that the conspiracy involving Superior Drugs lasted between September 2002 and May 12, 2010.  Count Eighteen charges that one of the Superior Drugs-related money-laundering conspiracies began "no later than November of 2003."

further asserts that unidentified FedEx employees knew that these two networks were

shipping medications prescribed without any legitimate medical purpose and not in the

usual course of medical practice, in part because unidentified employees "knew that the

[networks were] distributing controlled substances based on prescriptions issued by

doctors after reviewing customers' responses to an online questionnaire," "observed

the [pharmacies'] operations," and "assisted with preparing these packages [of

controlled substances] for shipment."  Superseding Indictment ¶¶ 30, 33, 34, 68, 77, 80,

81 & 112.  The government also alleges that FedEx employees "knew that the purpose

of the [charged online pharmacies] was to provide controlled substances to consumers

without a face-to-face meeting" and knew the pharmacies' prescription methods violated

the "CSA, FDCA, and numerous state laws" and were "not in accordance with the usual

course of medical and pharmacy practice according to the … AMA, FSMB, NABP, and

numerous state laws."  Superseding Indictment ¶¶ 38 & 83.  Finally, the Superseding

Indictment alleges that on at least six different occasions, unidentified government

officials affiliated with the DEA, FDA or Congress informed unidentified FedEx

employees that "illegal Internet pharmacies were using [FedEx's] shipping services,"

that "a prescription based solely on a customer's completion of an online questionnaire

was invalid," that "controlled substances and prescription drugs dispensed based upon

such an invalid prescription [violated] the CSA, FDCA, and numerous state laws," and

that "doctors writing such prescriptions and pharmacists filling them were [violating] …

guidelines published by the American Medical Association (AMA), Federation of State

Medical Boards (FSMB), and National Association of Boards of Pharmacy (NABP)."

Superseding Indictment ¶ 4.

## C.     Status of Discovery and Proceedings

The discovery in this case will be voluminous.  To date, the government has produced more than 741,096 separate documents comprising 1,687,482 total images (i.e., pages).  This figure does not include an enormous number of native files that have been produced but which cannot readily be loaded into a database and made easily searchable.  To date, much of the production consists of voluminous investigative files from prior prosecutions of FedEx's alleged co-conspirators, not records that shed substantial light on the alleged actions of individual FedEx employees or their knowledge or intent.

## IV.   ARGUMENT

### A.     Applicable Law

Together, the Fifth and Sixth Amendments to the United States Constitution guarantee that a defendant shall not confront criminal proceedings without the protection of a grand jury indictment informing him of the nature and cause of the charges against him.  *See Russell v. United States*, 369. U.S. 749, 763 (1962); *United States v. Cruikshank*, 92 U.S. 542 (1876).  These fundamental rights are intended "to enable [a defendant] to prepare his defense, to ensure that the defendant is prosecuted on the basis of facts presented to the grand jury, to enable him to plead jeopardy against a later prosecution, and to inform the court of the facts alleged so that it can determine the sufficiency of the charge."  *United States v. Cecil*, 608 F.2d 1294, 1296 (9th Cir. 1979), *abrogated on other grounds as stated in United States v. Cooper*, No. CR 09-156 SI, 2014 U.S. Dist. LEXIS 105617 at *12-13 (N.D. Cal. 2014); *see also Russell*, 369 U.S. 766-68 & n.15.  The Supreme Court has long recognized that "it is not

sufficient that the indictment shall charge the offense in the same generic terms as in the definition: but it must state specifics, -- it must descend to particulars." *Cruikshank*, 92 U.S. at 558 (citing 1 Arch. Cr. Pr. and Pl., 291).

In most cases, an indictment that lays out the charges in "plain, concise and definite language" describing "the essential facts constituting the offense charged" is sufficient to accomplish these objectives. *See* Rule 7(c)(1), Fed. R. Crim. Pro. However, some cases are so complex — either in their factual or legal contexts or as a result of the interplay of both — that even a facially adequate indictment does not afford sufficient notice of the charges the defendant must answer. As explained by the Honorable D. Lowell Jensen in *United States v. Trumpower,* 546 F. Supp. 2d 849 (E.D. Cal. 2008), where the indictment sufficiently pled the "elements of a money laundering charge and the kind of crime which produced the laundered funds":

> Logic compels the conclusion that this alleged long-term scheme involved a great many persons, and an even greater number of transactions. In this mass of historical facts, there is no way for [the defendant] to divine how the government intends to prove the specific criminal conduct that produced the criminal proceeds said to be the subject of the money laundering charges. Accordingly the Court orders that the government must file a supplemental bill of particulars.

*Id.* at 852; *see also United States v. Ablett*, No. CR 09-00749 RS, 2010 U.S. Dist. LEXIS 87122 at *10-11 (N.D. Cal. Aug. 3, 2010) (a bill of particulars was needed to clarify complicated RICO indictment and allegations of conduct by associates); *United States v. Wong,* No. CR 06-428 SI, 2007 U.S. Dist. LEXIS 10729 (N.D. Cal. Feb. 2, 2007) (a bill of particulars was needed to clarify open-ended time, place and person allegations in a complex conspiracy case). In order to address this potential gap between an adequately drafted indictment and protection of the defendant's right to

meaningful notice, the district courts are vested with discretion to direct the government to file a bill of particulars. *See* Rule 7(f), Fed. R. Crim. Pro.; *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1979) ("[A] bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense."); *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981) (A bill of particulars "is intended to supplement the indictment by providing more detail of the facts upon which the charges are based."); *United States v. Cerna*, CR 08-730 WHA (N.D. Cal. 2009), Dkt. No. 632 at 4 (without particularization of when and where meetings occurred and who was present, "defendants cannot know the universe of conduct against which they must prepare a defense").

The Ninth Circuit recognizes that a bill of particulars serves three important purposes:

> To inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes.

*United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (*quoting United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979)); *see also Will v. United States*, 389 U.S. 90, 99 (1967) ("[I]t is not uncommon for the Government to [file] . . . a bill of particulars, where this information is necessary or useful in the defendant's preparation for trial."). While a defendant is not entitled to disclosure of all of the evidence that the government may seek to introduce at trial, he or she is entitled to learn the theory of the government's case and to avoid undue surprise at trial. *Ayers*, 924 F.2d at 1483; *Giese*, 597 F.2d at 1180; *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960). Prior to

1966, the federal rules only permitted the court to direct the filing of a bill of particulars "for cause." That condition was eliminated "to encourage a more liberal attitude by the courts toward bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual cases." Fed. R. Crim. P. 7(f) Advisory Committee's Note; *see also United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1971) (the "net result of the change seems to have been to increase the instances in which particulars are granted, thus contributing to a desirable decline in the 'sporting theory' of criminal justice").

In determining whether a bill of particulars is required in a specific case, the court is to consider whether the defendant has received adequate notice of the charges from the indictment, general discovery and other disclosures. *Long*, 706 F.2d at 1054; *Giese*, 597 F.2d at 1180. Counterintuitively, perhaps, several courts have found that relatively massive productions of discovery may in some cases actually support the issuance of a bill, especially where the defendant must sift through reams of documents to attempt to identify relevant material that may or may not be there. *See, e.g., Trumpower,* 546 F. Supp. 2d at 852 (ordering a bill of particulars concerning the specifics of the fraud schemes underlying a money laundering charge, including when and how the offenses were committed, who committed the offenses, and the identity of the victims); *United States v. Feil*, No. CR 09-00863 JSW, 2010 U.S. Dist. LEXIS 48262 at *9-11 (N.D. Cal. Apr. 15, 2010) (ordering a bill of particulars in a case involving several drug and money laundering conspiracy charges spanning three years, 70,000 pages of discovery, and continuing discovery disputes to specify the nature, time and place of each alleged conspirator's participation); *United States v. Chen*, No. C 05-375

SI, 2006 U.S. Dist. LEXIS 84786 at *11-12 (N.D. Cal. Nov. 9, 2006) (ordering a bill of

particulars for a conspiracy charge where discovery encompassed over 150,000 pages

of documents and approximately 111,250 TIFF images, 1,250 photographs, 5,800

minutes of audio recordings, and 900 minutes of video surveillance); *Wong,* 2007 U.S.

Dist. LEXIS 10729 (same).

### B.    A Bill of Particulars Is Necessary for Effective Preparation of the Defense and to Avoid Surprise at Trial

FedEx confronts four drug conspiracy counts that are far more complex than

those charged in the cases cited above.  Here, the drug distribution schemes allegedly

spanned more than ten years and involved more than 20 alleged co-conspirators and

over 30 affiliated websites and fulfillment pharmacies.  In this broad context, the

government does not contend that FedEx affirmatively engaged in the businesses of

issuing or fulfilling prescriptions, lawful or unlawful.  Rather, it is the government's

contention that FedEx essentially became a joint venturer with two vast online

pharmacy networks by virtue of its employees' alleged knowledge of those networks'

operations and its shipping of packages sent by the networks.  Further, the government

contends that FedEx received specific notice from government officials that the

business model for these types of online pharmacies was illegal.  Yet throughout the

Superseding Indictment the government consistently chose not to identify the FedEx

employees to whom such incriminating knowledge or notice is allegedly attributed.

The FedEx defendants had well upwards of 250,000 employees over the ten

years of the charged conspiracies.  Absent specification by the government, FedEx has

no effective means of determining which employees the government claims allegedly

harbored the guilty knowledge and intent that are essential elements of the charged

offenses.  Similarly, the DEA, FDA and other relevant government agencies employed tens of thousands of individuals over the timeframe of the indictment.  FedEx cannot fairly be asked to divine which unidentified government officials supposedly conveyed the crucial nuggets of information, as alleged in the Superseding Indictment.

The massive volume of discovery in this case does not help to fill the void.  Much of the discovery produced to date sheds no light on the critical issues of FedEx's knowledge or intent.  With hundreds of thousands of pages and millions of images to sift through, defense counsel cannot effectively identify the whos, whats and wheres that the government omitted from the Superseding Indictment.  As in *Feil* and the other cases cited above, the vast volume of discovery underscores the need for particularization:  the defense should not be compelled to sift and guess, while the government is in a position to pick and choose.

FedEx seeks an order requiring the government to particularize its allegations concerning unidentified government officials and FedEx employees so that there is no surprise at trial.  Such disclosures will also serve to streamline the litigation.  Without the requested particularization, defense counsel will be compelled to err on the side of over-inclusion as they contemplate, prepare and file pretrial motions.  Similarly, the requested information will help counsel identify the correct individuals and entities for the issuance of subpoenas, both documentary and testimonial.  The result will be a significant conservation of both the parties' and the Court's resources.

For these reasons, the government should be compelled to answer the following questions raised but intentionally deflected in the Superseding Indictment.

      1.     *The Nature and Circumstances of Alleged Warnings to FedEx Concerning the Illegality of the Internet Pharmacy Industry*

As to the six or more occasions on which government officials allegedly informed FedEx that illegal online pharmacies were using FedEx's services to illegally distribute prescription medications, per Superseding Indictment ¶ 4:

- Where, when and how was this information conveyed to FedEx?

- Who were the government officials who allegedly warned FedEx that prescriptions issued solely upon online questionnaires were invalid and that medications shipped with such prescriptions were illegally distributed?

- Who were the FedEx employees who were allegedly so informed?

- Who were the government officials who allegedly told FedEx that doctors and pharmacists who issued and fulfilled prescriptions based on online questionnaires were acting outside the usual course of professional practice and not for a legitimate medical purpose?

- Who were the FedEx employees who were allegedly so informed?

      2.     *The Identity of the FedEx Employees Who Allegedly Observed and Participated in the Business Operations of the Co-Conspirators' Operations or Knew of the Illegal Nature of those Operations*

As to the unidentified FedEx employees who supposedly had direct knowledge of the Chhabra-Smoley and Superior Drugs networks' operations as alleged in Superseding Indictment ¶¶ 6, 7, 30, 33, 34, 38, 68, 77, 80, 81, 83 and 112:

- Who were the FedEx employees who allegedly "knew that the [Chhabra-Smoley and Superior Drugs networks] were distributing controlled substances based on prescriptions issued by doctors after reviewing customers' responses to an online questionnaire"?  *See* Superseding Indictment ¶¶ 30 & 77.

- Who were the FedEx employees who allegedly "observed the [pharmacies'] operations," and "assisted with preparing these packages [of controlled substances] for shipment"?  *See* Superseding Indictment ¶¶ 33, 34, 80 & 81.

- Who were the FedEx employees who allegedly "knew that the purpose of the [charged online pharmacies] was to provide controlled substances to consumers without a face-to-meeting with, or physical examination, laboratory tests, or diagnosis, by a physician"?  *See* Superseding Indictment ¶¶ 38 & 83.

- Who were the FedEx employees who allegedly knew the pharmacies' prescription methods violated the "CSA, FDCA, and numerous state laws" and were "not in accordance with the usual course of medical pharmacy practice according to the … AMA, FSMB, NABP, and numerous state laws"?  *See* Superseding Indictment ¶¶ 38 & 83.

- Who were the FedEx employees who allegedly "knew that the [Chhabra-Smoley and Superior Drugs networks] distributed controlled substances to customers who had no legitimate medical need for them"?  *See* Superseding Indictment ¶¶ 38 & 83.

- Who were the FedEx employees who knew that the payments to FedEx from the Chhabra-Smoley and Superior Drugs networks "represented proceeds of the sale of controlled substances and prescription drugs based on invalid prescriptions that were issued outside the usual course of professional practice and not for a legitimate medical purpose"?  *See* Superseding Indictment ¶¶ 68 & 112.

- Who were the FedEx employees who "knew that the money orders and checks were intended as payment [to Superior Drugs] for controlled substances that

FedEx had delivered and attempted to deliver"?  *See* Superseding Indictment ¶ 119.

- Who at FedEx knew that "orders [for controlled substances] had been placed by customers after filling out an online questionnaire with no contact between the prescribing physician and patient and were thus distributed outside the usual course of professional practice and not for a legitimate medical purpose and were not based on valid prescriptions"?  *See* Superseding Indictment ¶ 119.

### 3.   *The False Representations that the Charged Co-Conspirators Allegedly Made to the Government and to the Public*

The Superseding Indictment alleges that the Chhabra-Smoley and Superior Drugs co-conspirators created a false aura of legitimacy for their business operations by making false and misleading representations to both the government and public at large.  Superseding Indictment ¶¶ 47 & 94.  But the indictment identifies none of the allegedly false representations.  While FedEx and the government have differing views as to the legal significance of such representations, their disclosure is necessary to enable FedEx to prepare its defense.  The government should therefore be ordered to specifically identify alleged false statements by the Chhabra-Smoley and Superior Drugs networks that are included in the following categories:

- "[P]hysicians had written valid prescriptions for the drugs they were distributing";

- "[T]he 'prescription' issued by a doctor . . . based solely on his or her review of the responses to an online questionnaire was valid and in accordance with federal and state law";

- "[T]he prescription drugs were dispensed pursuant to valid prescriptions after review by a pharmacist in accordance with federal and state law"; and

- "[T]he websites were a legitimate, lawful, safe, and responsible source for these drugs."

*See* Superseding Indictment ¶¶ 47 & 94.

          4.    *The Supporting Data and Method of Calculation of the "Gross Gain" for the Alternative Fine Allegation*

18 U.S.C. § 3571(d) provides that whenever an offense involves pecuniary gain or loss, a sentencing court may impose a fine up to an amount equal to twice the "gross gain" or "gross loss."  The Superseding Indictment alleges that, if convicted, FedEx would be subject to an "alternative maximum fine" pursuant to § 3571(d) based upon the assertion that FedEx and its "co-conspirators derived gross gains of at least $820,000,000."  Superseding Indictment ¶ 126.  In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that the Sixth Amendment right to a trial by jury requires that any fact that increases a criminal defendant's maximum potential sentence must be charged in the indictment, submitted to the jury and proved beyond a reasonable doubt.  For several years thereafter, the courts reached conflicting conclusions about whether the rule of *Apprendi* applied to potential fines, as opposed to imprisonment.  This confusion was resolved by the Supreme Court's decision in *Southern Union Co. v. United States*, __U.S.__, 132 S. Ct. 2344 (2012), which held that "the rule of *Apprendi* applies to the imposition of criminal fines . . . ."  *Id.* at 2357.  It is now beyond cavil that any fact that can increase the maximum fine applicable upon conviction — including an allegation of "gross gain" under § 3571(d) — must be pleaded in the indictment and proved at trial.  *See United States v. Hsiung*, 758 F.3d 1074, 1095 (9th Cir. 2014); *United States v. Pfaff*, 619 F.3d 172, 175-76 (2d Cir. 2010) (per curium).  Accordingly, the factual basis for an alternative fine under § 3571(d) must be pleaded

and proved to the jury beyond a reasonable doubt.

As noted above, the Superseding Indictment alleges without any specification that FedEx *and its alleged co-conspirators* derived "gross gains" of at least $820 million. As a matter of logic, this allegation must be based upon internal financial data not only from FedEx but also from the more than twenty co-conspirators listed in the indictment. Presumably, such data was presented to the grand jury; and necessarily, the government will be required to present such evidence at trial.  In order to be able to effectively prepare its defense, FedEx must have particularization of the supporting data and method of calculation that the government relied upon to support the Sentencing Allegation in the Superseding Indictment.

### C.   A Bill of Particulars is Necessary to Preserve FedEx's Double Jeopardy Rights

As discussed, one of the purposes for a bill of particulars is to "enable [a defendant] to plead [its] acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes." *Ayers*, 924 F.2d at 1483 (*quoting Giese*, 597 F.2d at 1180).  This double jeopardy concern is particularly present in this case, as the government has indicated to the Court that — notwithstanding the fact that the government's pre-indictment investigation stretched on for nine years[3] — its investigation is continuing and it may bring further charges against FedEx.  If the government is not required to particularize its allegations as discussed in Part VI.B., *infra*, there can be no assurance that a

---

[3] *See http://www.justice.gov/usao/can/news/2014/2014_07_17_fedex.indicted.press.html* (government press release stating that the initial indictment in this case arose from "a 9-year investigation by the DEA and FDA").

verdict in this case will effectively bar future prosecution for the same conduct and offenses.

## V.     CONCLUSION

The government's Superseding Indictment is crafted to mask in secrecy many of its most crucial allegations, leaving preparation of the defense to speculation.  The charges are too serious and the case too complex for this.  FedEx is not seeking wholesale disclosure of the government's evidence.  It has carefully drafted its requests to elicit specification of allegations that must be known to the government and could readily be disclosed, but were omitted from the Superseding Indictment.  The granting of these requests is necessary to enable FedEx to effectively prepare its defense and to avoid surprise at trial.  For all of the above-stated reasons, the Court should grant the motion for a bill of particulars.

Dated:  December 3, 2014

Respectfully submitted,                    ARGUEDAS, CASSMAN & HEADLEY, LLP


                                           By: _____/s/_____
                                               Cristina C. Arguedas
                                               803 Hearst Avenue
                                               Berkeley, CA 94710
                                               (510) 845-3000

                                               Counsel for FedEx Corporation,
                                               Federal Express Corporation and
                                               FedEx Corporate Services, Inc.