**Pages 1 - 13**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Charles R. Breyer, Judge

```
UNITED STATES OF AMERICA,      )
                               )
          Plaintiff,           )
                               )
  VS.                          )      NO. CR 14-380 CRB
                               )
FedEx Corporation, et al.,     )
                               )
          Defendants.          )
_____)
```

                                    San Francisco, California
                                    Wednesday, September 24, 2014

                    **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    MELINDA HAAG
                    United States Attorney
                    450 Golden Gate Avenue
                    San Francisco, California  94102
        **BY:**  **KIRSTIN M. AULT**
              **KYLE WALDINGER**
              **ASSISTANT UNITED STATES ATTORNEYS**

For Defendant FedEx:
                    ARGUEDAS, CASSMAN & HEADLEY LLP
                    803 Hearst Avenue
                    Berkeley, CA 94710
        **BY:**  **CHRIS ARGUEDAS**
              **RAPHAEL GOLDMAN**
              **CONNIE LEWIS LENSING**
              **ATTORNEYS AT LAW**

For Defendant FedEx
                    Skadden, Arps, Slate, Meagher & Flom
                    525 University Avenue
                    Palo Alto, California  94301
        **By:**  **ALLEN RUBY**
              **ATTORNEY AT LAW**

Reported By:  Rhonda L. Aquilina, CSR #9956, RMR, CRR,
             Court Reporter

1  **Wednesday - September 24, 2014**                    **2:10 p.m.**

2                      **P R O C E E D I N G S**

3                            ---oOo---

4          **THE CLERK:** Calling case CR-14-0380, the United States

5   of America versus Fed Ex, et al.

6       Appearances, counsel.

7          **MS. AULT:** Good afternoon, your Honor.  Kirstin Ault

8   and Kyle Waldinger for the United States.

9          **MS. ARGUEDAS:** Good afternoon, your Honor.  Chris

10  Arguedas for FedEx, and if I may introduce Connie Lewis

11  Lensing, senior vice-president.

12         **MS. LENSING:** Good afternoon, your Honor.

13         **THE COURT:** Good afternoon.  How about introducing the

14  person who is to your left.

15         **MR. RUBY:** Good afternoon, your Honor.  Allen Ruby

16  also for FedEx.

17         **MR. GOLDMAN:** And Raphael Goldman from the Arguedas,

18  Cassman & Headley.

19         **THE COURT:** So where are we?

20         **MS. AULT:** Your Honor, we're in the process of

21  producing discovery to the defense.  So far we've been able to

22  work out any issues that we have, so I don't believe we have

23  any discovery issues to present to the Court.  We've presented

24  the Court with a motion schedule and an order to exclude time,

25  both of which the Court has signed off on.

1    I think our next appearance will be February 18th for a
2 motions hearing.  The initial round of motions is for
3 non-substantive motions.  I believe once the defense has had a
4 chance to look at the discovery, we're going to set a motion
5 schedule for substantive motions; if we could do that before
6 the next court appearance, we will, and we'll submit an order
7 to the Court.
8         **THE COURT:**  Non-substantive motions?
9         **MS. ARGUEDAS:**  They don't sound very important, do
10 they, when you put it that way?
11                     (Laughter)
12         **THE COURT:**  I mean, why don't I just rule on them now?
13                     (Laughter)
14         **THE COURT:**  I'll give you a non-substantive ruling.
15                     (Laughter)
16         **MS. AULT:**  Defense counsel's terminology, your Honor.
17         **MS. ARGUEDAS:**  Yeah, well, we meant bill of
18 particulars kind of thing.
19         **THE COURT:**  Sorry?
20         **MS. ARGUEDAS:**  We meant a bill of particulars, for
21 example.  It could be discovery motions, although we hope not,
22 that sort of thing, in other words not something like a motion
23 to dismiss based on the very substantial issues that we will
24 have, but we're not ready to set them yet, although we hope to
25 set them soon.

1       **MS. AULT:** I believe, your Honor, that the theory is
2 these are motions that the defense does not need to review the
3 discovery to bring, and then once they have had a chance to
4 review the discovery, then motions that may be based on issues
5 that they identified in discovery are issues that --
6       **THE COURT:** Well, like a bill of particulars, as an
7 example, may very well be obviated, I would think, by the
8 discovery that's produced.
9       **MS. ARGUEDAS:** Right. If it is, we won't file it.
10       **THE COURT:** Okay. So when are we getting into the
11 substantive motions? When is that?
12       **MS. AULT:** Your Honor, this is -- maybe I should let
13 Ms. Arguedas, this was her proposal, and we're happy to accede
14 to it. It's the defense's motions for the most part.
15       **MS. ARGUEDAS:** We are anticipating that after, you
16 know, we're getting hard drive after hard drive after hard
17 drive of discovery, and we are going through it, and absolutely
18 as soon as we can set a schedule for substantive motions we're
19 going to do that. We hope to do that before we come back to
20 court. We just need to review a little more discovery before
21 we're ready to say --
22       **THE COURT:** Right. But let me tell you my impression
23 of the discovery, and I may be wrong, but it certainly would
24 fall within at least two categories; one category would be what
25 I would call the underlying discovery -- the discovery

1  underlying the charges that have been litigated in two cases in
2  front of me and countless pleas and so forth; that is, what
3  were the activities involving individuals, involving the,
4  quote, the patients or the people who ordered the drugs, the
5  doctors who prescribed them, fulfillment pharmacies that filled
6  them, and everything attenuated to that.  There's all of that
7  discovery, okay.  Then there's a category of discovery of which
8  I'm unaware.  I'm aware of categories, but I'm unaware of any
9  of the particulars, which would be what did FedEx know, and at
10 what time, what were they told, and what did they do, and what
11 did they say, I guess all of that, which essentially is in one
12 sense the heart of the case.
13          **MS. ARGUEDAS:**  Right.
14          **THE COURT:**  Though, clearly, FedEx I guess could take
15 the position that these prescriptions were lawful, as the
16 defendants have taken.  In a sense, I don't know that I want to
17 spend a lot of time dealing with that issue.  I've already
18 dealt with it in two cases.  It's on appeal now, I mean, the
19 right or wrong in what my rulings are, and I don't understand
20 that I would necessarily change my view as to that activity.
21      So I'm much more interested in the second part or the
22 first part, or however you want to characterize it.  I'm
23 interested in that:  What did FedEx know?  What were they told?
24 What did they do?  What did they say?  That is interesting,
25 and, you know, I'll give you enough time to do it to find out

1  all about that, but I just don't think a lot of time ought to
2  be devoted to the other issues, though they may be perfectly
3  legitimate issues in a trial, they may be.  I mean, I don't
4  know that you're foreclosed in a trial from any of that, if
5  not -- you're a party, I would assume you're not foreclosed.
6        But if your argument is look, given what did FedEx know,
7  what did they do, what were they told, what did they say, and
8  given all of that and the law, they can't be convicted or the
9  charges should be dismissed or something else, if that's your
10 argument, then -- sorry.
11           **MS. ARGUEDAS:**  You said let's get to it.
12           **THE COURT:**  Well, let's get to it.  I mean, you have a
13 company that provides ongoing services.  There's no reason that
14 we spend years litigating it.  I think you have to spend some
15 time litigating it, because the parties are entitled to know --
16 to have a real firm understanding of the evidence, and it's an
17 important -- it's not unimportant to the prosecution.  It's an
18 important prosecution for a variety of reasons.  And by my
19 saying it, I'm not characterizing it as, quote, that it's an
20 appropriate or not an appropriate prosecution.
21           **MS. ARGUEDAS:**  I was just going to say, I would
22 characterize it as a controversial prosecution, but I know what
23 you mean.
24        But your Honor, if I may say --
25           **THE COURT:**  I think it's that.

1    **MS. ARGUEDAS:**  The categories you described,
2 interestingly, I have the same two categories, and I have
3 somewhat cavalierly put it as category 1 as the discovery I'm
4 not interested in, and category 2 is the discovery I am
5 interested in, and we are absolutely on the same wavelength as
6 you are in terms of what needs to be addressed to this Court at
7 an early stage.
8    The problem is, and I'm not saying this in a blaming way,
9 when we get these gigabytes, we'll get a hard drive that has
10 mixed within it lots of category number 1 discovery and some of
11 category number 2 discovery.  If there was a way for the
12 Government to just give us the number 2, we'd be very happy,
13 and we could do this more quickly.
14    **THE COURT:**  Well, I'm sure there is a whole category
15 of number 2 that can be provided that is all the contacts that
16 the Government has had with FedEx from a certain date forward,
17 and what was disclosed and so forth.  I'm certain there are
18 some of that.
19    **MS. ARGUEDAS:**  We've been getting some of it, but we
20 would be most happy and could move much more expeditiously if
21 they gave us all of that and waited on the category number 1
22 which there are going to be issues about that, without a
23 question, but they're not probably issues that we would be
24 addressing the Court about now.
25    **THE COURT:**  I'd be surprised, and maybe I'm wrong on

1  this, I mean, is there anything that the Government wouldn't
2  disclose in this case?
3           **MS. AULT:**  Your Honor, I'm not going to say there's
4  nothing.
5           **THE COURT:**  When I say wouldn't disclose, I mean think
6  that there is a danger to somebody or that it's a confidential
7  informant that can't be disclosed; is there any of that in this
8  case?
9           **MS. AULT:**  Your Honor, there isn't.  It's mostly
10 simply a question of timing, and we've had these discussions
11 with defense counsel, and we've worked out this issue.  There
12 were some witnesses who were a little uncomfortable with their
13 statements being disclosed to the company, and we have worked
14 out a process to work through that, and we are working through
15 that process, so I don't think that that is an issue.  We are
16 producing large amounts of discovery to the defense; However,
17 we are producing it as we did in the other internet pharmacy
18 cases, with a discovery guide that clearly lays out whether it
19 falls into category 1 or category 2, and we are producing that
20 in Excel spreadsheets so that they could search it and sort it.
21          **THE COURT:**  So when do you think this massive task
22 that you brought upon yourself, when do you think this task
23 will be completed?
24          **MS. AULT:**  Your Honor, I believe that it will -- I
25 hesitate to say completed, because we are always continually

1  investigating and continually preparing our case, and so we
2  will always be, as we learn new information, we will always be
3  producing it to the defense.
4      **THE COURT:**  But given what you have today.
5      **MS. AULT:**  So where we are, our status is that we have
6  currently made five major productions to the defense.  We have
7  produced 1.06 terabytes of data, approximately, which comes out
8  to just around 2.5 million files.  We believe that we have
9  about five gigabytes more of data to produce, which we can
10 probably get out in another two more productions.  After that,
11 we will have kind of smaller productions that will come out as
12 we finish doing things like completing reports, you know,
13 organizing some additional things, but we do believe that the
14 bulk of it has been produced, and/or will be produced in the
15 next, probably three to four weeks.
16     **MS. ARGUEDAS:**  But I would like to say, on the
17 category 1 and category 2, because one of the things that I do
18 not want to have happen is have the Government say we've given
19 them 1.6 terabytes of material.  I agree, they have, but the
20 bulk of it has been about *Superior Drugs* and the *Napoli* case,
21 and that's in category 1.  That does not really help us very
22 much prepare for the trial, but most importantly, it doesn't
23 help us at all prepare for the very substantial motions we want
24 to make before this Court.  So if they held back some of those
25 terabytes and gave us some of the number 2 discovery, we could

1  do everything faster.
2      **MS. AULT:**  Well, your Honor, we're not going to hold
3  back discovery.
4      But the other thing that I would point out --
5      **MS. ARGUEDAS:**  You know what I mean.
6      **MS. AULT:**  The other thing that I would point out is
7  that a huge amount of the category 2 data is the company's own
8  documents, which they have, which they have produced to us,
9  which we are not obligated to nor are we reproducing to them.
10     **THE COURT:**  How long does it take you to produce all
11 of that?
12     **MS. ARGUEDAS:**  Wait, wait, wait, wait.  They're not
13 giving us back our own documents.  We're not talking about
14 that.  I'm talking strictly about reports of interviews of
15 witnesses.  They could be our -- they could be employees or
16 former employees, but they're interviews the Government did.
17     And again, I'm not trying to complain.  They've given us
18 some of this.  It's just that they've given us terabytes of
19 *Napoli* and *Superior*.  It's not that I don't want that.  I want
20 it some day.  But if we're talking about getting the show on
21 the road, then they should give us -- just expedite the
22 category 2 and let us work on that.
23     **MS. AULT:**  Your Honor, I actually don't think that
24 there's an issue here.  I think we're producing the stuff.
25 They're getting it.  We will continue to do that.  And, you

1 know, the issue that -- I mean, I can't say when we're going to
2 finish.
3       **THE COURT:**  Okay.  The idea that I have is getting you
4 back here in some period of time to give me a report as to
5 where you are.
6    Look, all lawyers are excellent in this case, all sides,
7 and you're cooperating, so I'm not, you know, I don't want to
8 just start jumping in and causing problems.
9       **MS. ARGUEDAS:**  No, we welcome it, because your sense
10 of timing matches exactly ours.  We want to get this going, and
11 we want to get it going on the part of the case that is about
12 what did Fed-Ex know, what were they told, what are their
13 obligations, what does the common carrier exception mean.
14 There are a lot of huge issues here.
15       **THE COURT:**  That's what the case is about, isn't it?
16       **MS. AULT:**  And we have no issues with that.
17       **THE COURT:**  Well --
18       **MS. ARGUEDAS:**  Well, except --
19       **THE COURT:**  So what I'd like to do is I'd like the
20 Government to focus on delivering that discovery as a priority,
21 okay.  Do it your own way.  I'm not saying the other stuff
22 isn't important or related or relevant or so forth, but I'd
23 like you to prioritize that information in terms of the
24 discovery, which of course we understand it's an ongoing
25 investigation.  You're not obligated to -- you're not

1    committing to turning over something that is yet to be created,
2    and just do it that way.  I mean, there's no reason not to.
3         **MS. AULT:**  That's fine, your Honor.
4         **MS. ARGUEDAS:**  Great.
5         **MS. AULT:**  We literally are doing it as quickly as we
6    can.
7         **THE COURT:**  Great.  So when would be -- it's now
8    September.  Why don't I see you -- well, why don't we get a
9    little Christmas report here.
10                       (Laughter)
11        **THE COURT:**  Like December 17th.
12        **MR. RUBY:**  I wonder, would it be convenient to the
13   Court and counsel to do it just a week earlier on the 10th?
14        **MS. ARGUEDAS:**  Good with me.
15        **THE COURT:**  Perfect, we'll do the 10th.
16        **THE CLERK:**  You're not available that day, your Honor.
17        **THE COURT:**  Not perfect.
18                       (Laughter)
19        **MR. RUBY:**  Anything like the 9th or 11th or anything
20   in that week?
21        **THE COURT:**  What do I have that week?
22        **THE CLERK:**  You have the 11th.
23        **THE COURT:**  Then do it the 11th, okay.
24        **MS. ARGUEDAS:**  2:00 o'clock.
25        **MS. AULT:**  What time?

1       **THE CLERK:**  2:00 o'clock.
2       **MS. ARGUEDAS:**  Okay, great.  Good.  Thank you.
3       **THE COURT:**  And I'll exclude time for effective
4  preparation.
5       **MS. AULT:**  We already have, but thank you, your Honor.
6       **THE COURT:**  Thank you.  Excluded.
7    Okay.  There's the motion that's -- fine.  Thank you.
8  Thanks a lot.
9              (Proceedings adjourned at 2:24 p.m.)
10                        ---oOo---

### CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE: Friday, December 5, 2014

_____
Rhonda L. Aquilina, CSR No. 9956, RMR, CRR
Court Reporter