MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KIRSTIN M. AULT (CABN 206052)
KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6940
    FAX: (415) 436-7234
    Kirstin.ault@usdoj.gov
    Kyle.waldinger@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 14-380 CRB |
|     Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION FOR A BILL OF PARTICULARS |
|     v. | |
| FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, (A/K/A FEDEX EXPRESS) FEDEX CORPORATE SERVICES, INC., | Hearing Date: February 20, 2015<br>Hearing Time: 2:30 p.m.<br>Court: Hon. Charles R. Breyer |
|     Defendants. | |

**TABLE OF CONTENTS**

I.  Introduction ..................................................................................................................1

II. Background ..................................................................................................................1

    A.  The Indictments ...............................................................................................1

    B.  Discovery .........................................................................................................3

III. Discussion ....................................................................................................................4

    A.  The Legal Constraints on a Bill of Particulars ................................................4

        1.  A Bill of Particulars is Not a Discovery Device ..................................4

        2.  A Bill of Particulars May Not Be Used to Constrain the
            United States' Proof at Trial ..................................................................5

        3.  A Bill of Particulars May Not Be Used to Require an
            Index of Discovery ................................................................................6

    B.  The Defendants' Specific Requests Should Be Denied ...................................9

        1.  Details of the Who, Where, When and How of Government
            Notifications to FedEx Regarding Its Illegal Distribution
            of Drugs Have Been Provided in Discovery. ........................................9

        2.  The Identity of Witnesses to FedEx's Illegal Distribution
            of Drugs Are Being Produced in Discovery. .......................................11

        3.  False Representations Are Alleged in the Superseding
            Indictment and Are Being Produced in Discovery. .............................13

        4.  Supporting Data for the Calculation of the $820 Million Gain Alleged
            in the Sentencing Allegation Is Being Produced in Discovery. ..........14

IV. Conclusion .................................................................................................................15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Apprendi v. New Jersey*, 530 U.S. 466 (2000) ................................................................14

*Brady v. Maryland*, 373 U.S. 83 (1963) ..........................................................................7

*Cooper v. United States*, 282 F.2d 527 (9th Cir. 1960) ...........................................10, 15

*Russell v. United States*, 369 U.S. 749 (1962) .................................................................4

*Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012) ......................................14

*United States v. Ablett*, 2010 WL 3063145 (N.D. Cal. 2010) .........................................8

*United States v. Addonizio*, 451 F.2d 49 (3d Cir. 1972) .................................................5

*United States v. Ayers*, 924 F.2d 1468 (9th Cir. 1990) ................................................ 4-6

*United States v. Bernard*, 2009 WL 4723329 (N.D. Cal. 2009) .....................................9

*United States v. Birmley*, 529 F.2d 103 (6th Cir. 1976) ..................................................4

*United States v. Cerna*, 2010 WL 3198927 (N.D. Cal. 2010) ........................................8

*United States v. Chen*, 2006 WL 3898177 (N.D. Cal. 2006) ..........................................8

*United States v. Crayton*, 357 F.3d 560 (6th Cir. 2004) ...............................................10

*United States v. Culoso*, 461 F. Supp. 128 (S.D.N.Y. 1978) ........................................11

*United States v. Drebin*, 557 F.2d 1316 (9th Cir. 1977) .................................................6

*United States v. DiCesare*, 765 F.2d 890 (9th Cir. 1985) ........................................ 10-12

*United States v. Feil*, 2010 WL 1525263 (N.D. Cal. 2010) ............................................8

*United States v. Fassnacht*, 332 F.3d 440 (7th Cir. 2003) ............................................14

*United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007) ...................................................15

*United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979) ............................... 4-6, 10, 13

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976) .............................................4

*United States v. Hernandez*, 330 F.3d 964 (7th Cir. 2003) ...........................................12

*United States v. Jain*, 2008 WL 3289945 (N.D. Cal. 2008) ....................................... 8-9

*United States v. Kendall*, 665 F.2d 126 (7th Cir. 1981) ............................................7, 13

*United States v. Kenny*, 462 F.2d 1205 (3d Cir. 1975) ............................................... 6-7

1    *United States v. Long*, 706 F.2d 1044 (9th Cir. 1983) .................................................... 4-5, 7, 13

2    *United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971) ................................................... 5, 7

3    *United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) ........................................................ 4, 14

4    *United States v. Mitchell*, 744 F.2d 701 (9th Cir. 1984) ........................................................ 5, 7

5    *United States v. Moyer*, 674 F.3d 192 (3d Cir. 2012) ............................................................. 13

6    *United States v. Murray*, 2013 WL 183970 (N.D. Cal. 2013) .................................................. 9

7    *United States v. Orta-Rosario*, 2009 WL 1578956 (W.D.N.C. 2009) ..................................... 9

8    *United States v. Ryland*, 806 F.2d 941 (9th Cir. 1986) .................................................. 4, 6, 12

9    *United States v. Robertson*, 514 U.S. 669 (1995) .................................................................. 12

10    *United States v. Robertson*, 15 F.3d 862 (9th Cir. 1994) ....................................................... 12

11    *United States v. Trumpower*, 546 F.Supp.2d 849 (E.D. Cal. 2008) ........................................ 8

12    *United States v. Urban*, 404 F.3d 754 (3d Cir. 2005) ....................................................... 14-15

13    *United States v. Williams*, 2009 WL 2084798 (N.D. Cal. 2009) ............................................ 9

14    *United States v. Wong*, 2007 WL 404807 (N.D. Cal. 2007) ................................................... 8

15    *Yeargain v. United States*, 314 F.2d 881 (9th Cir. 1963) .................................................. 4, 11

**FEDERAL STATUTES AND RULES**

Fed. R. Crim. P. 7 ................................................................................................................... 14

Fed. R. Crim. P. 16 ................................................................................................................. 15

18 U.S.C. § 1956 ....................................................................................................................... 1

21 U.S.C. § 331, *et seq*. ............................................................................................................ 1

21 U.S.C. § 841, *et seq*. ............................................................................................................ 1

28 .S.C. § 1732 ........................................................................................................................ 4

## I. INTRODUCTION

The defendants have filed a Motion for a Bill of Particulars as to the superseding indictment, which charges them with drug trafficking, pharmaceutical misbranding, and money laundering offenses related to their shipment of drugs for illegal Internet pharmacies. A bill of particulars may not be used as a discovery device and thus cannot be used to discover witness or co-conspirator identities, the evidence supporting an allegation, or any of the other information the defendants seek in their motion. Rather, a bill of particulars is appropriate only if the United States' theory of liability is unclear. Here, the superseding indictment sets forth the theory of the United States' case: the defendants knowingly and intentionally distributed controlled substances and prescription drugs for Internet pharmacies that were not based on valid prescriptions. The superseding indictment provides details regarding this theory, including the bases for FedEx's knowledge, such as: warnings by governmental representatives, FedEx's development of policies and procedures designed to address the myriad of issues caused by law enforcement's repeated closure of its illegal Internet pharmacy customers, and statements made by FedEx's employees as reflected in its own records. The defendants' demands for particularization are tantamount to discovery requests, which the United States has predominantly satisfied, thereby answering all of their "who, when, how and why" questions. Because a bill of particulars cannot be used to obtain discovery, the defendants' motion should be denied.

## II. BACKGROUND

### A. The Indictments

On July 17, 2014, a grand jury sitting in the Northern District of California returned a 13-count indictment charging FedEx Corporation and two of its operating companies, Federal Express Corporation (also known as FedEx Express) and FedEx Corporate Services, Inc., with 15 counts of violating federal laws prohibiting the unlawful distribution of controlled substances, in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. § 841, *et seq.*, and misbranded drugs, in violation of the Food Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 331, *et seq.* Clerk's Record ("CR") 1. On August 13, 2014, the grand jury returned a superseding indictment adding three additional counts of money laundering, in violation of 18 U.S.C. § 1956, and providing additional factual background

regarding the drug trafficking and misbranding charges.  CR 28 (hereinafter "Super. Ind.").

The superseding indictment contained a total of 126 paragraphs of allegations, including 21 introductory paragraphs summarizing the alleged conduct and describing the two charged criminal organizations.  *Id*. ¶¶ 1-7.  The introductory paragraphs also contained specific allegations regarding FedEx's knowledge that it was delivering drugs for illegal online pharmacies, including warnings by various government agencies as well as FedEx's own formulation of Internet pharmacy policies within its Credit, Sales, and Operations departments.  *Id*. ¶¶ 4, 8-21.  The superseding indictment alleged that these policies were designed to protect the company's revenues, the compensation of its sales professionals, and the safety of its drivers, in light of the multitude of problems caused by the illegal nature of the online pharmacies for which it continued to deliver drug packages.  *Id*.

The superseding indictment further described the manner and means by which each of the charged conspiracies operated, including specific allegations regarding the role FedEx played.  Super. Ind. ¶¶ 24-40, 45-61, 64-69, 72-87, 92-106, 109-113, 116-120.  Examples of these allegations included dates on which FedEx employees made specific statements indicating their knowledge that FedEx was delivering drugs for illegal Internet pharmacies.  *See, e.g., id.* ¶ 36d ("In June 2004, FedEx's Senior Manager of Revenue Operations learned that Chhabra had been indicted for his involvement with Internet drug sales . . . based on 'illegally selling excessive quantities of controlled substances – diet pills – through websites by simply having customer fill out online questionnaire without anyone checking the accuracy of the questionnaire.'"); *id.* ¶ 85b ("In March of 2005, the account executive for Superior submitted a request for an adjustment to his sales goals because Superior represented a 'significant revenue loss' when 'FDA raided their property.  No longer ship same volume.'").

In addition, each FDCA conspiracy described more than ten overt acts alleging specific dates on which FedEx undertook particular acts in furtherance of the charged conspiracies.  *See, e.g., id.* ¶ 51 (On June 28, 2002, FedEx delivered 30 pills of phentermine from Rx Network to undercover agents working with the Arkansas Attorney General's Office); *id*. ¶ 53 ("On November 12, 2003, a FedEx employee received an e-mail in which she was 'advised Rx Network license was suspended for selling illegal prescriptions thru the internet – I forward email to [the Sales] A/E – advised cust had to increase weekly

pmt to 150,000 to ensure shipping privileges.'").

Similarly, each money laundering charge included detailed allegations of the manner and means by which the conspiracy operated, the role FedEx played, and specific dates and amounts of payments that were laundered. *Id*. ¶¶ 69, 113, 120. The money laundering charges incorporated the allegations made in the CSA and FDCA counts, and, furthermore, clearly described the specified illegal conduct from which the laundered funds were derived. *Id*. ¶¶ 62-69, 107-120.

**B.  Discovery**

On July 24, 2014, the Court entered a protective order regarding discovery that had been stipulated to by all parties. CR 17. On July 29, 2014, the United States began producing discovery. *See* Declaration of AUSA Ault ("Ault Decl.") ¶ 2. That process is on-going. To date, the United States has produced more than 1,142 gigabytes or 1.14 terabytes of information, including at least 2,899,215 separate files. *Id*. ¶ 3. Wherever possible, the United States has processed this information using optical character recognition ("OCR") techniques that allow the discovery to be electronically searched. *Id*. The United States has repeatedly worked with defense counsel to ensure that records are produced in a manner consistent with the discovery-processing technology used by the defense. *Id*.

Moreover, the United States has provided a discovery guide that categorizes and organizes the discovery by type of record and conspiracy or issue to which it is most relevant. *See* Ault Decl., Ex. 1 (sample pages from discovery guide). The United States has updated the discovery guide with each production, clearly highlighting the newly produced material. The latest discovery guide encompassed 21 pages and more than 580 separate entries detailing the discovery that has been produced. *Id*. ¶ 4.

In addition to the material produced by the United States to the defense, both the United States and the defense have access to over 1 million pages of materials culled from FedEx's corporate records that relate to FedEx's involvement in distributing drugs for online pharmacies. *Id*. ¶ 5. These materials contain many of the policies, procedures, and internal communications reflecting FedEx's knowledge that its online pharmacy customers were operating outside the usual course of professional practice and not for a legitimate medical purpose, as alleged in the superseding indictment. *Id*.

///

## III. DISCUSSION

**A. The Legal Constraints on a Bill of Particulars.**

    1. <u>A Bill of Particulars is Not a Discovery Device.</u>

In *United States v. Giese*, 597 F.2d 1170 (9th Cir. 1979), the Ninth Circuit explained the purpose, nature, and scope of a bill of particulars:

> The bill of particulars has three functions: to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, to avoid or minimize the danger of surprise at the time of trial, and to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague and indefinite for such purpose.

*Id.* at 1180 (quoting *United States v. Birmley*, 529 F.2d 103, 108 (6th Cir. 1976)); *see also United States v. Ayers*, 924 F.2d 1468, 1483-84 (9th Cir. 1990). Although addressing double jeopardy concerns is one of the traditionally stated purposes of a bill of particulars, the threat of double jeopardy has been substantially reduced by statute (28 U.S.C. § 1732), and case law giving defendants recourse to the entire trial record should they ever have to plead former jeopardy. *See, e.g., Russell v. United States*, 369 U.S. 749, 764 (1962); *United States v. Haldeman*, 559 F.2d 31, 126 (D.C. Cir. 1976). "[D]enial of a motion for a bill of particulars is within the discretion of the District Court; its decision will not be disturbed absent an abuse of this discretion." *Giese*, 597 F.2d at 1180; *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983).

It is manifestly not the purpose of a bill of particulars to compel the government to disclose in advance of trial the evidence by which it will attempt to prove the charges alleged in the indictment. *Giese*, 597 F.2d at 1181. As the Ninth Circuit has repeatedly observed, "[a] defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government's case." *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis in original); *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963); *see also United States v. Mejia*, 448 F.3d 436, 446 (D.C. Cir. 2006) (bill of particulars properly denied where information sought was contained in discovery such that "if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking").

Moreover, in determining whether the defendant has been adequately apprised of the government's theory, the Court is not limited to the four corners of the indictment, but may consider all materials provided to the defendant. "Full discovery . . . obviates the need for a bill of particulars." *Giese*, 597 F.2d at 1180; *Long*, 706 F.2d at 1054 (test is whether defendant is adequately aware of charges "through the indictment and all other disclosures made by the government"); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (bill of particulars unnecessary if indictment provides "sufficient details" and "if the government provides full discovery"); *Ayers*, 924 F.2d at 1484 (same). A bill of particulars is not necessary when, as now, discovery in a criminal case gives the defendant access to the evidence on which the prosecution will rely.

Nevertheless, the defendants have filed a motion for a bill of particulars, not because the nature of the charges against them is unclear, but in an attempt to obtain an outline of the evidence the United States will use to prove its case at trial. The bulk of the defendants' requests demand that the United States identify its witnesses and provide a detailed explanation of the facts and evidence that will be used to prove its case. However, the United States is not required to "weave the information at its command into the warp of a fully integrated trial theory for the benefit of the defendants." *United States v. Addonizio*, 451 F.2d 49, 64 (3d Cir. 1972). Because this is precisely what the defendants' motion requests, it should be denied.

2. <u>A Bill of Particulars May Not Be Used to Constrain the United States' Proof at Trial.</u>

A bill of particulars also may not be used in an effort to constrain the evidence the United States may use to prove its case at trial. The function of the bill is to supplement the notice provided in the indictment of the general parameters of the charges against the defendants. A bill of particulars may not be used "to compel the government to describe in detail the manner in which the crime was committed, thereby forcing the prosecution to fix irrevocably the perimeters of its case in advance of trial." *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del. 1971).

While the defendants must be tried for the same crime for which the grand jury indicted them, there is no requirement that all of the evidence that will be used to prove the charges be introduced before the grand jury. In fact, all the evidence that will be introduced at trial may not be known at the

time the indictment is returned. The government is entitled to continue to gather evidence up to and even during trial. *See United States v. Drebin*, 557 F.2d 1316, 1325 (9th Cir. 1977) (no error in district court's admission of additional evidence not specified in indictment or bill of particulars where the evidence was discovered and produced to the defense shortly before trial).

This is particularly true of the identities of witnesses and co-conspirators. Often the United States is not aware at the time of indictment of the identities of each and every individual who may have participated in a crime or who may be called as a witness. As the United States prepares for trial, additional information may come to light that will lead to the identification of previously unknown or unnamed witnesses and co-conspirators. Therefore, a request for a bill of particulars that seeks to limit the United States' proof to the evidence known at the time of the request is not proper. *Cf. United States v. Kenny*, 462 F.2d 1205, 1214-15 (3d Cir. 1975) (holding that even though government probably had not discovered "every instance" of illegal conduct that was part of conspiracy, conspiracy was properly pled and proved and defendants could not be retried for same conspiracy even if additional illegal acts were discovered after conviction).

Nor is it proper to limit the United States to its understanding of that evidence upon initial review. As witnesses are interviewed and prepared for trial, additional evidence is gathered, and documents are reviewed anew, facts and items that originally appeared in one light may take on a different cast. It is not appropriate for the defendants to use the device of a bill of particulars to prevent the United States from continuing to examine, evaluate, and appraise the evidence it will use to prove its case. This is why courts have consistently stated that defendants have the right to notice of the government's theory but not to the evidence the government will use to prove that theory. *See Ryland*, 806 F.2d at 942; *Giese*, 597 F.2d at 1181. This is especially true where full discovery has been provided so that the defendants, as well as the government, have the opportunity to review, examine, assess, and re-assess the evidence that will be used to prove the case.

3.      <u>A Bill of Particulars May Not Be Used to Require an Index of Discovery.</u>

The defendants complain that the United States has provided too much discovery and that this fact impedes their ability to adequately prepare a defense. Defendants' Motion ("Def. Mot.") at p. 11.

However, the United States is required to provide full discovery to the defendants in order to avoid any claim that information "helpful" to their defense was withheld. *See* Fed.R.Crim.P. 16; *cf. Brady v. Maryland*, 373 U.S. 83 (1963). Because the United States is not aware of all of the potential defenses that may be raised, the safest course of action is to provide complete discovery of the relevant information in the United States' possession.

While it would certainly be easier for the defendants if the United States provided them with a detailed explanation of how it intends to use the evidence produced to prove its theories at trial, there is no rule or legal principle that requires it to do so. "The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved." *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981). As noted above, courts have expressly held that it is not the function of a bill of particulars to require that the United States outline its case or explain what evidence it will use or how it will use that evidence to prove the charges at trial. As one court explained: "Concern about facilitating perjured testimony and intimidation of witnesses, as well as the feeling that one immune from discovery should not have its benefits, thus far have prevented Rule 7(f) from becoming the equivalent of written interrogatories on the civil side of the calendar. Thus, it is not the function of a bill of particulars to fully inform the defendant of the evidence which the government will present." *Manetti*, 323 F. Supp. at 696. In fact, the Ninth Circuit has routinely held that as long as full discovery has been provided, there is no need for a bill of particulars. *See Long*, 706 F.2d at 1054 ("Full discovery will obviate the need for a bill of particulars."). This is because the primary function of a bill of particulars - to inform the defendants of what they are charged with so that they can prepare a defense - is satisfied by complete discovery. *See Mitchell*, 744 F.2d at 705.

The United States is in the process of fully disclosing the evidence that it will use to present its case and has completed the bulk of its production. The function of a bill of particulars it not to inform the defendants which particular documents, witnesses, or tangible evidence the United States will introduce at trial or the purposes for which such evidence will be used. Yet, that is precisely the information they seek in their motion. *See Kenny*, 462 F.2d at 1212 (upholding trial court's denial of bill of particulars even though "[t]his decision to permit liberal inspection of all tangible evidence placed

a greater burden of preparation on the defendants than would have been the case had their suggested course, requiring answers to a detailed bill of particulars, been followed").

The cases cited by the defendants in which district courts have ordered bills of particulars are categorically different from the one charged here. Those cases fall into two categories: First are cases charging a multitude of defendants in broad, far-ranging conspiracies with little detail given as to each defendant's role in the conspiracy. *See, e.g., United States v. Cerna*, 2010 WL 3198927 at *1 (N.D. Cal. 2010) (31 defendants charged in over 50 counts with RICO violations involving murders, drug trafficking, and gun possession); *United States v. Wong*, 2007 WL 404807 at *1 (N.D. Cal. 2007) (16 defendants charge in over 30 counts related to marijuana cultivation and distribution conspiracies); *United States v. Chen*, 2006 WL 3898177 at *1 (N.D. Cal. 2006) (same). Second are cases where the indictment did not clearly specify an essential predicate to the charged offense. *See, e.g., United States v. Ablett*, 2010 WL 3063145 at *3 (N.D. Cal. 2010) (failure of racketeering murder indictment to sufficiently identify racketeering enterprise); *United States v. Feil*, 2010 WL 1525263 at *3-4 (N.D. Cal. 2010) (failure of tax indictment to sufficiently identify method of tax deficiency); *United States v. Trumpower*, 546 F. Supp. 2d 849, 854 (E.D. Cal. 2008) (failure of money laundering indictment to specify the underlying crime from which funds were laundered). Furthermore, the courts in the cases cited by the defendants granted bills of particulars as to only a limited number of requests and denied requests similar to those made in this case. *See, e.g., Cerna*, 2009 WL 2998929 at *3, *6 (denying requests to specify identities of witnesses and co-conspirators, overt acts in furtherance of conspiracies, and specific factual allegations underlying charges in indictment); *Chen*, 2006 WL 2898177 at *3 (denying requests to specify overt acts, and words or conduct by which members joined conspiracies).

Unlike the cases discussed above, the superseding indictment charges a single corporate entity and two of its operating companies with clearly defined crimes accompanied by a detailed explanation of the role the defendants played in the charged offenses and the theory of the United States' case. Other courts have denied requests for bills of particulars like those made by the defendants in this case. For example, in *United States v. Jain*, a case involving the distribution of counterfeit software, the court denied the defendant's requested bill of particulars after concluding that his request for the government

to particularize "each and every shipment of a counterfeit and to show who received it" amounted to a "step by step, item by item description of the information the government has about [the defendant's] activities." 2008 WL 3289945 (N.D. Cal. 2008); *see also United States v. Murray*, 2013 WL 183970 at *4 (N.D. Cal. 2013) (denying bill of particulars concerning loss calculation); *United States v. Bernard*, 2009 WL 4723329 at *1-2 (N.D. Cal. 2009) (denying bill of particulars for co-conspirator identities and dates, locations, and description of all overt acts and statements in furtherance of conspiracy); *United States v. Williams*, 2009 WL 2084798 at *2-3 (N.D. Cal. 2009) (denying bill of particulars requesting nature of fraudulent scheme, identity of victims, nature of harm, and amount of loss).

Importantly, in cases charging Internet pharmacy conspiracies like the one at bar, courts have consistently denied requests for bills of particulars like those made in the defendants' motion. *See, e.g., United States v. Orta-Rosario*, 2009 WL 1578956 at *3 (W.D.N.C. 2009) (government's "open file" discovery obviated need for bill of particulars even in light of production of over 2.5 terabytes of forensic computer data). Because the defendants seek information that is properly the subject of discovery and not a bill of particulars, their motion should be denied.

**B.     The Defendants' Specific Requests Should Be Denied.**

   1.     <u>Details of the Who, Where, When and How of Government Notifications to FedEx Regarding Its Illegal Distribution of Drugs Have Been Provided in Discovery.</u>

The defendants' demand for the details underlying government notifications to FedEx that it was distributing drugs for illegal Internet pharmacies is precisely the type of discovery request that is not properly the subject of a motion for a bill of particulars. The defendants' motion demands specific details, such as "[w]here, when and how was this information conveyed to FedEx?", "[w]ho were the government officials who allegedly warned FedEx that prescriptions issued solely upon online questionnaires were invalid . . . ?", and "[w]ho were the FedEx employees who were allegedly so informed?" Def. Mot. p. 12.

The superseding indictment has clearly informed the defendants of the theory of the United States' case – FedEx knew that it was distributing drugs for illegal Internet pharmacies, in part, because government representatives told the company what it was doing. Super. Ind. ¶ 4. This is all that the law

requires. What the defendants seek is an outline of the evidence – the witnesses, testimony and documents – the United States will use to prove this theory. However, this is precisely the type of information a bill of particulars cannot be used to discover. *See United States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985) (bill of particulars cannot be used to discover identities of co-conspirators, exact times of events or overt acts); *Cooper v. United States*, 282 F.2d 527, 532 (9th Cir. 1960) (bill of particulars cannot be used to discover identities of government witnesses); *accord United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (government not required to disclose names of co-conspirators in bill of particulars).

Instead, the United States has provided discovery on this issue, including reports of interviews, correspondence, notes, and presentations, that answer all of the defendants' who, what, where, when, and how questions. *See Giese*, 597 F.2d at 1181 ("Appellant's request for the 'when, where and how' of every act in furtherance of the conspiracy was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars."). The defendants' assertion that they cannot find these materials among the discovery fails to take into account the United States' 21-page discovery guide that specifically identifies the location of the vast majority of these documents. *See* Ault Decl., Ex. 1, at pp. 11-12 (identifying on the discovery guide "Documents re meetings with FedEx," and "DEA Form 6: reports re meetings with FedEx").

Moreover, the defendants' public statements regarding meetings they have had with government officials concerning Internet pharmacies demonstrate their own knowledge of these events. *See* Ault Decl., Ex. 2 (letter from FedEx Managing Director to House Subcommittee on Oversight & Investigations: "On May 13, 2002, several FedEx company representative met with the Drug Enforcement Administration (DEA), Food and Drug Administration (FDA) Office of Criminal Investigations, U.S. Customs, and U.S. Postal Inspection Service" and naming agency representatives who attended the meeting); Ex. 3 (Testimony of Robert Bryden, VP FedEx Corporate Security, before the Senate Permanent Subcommittee on Investigations: "FedEx has been working with members of your staff and members of another committee in the House on this issue for almost two years now. We have met many, many times with the staff, and met with many of the Federal agencies numerous times. I feel

like the research that we have done and the meetings that we have had have given us a good understanding of the scope of the problem and where our company fits within that problem."), Ex. 4 (Prepared Testimony of Bruce Townsend, FedEx VP of Corporate Security, before the House Subcommittee on Oversight and Investigations of the Committee on Energy and Commerce: "FedEx representatives have worked with a variety of federal, state and local governmental agencies to address the Internet pharmacy issue over the last two years.  Our first meeting on the subject was held on May 13, 2002 with representatives from the DEA, FDA Office of Criminal Investigation, U.S. Customs & Border patrol and the U.S. Postal Inspection Service. . . . Since then we have had several additional face-to-face meetings, telephone calls, and exchanged e-mail messages with various members of agencies represented at that original meeting. . . . We have met and talked with staff of both this committee and of the Senate Permanent Subcommittee on Investigations on numerous occasions since this issue was brought to our attention.").

In addition, the defendants have provided the United States with notes, agendas, correspondence, and other materials from their own records documenting these meetings and identifying the dates, locations, and participants.  Ault Decl. ¶ 5.  Those meetings included a presentation given to FedEx's security employees by the DEA at FedEx's request.  *Id*. Ex. 5, p. 5.  Given their admitted knowledge of the information that the defendants request be laid out for them in a bill of particulars, the defendants will not be hampered in their ability to prepare for trial.  *See United States v. Culoso*, 461 F. Supp. 128, 134 n.9 (S.D.N.Y. 1978) ("Bills of particulars are not justified where the only purpose they would serve would be to limit the government's proof or allow the defendant to tailor his testimony to meet the government's evidence.").  Therefore, their motion should be denied.

2. <u>The Identity of Witnesses to FedEx's Illegal Distribution of Drugs Are Being Produced in Discovery.</u>

The defendants' demand that the United States identify the co-conspirators and witnesses who observed, participated in, and had knowledge of their illegal drug distribution is also not a proper subject of a bill of particulars.  *See Yeargain*, 314 F.2d at 881 (function of a bill of particulars "is not to provide a defendant with names of government witnesses"); *see also DiCesare*, 765 F.2d at 987-98 (bill of

particulars cannot be used to obtain names of co-conspirators). Yet, the defendants' motion demands precisely this information, including: "[w]ho were the FedEx employees who allegedly 'knew the [Chhabra-Smoley and Superior Drugs networks] were distributing controlled substances based on prescriptions issued by doctors after reviewing customers' responses to an online questionnaire'", "[w]ho were the FedEx employees who allegedly 'observed the [pharmacies'] operations,' and 'assisted with preparing these packages [of controlled substances] for shipment?", and [w]ho were the FedEx employees who 'knew that the money orders and checks were intended as payment [to Superior Drugs] for controlled substances that FedEx had delivered and attempted to deliver?'". Def. Mot. pp. 12-14.

FedEx again does not claim to be ignorant of the United States' theory of prosecution. As the defendants' motion points out, the superseding indictment specifies numerous means by which the defendants participated in and had knowledge of the alleged crimes. Def. Mot. pp. 12-14. Rather, the defendants insist that they are entitled to know the identities of the specific employees who committed or had knowledge of the alleged acts. As with their other demands, the identities of witnesses and co-conspirators are the proper subject of discovery, not a bill of particulars. *See United States v. Robertson*, 15 F.3d 862, 873-74 (9th Cir. 1994) (bill of particulars "not warranted when defendant seeks to obtain coconspirator names, exact dates and overt acts"), *reversed on other grounds*, 514 U.S. 669 (1995). As the defendants admit, the United States has provided extensive discovery on this issue. Def.'s Mot. p. 11. *See United States v. Hernandez*, 330 F.3d 964, 975 (7th Cir. 2003) (district court did not err in denying motion for bill of particulars requesting identities of minors involved in crime where identities were available through discovery).

In particular, the defendants requested early production of witness statements, including those of their own employees. Although the defendants have equal, and likely superior, access to the information possessed by their employees, the United States agreed to, and has, produced reports of statements made by the defendants' employees far in advance of the time when such statements are required to be produced by statute or rule. *Ryland*, 806 F.2d at 942 (defendant "is not entitled to know the content of the testimony of each of the government's witnesses before trial"). The location of these statements within the discovery is specifically identified in the 21-page discovery guide provided to the defendants.

*See* Ault Decl. Ex. 1, p. 12 ("DEA Form 6 and FDA MOI: Interview reports of FedEx employees").

The identities of witnesses and co-conspirators are not appropriate subjects for a bill of particulars. Even if they were, because the superseding indictment adequately informs the defendants of the theory of the United States' case, and discovery provides them with the information they seek, the defendants' motion should be denied.

### 3. False Representations Are Alleged in the Superseding Indictment and Are Being Produced in Discovery.

The defendants' third request is that the United States "specifically identify alleged false statements by the Chhabra-Smoley and Superior Drugs networks" (Def. Mot. p. 14), but those representations are specifically alleged in the superseding indictment. *See* Super. Ind. ¶¶ 47, 94. *See also Giese*, 597 F.2d at 1180 ("To the extent that the indictment or information itself provides details of the alleged offense, a bill of particulars is, of course, unnecessary.") (quotation omitted). What the defendants actually appear to demand is the circumstances surrounding the making of the representations. However, as with all of their other demands, such who, what, where and when questions are properly the subject of discovery, not a bill of particulars. *See United States v. Moyer*, 674 F.3d 192, 203 (3d Cir. 2012) (bill of particulars unnecessary where indictment generally alleged nature of falsity at issue; government was not required to "identify every omission or inclusion that rendered false the documents at issue"); *Kendall*, 665 F.2d at 135 ("The defendant's constitutional right is to know the offense with which he is charged, not to know the details of how it will be proved."). Again, the United States is providing full discovery on this issue, including producing the statements themselves. *See Long*, 706 F.2d at 1054 (bill of particulars unnecessary where full discovery produced).

Because the statements permeate the operations of the Chhabra-Smoley and Superior organizations, it is not possible for the United States to pinpoint the specific location of each false or fraudulent representation. However, the discovery guide identifies the location of the materials for each organization and specifies the Bates range for general types of materials attributed to each organization. Thus, while the defendants will necessarily need to review the discovery to identify the statements in question, the United States has provided substantial guidance directing the defendants to the locations in

the discovery where such information is contained.  Any difficulty the defendants profess in locating in the discovery the information they seek does not warrant the granting of a bill of particulars where, as here, the superseding indictment sufficiently outlines the charges and the United States' theory of prosecution.  *See Mejia*, 448 F.3d at 446 (bill of particulars properly denied where information sought was contained in discovery such that "if the defendants felt ambushed, it was not because the government was lying in wait, but because the defendants were not looking"); *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003) ("Once the elements of the crime have been specified, an indictment need only provide enough factual information to enable the defendants to identify the conduct on which the government intends to base its case.").

    4.    <u>Supporting Data for the Calculation of the $820 Million Gain Alleged in the Sentencing Allegation Is Being Produced in Discovery.</u>

The defendants finally demand "particularization of the supporting data and method of calculation" for the $820 million in gross gains attributed to the conduct alleged in the indictment.  Def. Mot. p. 16.  Again, this demand for "particularization" is inconsistent with the notice pleading requirements for an indictment.  *See* Fed. R. Crim. P. 7(c)(1).  *Southern Union Co. v. United States*, 132 S. Ct. 2344 (2012), does not require a different result.  *Southern Union* simply held that *Apprendi v. New Jersey*, 530 U.S. 466 (2000), applies to the imposition of criminal fines.  Here, the superseding indictment alleges the necessary facts on which a fine should be based – namely, that Fed-Ex and its co-conspirators "derived gross gains of at least $820,000,000."  Nothing in *Southern Union* entitles the defendants to more – that is, to either the details or methodology by which the grand jury arrived at that number.

Moreover, the United States is providing extensive discovery on this issue in several formats.  Not only has the United States produced financial records for the Chhabra-Smoley and Superior organizations,[1] the United States has produced trial exhibits, databases, and spreadsheets that collate, schedule, and summarize these records.  *See United States v. Urban*, 404 F.3d 754, 772 (3d Cir. 2005)

---

[1] The defendants have provided the United States with information regarding their own gross gain from the conduct alleged in the indictment.  Presumably, the defendants' demand does not include data from their own records.

U.S. OPP. TO MOT. FOR BILL OF PARTICULARS    14
CR No. 14-380 CRB

(bill of particulars properly denied where defendants had access to discovery concerning the amounts and dates of payments underlying the charged offenses). The bank records themselves, as well as the exhibits and summary sheets, are identified in the discovery guide, such that the defendants should have no difficulty locating these materials. *See, e.g.,* Ault Decl., Ex. 1, p.1 ("Discovery Relating to Napoli: Records from Pershing LLC, The Federal Reserve Bank of New York, Bank of America and other financial institutions"); p.9 ("Trial Exhibits in U.S. v. Chhabra, et al., 03cr530 LMB"); p. 16 ("Discovery Related to Quinones: Bank Records from Optimal Payments", "Quinones Trial Exhibits").

The defendants' demand that the United States provide additional summaries is a request for the United States' work product, which is not an appropriate request for discovery, let alone a bill of particulars. *See United States v. Fort*, 472 F.3d 1106, 1115-16 (9th Cir. 2007) (government work product protected from discovery by Federal Rule of Criminal Procedure 16(a)(2)); *Cooper*, 282 F.2d at 532 ("Rule 7(f), Federal Rules of Criminal Procedure, 18 U.S.C.A., should not be invoked to bring about a result prohibited in effect by Rule 16, Federal Rules of Criminal Procedure, 18 U.S.C.A.").

## IV.   CONCLUSION

Because the superseding indictment fairly apprises the defendants of the theory of the United States' case, the defendants are not entitled to a bill of particulars. The United States has provided expansive discovery on each of the subjects for which the defendants request particulars and has identified, generally or with specificity, the location in the discovery where the requested information may be found. Therefore, the defendants' motion should be denied in its entirety.

DATED: January 21, 2015

Respectfully Submitted:

MELINDA HAAG
United States Attorney

/s
_____
KIRSTIN M. AULT
KYLE F. WALDINGER
Assistant United States Attorneys