**Pages 1 - 19**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CHARLES R. BREYER, JUDGE

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>         Plaintiff,         )<br>)<br>  VS.                         )<br>)<br>FEDEX CORPORATION,           )<br>FEDERAL EXPRESS CORPORATION, )<br>FEDEX CORPORATE SERVICES INC., )<br>)<br>         Defendants.        )<br>_____) | **No. CR 14-0380 CRB**<br><br><br><br>San Francisco, California<br>Wednesday, January 21, 2015 |

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:          Melinda Haag
                        United States Attorney
                        450 Golden Gate Avenue
                        San Francisco, California  94102
                   **By: Kirstin M. Ault, AUSA**
                        **Kyle F. Waldinger, AUSA**

For Defendants:         Arguedas, Cassman & Headley, LLP
                        803 Hearst Avenue
                        Berkeley, California  94710
                   **By: Cristina C. Arguedas, Esquire**
                        **Raphael M. Goldman, Esquire**

                        Skadden, Arps, Slate, Meagher & Flom
                        525 University Avenue, Suite 1100
                        Palo Alto, California  94301
                   **By: Allen J. Ruby, Esquire**


Reported By:   Katherine Powell Sullivan, CSR No. 5812, RMR, CRR
               Official Reporter

```
 1   Wednesday - January 21, 2015                           2:04 a.m.

 2                        P R O C E E D I N G S

 3                              ---oOo---

 4        THE CLERK:  Calling CR 14-0380, the United States of

 5   America versus FedEx Corporation et al.

 6        Appearances, Counsel.

 7        MR. RUBY:  Good afternoon, Your Honor.  Excuse me one

 8   moment, and I'll get my comrades who are down the hall.

 9        THE COURT:  Fine.

10        MS. AULT:  Good afternoon, Your Honor.  Kirstin Ault

11   and Kyle Waldinger for the United States.

12        MS. ARGUEDAS:  Good afternoon, Your Honor.  Cris

13   Arguedas.  And I'm here with Connie Lewis Lensing, Senior Vice

14   President.

15        MR. RUBY:  I'm Allen Ruby, here with her.

16        MS. ARGUEDAS:  And Raphael Goldman --

17        THE COURT:  You can actually speak for yourself;

18   right?

19        (Laughter)

20        MS. ARGUEDAS:  And Raphael Goldman, also from my firm.

21        MR. GOLDMAN:  Good afternoon, Your Honor.

22        THE COURT:  So I got this elaborate pretrial schedule.

23        MS. ARGUEDAS:  Elaborate, well-thought-out.

24        THE COURT:  I mean, well, I'm sure it was

25   well-thought-out.
```

1   **MS. AULT:** Your Honor should be pleased that we're in
2   agreement.
3       **THE COURT:** What?
4   **MS. AULT:** Your Honor should be pleased that we're in
5   agreement.
6       **THE COURT:** I'm very pleased you're in agreement. I'm
7   not sure I'm pleased with what the agreement is. For example,
8   it says "Motions Round Two."
9       Do you want to refresh my recollection, what were motions
10  rounds one?
11      **MS. ARGUEDAS:** Well, you have a bill of particulars
12  that is pending and going to be heard in a few weeks. The
13  government's reply is due today.
14      **THE COURT:** Okay. That's round one.
15      **MS. ARGUEDAS:** Yeah.
16      **THE COURT:** Thank you for jogging my memory.
17      So then there's motions round two. Any hint as to what
18  those motions are about --
19      **MS. ARGUEDAS:** We --
20      **THE COURT:** -- and how I would distinguish motions
21  round two from motions round three?
22      **MS. ARGUEDAS:** This is what was behind the schedule
23  that we've given you: We have received an enormous amount of
24  discovery. We know that there's more to come. We are plowing
25  through it. And so we wanted to make a place for motions in

1  round two.  They would be heard in May.  And we wanted to keep
2  a place for the later motions for things that we can't do until
3  we've read all the discovery.
4       So round two, we imagine, will be motions that are
5  statutorily based, perhaps, that we don't have to have read
6  every single bit of the discovery in order to bring them in for
7  you to decide them.
8       And the final round will be, presumably, after we have
9  digested everything there is to know.
10       They'll all be interesting.
11            **THE COURT:**  No doubt.  But --
12            **MS. ARGUEDAS:**  If I may also --
13            **THE COURT:**  Just trying to figure out round two with
14  the discovery.
15            **MS. AULT:**  Your Honor, we anticipate the defense will
16  be filing, for example, a motion to dismiss the indictment.  Or
17  there are some motions we believe that they will file that are
18  based on statutory concerns, as well as they have had the
19  discovery for several months now, and there may be some motions
20  that they are able to bring.
21       We do think it was beneficial both to the defense, the
22  government, and to the Court to have the motions broken up this
23  way so we all have time to respond to them appropriately and
24  digest them.  And we think that breaking them up in this
25  fashion does actually make sense.

1      **MS. ARGUEDAS:**  What we were really trying to
2  accomplish was to set a trial date.  And so we were working
3  backwards from there.
4      **THE COURT:**  Okay.  Let me see.  Trial date,
5  February 29th?
6      **MS. ARGUEDAS:**  Right.
7      **THE COURT:**  Next year?
8      **MS. ARGUEDAS:**  Correct.
9      **THE COURT:**  There will be a February 29th next year?
10      **MS. ARGUEDAS:**  There will be.
11     (Laughter)
12      **THE COURT:**  Okay.  You've obviously thought this out.
13     (Laughter)
14      **MS. ARGUEDAS:**  We have.
15      **THE COURT:**  All right.  Well, okay.  Look, I approve
16  the stipulation anyway.  I'm just trying to give you a rough
17  time.
18     (Laughter)
19      **THE COURT:**  Though I would add this:  In terms of
20  pretrial litigation I don't know where we'll be.  I mean, yes,
21  that's a good idea we have a trial date, we have all these
22  dates and so forth.  But I may decide, as an example, to
23  advance motions round three.  I don't know.
24     So I'll set all these motions and none of them is set in
25  concrete.

1   **MS. ARGUEDAS:**  Fine.
2   **THE COURT:**  Okay?  Because I want to have some
3   flexibility in terms of -- you know, I thought I had said that
4   what I was really interested in is:  What did FedEx know?  Who
5   told them what?  And what did they say about it?
6   **MS. ARGUEDAS:**  Exactly.
7   **THE COURT:**  That seemed to me a pretty interesting set
8   of facts; which, by the way, may be contested.  I don't know.
9   Or it may not be.
10  **MS. ARGUEDAS:**  Right.
11  **THE COURT:**  May not be.
12  **MS. ARGUEDAS:**  Well, that is exactly the heart of the
13  matter.  And that brings us to our next topic for today because
14  this Court has issued a subpoena which we have served on the
15  DEA, which is exactly going to those issues.  Exactly.
16       The compliance date for that was -- is February 4th.
17  February of this year.  But the government has indicated that
18  it intends to move to quash that motion -- that subpoena.  And
19  so we made a schedule for that motion to quash as well.
20       But when I -- when I was suggesting to the Court that we
21  had more things that we were going to be going through and
22  needing to know, it is the response to that subpoena is a big
23  part of it.
24  **THE COURT:**  Okay.  So let's talk about that.
25  **MS. AULT:**  Your Honor, we do have a proposed schedule

1  for that.
2      **THE COURT:** Okay. I actually didn't see a reason,
3  though I acceded to your request that it be filed under seal,
4  because the government -- the first thing the DEA would do was
5  go to the U.S. Attorney's Office and say, "Look what we were
6  served with."
7      **MS. ARGUEDAS:** Well, the subpoena --
8      **THE COURT:** Maybe there was a reason there.
9      **MS. ARGUEDAS:** No. The subpoena did not need to be
10 filed under seal.
11     **THE COURT:** Oh, the declaration.
12     **MS. ARGUEDAS:** Correct. And I don't even know if we
13 asked for the subpoena to be filed under seal. But you are
14 correct --
15     **THE COURT:** No, you're right. I know I filed the
16 declaration under seal.
17     **MS. ARGUEDAS:** Right. And then the subpoena is not
18 under seal. We served it. They got it --
19     **THE COURT:** And then when they have a motion to quash
20 it seems to me that, in part, the justification of -- in
21 defense of the motion to quash, some of the things that you
22 said in your --
23     **MS. ARGUEDAS:** It might be --
24     **THE COURT:** -- motion would be disclosed. That's up
25 to you.

1    **MS. ARGUEDAS:**  We have to figure that out in our
2  reply.  But I actually think they have a dispute about their
3  basic responsibility in answering that subpoena.  It doesn't
4  really involve --
5    **THE COURT:**  Well, whose responsibility, the
6  U.S. Attorney's Office or the DEA?
7    **MS. AULT:**  Your Honor, the dispute is that the
8  subpoena does not even make an effort to comply with the
9  requirements under *United States vs. Nixon*.  So it is vastly
10 overbroad, and is clearly a request for discovery, and not
11 anything that the defense is entitled to under Rule 17.
12     We are going to try to work out some issues with them.
13 And we are happy to comply with a proper, narrowly drawn
14 subpoena that complies with the *Nixon* requirements.  However,
15 this subpoena is not that.  So we don't --
16   **THE COURT:**  I have to tell you, that's not my
17 impression at all.  Let me tell you, I looked at it.  Before I
18 started to look into it, I was very dubious about a subpoena.
19 I looked at it.
20     And it seems to me that it is directed, in essence, to the
21 following:  What did the government say to FedEx?  What did
22 FedEx say to the government?  What were the communications back
23 and forth between the government and FedEx on this subject?
24 Perhaps some other things.
25     Okay.  I grant you that.  But as to that whole body of

1  information, I would think you have to turn it over right away.
2          **MS. AULT:** Your Honor, and we have turned it over.
3          **THE COURT:** Great.
4          **MS. ARGUEDAS:** No.
5          **THE COURT:** So then we are talking about some things
6  that are beyond that. And that's your position. And,
7  therefore, what I want you to do is in your motion to quash I
8  want you to identify the things that you've turned over and the
9  things that you don't feel you have to turn over because it's
10 too broad. I'm sure you can --
11         **MS. AULT:** Your Honor, the issue is not what we have
12 to turn over and what we don't have to turn over. The issue is
13 whether the DEA has to conduct a massive, agency-wide search --
14 which is what the subpoena calls for -- for any and all
15 documents that may exist in any DEA office anywhere in the
16 country that may have anything to do with any communications
17 with FedEx, any investigation involving any Internet pharmacy.
18 The subpoena is that broad.
19         **THE COURT:** If it's that broad --
20         **MS. AULT:** It is that broad.
21         **THE COURT:** Fine. I would enforce it.
22         **MS. AULT:** Your Honor --
23         **THE COURT:** I'm sorry, I would enforce it. That's
24 exactly what's going on here. The issue is -- so it's clear,
25 the issue here is: What did FedEx know? And what did the

1  government say?  And what were the communications back and
2  forth on any matter in which the DEA was taking the position
3  that there were Internet pharmacy issues involved?
4       I don't think you have to turn over every communication on
5  some unrelated -- though, arguably, at some point it could
6  become relevant -- matter.  Like, oh, we think that there's a
7  gun in the FedEx -- that X company is shipping weapons by use
8  of FedEx and, therefore, dat, dat, dat, dat, dat.
9           **MS. ARGUEDAS:**  We agree.
10          **THE COURT:**  At this point -- this is my turn.
11      At this point, I wouldn't have discovery on that.  At this
12 point.  But I want to emphasize "at this point."  Because if
13 the DEA is being inconsistent with what they expect FedEx to
14 do, a publicly held company -- it is publicly held?
15          **MS. ARGUEDAS:**  Yes.
16          **THE COURT:**  -- a publicly held company that's not
17 involved in the manufacture of contraband, I wouldn't, at this
18 point, grant that.  That is to say, I wouldn't grant what I
19 think are unrelated matters.  But those things that involve
20 drugs, Internet pharmacy, right, turn it all over.
21          **MS. AULT:**  Your Honor, the issue is that Rule 17 is
22 not a discovery device.  They cannot issue discovery to a third
23 party, which is -- issue a subpoena to a third party, which is
24 what the DEA is, to get discovery.
25      They can make discovery requests of us, which they have

1  made.  And we have complied with them.  And all of that
2  information, Your Honor, we have made extreme efforts to go
3  find it, to get it, and to turn it over to them.
4      And that is the mechanism by which they can get discovery.
5  And if they feel that they are missing something, if they want
6  to specifically request we go look someplace else that they
7  think we haven't looked, they can do that.  And we are happy to
8  comply with that.
9      The issue is Rule 17 is not a discovery device.  That is
10 not what it was set up for.  And to try to use it as a
11 discovery device is expressly in contravention of both Supreme
12 Court law and Ninth Circuit law.
13         **THE COURT:**  Bless the Supreme Court.
14     (Laughter)
15         **THE COURT:**  I understand that they had *U.S. vs. Nixon*.
16 And that was a case that, indeed, I did prosecute.  I was on
17 your side in that case.  Nevertheless, nevertheless -- and I
18 agree with the basic principle that these subpoenas cannot be
19 used for discovery purposes.
20     But this is not a discovery, in the Court's view.  What
21 this is is -- which goes to the heart of your case, by the way.
22 Not to put too fine a point on it.
23     You're saying that FedEx was a -- was a criminal
24 distributor of contraband.  They're coming back, and they say,
25 "We did distribute," if that's the word.  "We did deliver

1   drugs."
2       That's not an issue here.  The issue is:  "What did we
3   know about drugs?  What was the course of conduct with respect
4   to drugs?  What were our dealings with DEA?"  And that's
5   something that two entities know about.
6       One is the DEA.  And I'm not quite certain that I buy,
7   necessarily, into the argument that it's a different party from
8   the government.  But I'll give you that point of view for
9   purposes of this argument.
10      And what did FedEx know?  And what did FedEx know?  Fed Ex
11  may have known a number of those things; may not have known a
12  number of these things.  I don't know.  I don't know.
13      But you decided to bring this case.  And with it comes the
14  responsibility of furnishing information that is germane to a
15  defense in the case.  And the prosecution, by the way.  And the
16  prosecution.
17      Because if you just give a prosecution and you say, okay,
18  the prosecution is these people distributed drugs that were --
19  that were prescribed without -- not in the course of -- you
20  know those magic words.  I always fumbled over them.  What are
21  they?
22          **MS. AULT:**  "Outside the usual course of professional
23  practice and not for a legitimate medical purpose."
24          **THE COURT:**  Okay.  That's what they did.  And that's
25  why they can be charged, you say.  And I say, fine, I

1   understand that.  Now, you have to show knowledge that they
2   knew these things.
3       The way they knew these things would have had to have
4   been -- unless I don't understand this case; and I've only
5   tried it three times; and that's arguably the case -- that it
6   would had to have been what they were told.  What they were
7   told.
8       Because, as we all know, if they opened up the package,
9   all they would have seen -- correct me if I'm wrong -- was a
10  bottle of pills, with a name, with a prescription number, with
11  an addressee or a patient's name, and, I guess, the name of a
12  doctor.  I just don't recall.  That's what they would have
13  seen.  And there's no way you can look at that, absent
14  information given to them, to make the determination that that
15  was something outside the course of medical practice.
16      Therefore, all of that information has to be turned over.
17  And you can call it discovery.  You can call it a fishing
18  expedition.  You can call it whatever you want to call it.
19      But I'm telling you we're not going to proceed in this
20  case -- and I would dismiss this case -- if the government
21  doesn't produce the type of information that I have described.
22          **MS. AULT:**  And, Your Honor --
23          **THE COURT:**  So now you can make your motion to quash.
24  But I want it to be an informed motion.  And you can disagree
25  with me.  You're certainly entitled to do so.

1       But I want you to understand, when you sit down and decide
2  how you're going to proceed, that you have at least in front of
3  you the Court's concern about what will be disclosed in this
4  case.
5           **MS. AULT:**  And, Your Honor, I don't want the Court to
6  be -- to be misled into thinking that we are trying to withhold
7  anything from the defense.  And we will note the defense has
8  not made any discovery motions, has not raised any issue with
9  our production of discovery.
10          **THE COURT:**  I don't, for a moment, think that.  You
11 should have no concern that I think you're hiding the ball or
12 that you're being uncooperative or that you're not forthcoming.
13      I think, though, in this area there's a difference of
14 opinion as to what needs to be disclosed, can be disclosed,
15 should be disclosed.  There's a difference of opinion.
16      And I will be pleased to decide that difference of
17 opinion, but I thought it might be helpful for you to have at
18 least my view -- tentative as it is, but forcefully
19 articulated -- as to what my view is so that when you sit down
20 and work it all out you have some understanding of where I'm
21 going on this.
22          **MS. AULT:**  And, Your Honor, we appreciate your view.
23 And we are more than happy to work it out with the defense.  We
24 simply need their subpoena to be more specific than what it is.
25          **THE COURT:**  Fine.

1   **MS. ARGUEDAS:** No.
2   **MS. AULT:** Hopefully, we will be able to work that
3   out.
4   **THE COURT:** Fine. If you do, you go back to them and
5   say, What you think? And they will come back to you and say,
6   We can do this. Or we think you're wrong. Or whatever it is.
7       And then that's why I get this fortune of a salary,
8   because I make the decisions, you know. And that's what I'm
9   paid to do. And sometimes I sleep at night.
10      So that's the way we're going to proceed in this.
11  **MS. AULT:** We have a proposed schedule, Your Honor.
12  **THE COURT:** I signed the -- oh, you have a proposed --
13  **MS. ARGUEDAS:** We have a proposed schedule. But I
14  wanted to make a point and make a request. And that is this:
15  The nub of the issue was just articulated by the U.S. Attorney
16  a minute ago. They do not think that they have to search for
17  these documents from anywhere in the DEA or require them to
18  search --
19  **THE COURT:** Those are two different questions.
20  **MS. ARGUEDAS:** Well --
21  **THE COURT:** The U.S. Attorney may not have to search.
22  **MS. ARGUEDAS:** No. The DEA. She's acting on behalf
23  of the DEA in that instance.
24      I do not want any part of the record ever to lie with the
25  government saying yes, we gave it to them already, because they

1  have not given it to us already because we are entitled to
2  exactly what you authorized the subpoena for.  And it does --
3  we have exactly narrowed it to the things that you suggested:
4  What does FedEx know?  What were they told?
5       So I wanted to make this request:  We have made a schedule
6  that winds up with a hearing on March 11th.  And I know that's
7  not a good date for the Court, but, anyway, in March.
8       We think that they're entitled to file a motion to quash.
9  But I would like to ask the Court to ask the government to have
10 the DEA begin the collection process so that in the event you
11 do enforce your subpoena we don't have to hear that they can't
12 have it done until the summer.
13      **MS. AULT:**  Your Honor --
14      **THE COURT:**  Well, in fairness you, I mean, I'm not
15 going to require them to do something that they believe
16 strongly that they don't have any requirement to do.
17      **MS. ARGUEDAS:**  They don't have to give it.  I'm just
18 saying we want to have a trial in February of 2016.  That is an
19 aggressive date, from our point of view.  We want an aggressive
20 date.
21      **THE COURT:**  An aggressive date.  You want an
22 aggressive date?  I can give you an aggressive date.
23      (Laughter)
24      **THE COURT:**  Some are more aggressive than others, but
25 I've got them all here.

1      **MS. ARGUEDAS:**  I don't want to come here on March what
2  I hope is going to be 20th instead of the 18th, and have you
3  enforce the subpoena -- as I expect that you will -- and then
4  have the DEA begin to say, oh, well, you know, we're months
5  away from ever being able to give you this information.  I
6  don't want to lose the time between now and then.
7      **MS. AULT:**  Your Honor, we won't lose the time between
8  now and then.  If we can have some discussions with the
9  defense, they can narrow the subpoena to specific items that we
10 can find --
11     **THE COURT:**  Here's my suggestion:  Let's assume that
12 FedEx says, "We don't want to narrow the subpoena any further."
13 We think it meets the requirements."  Okay.  Let's say that's
14 their position.  As unreasonable as you may believe it to be,
15 okay, why can't we have the motion to quash much earlier?
16     **MS. ARGUEDAS:**  We were accommodating the government's
17 request --
18     **THE COURT:**  Why don't we hear the motion --
19     **MS. ARGUEDAS:**  We can do it as soon as you want.
20     **THE COURT:**  Fine.  What about the 13th of February?
21 How is that?
22     **MS. AULT:**  Your Honor, we simply cannot --
23     **THE COURT:**  It's a matter of law, by the way.  Your
24 view -- your view is not complicated.  It's simple.  It is, as
25 a matter of law, under *U.S. v. Nixon* they are not entitled to

1  the type of information that they have sought.  You don't need
2  to conduct some great inquiry.  It's all a matter of law.  You
3  simply put it out.  And we litigate it.
4              **MS. AULT:**  However, Your Honor has just stated that
5  Your Honor will deny that motion if we bring --
6              **THE COURT:**  No, no, no.  You've been with me long
7  enough.  I say one thing, and I may change my mind.  And after
8  all, after all, if it is as compelling as you say it is, if
9  it's as compelling as you say it is, I can be compelled.  I can
10 decide it quickly.  I don't see why we have to do it in March.
11             **MS. ARGUEDAS:**  I agree.
12             **THE COURT:**  I want to do it in February.
13             **MS. ARGUEDAS:**  February 13th is good for us too.
14             **MS. AULT:**  Your Honor, that simply does not provide us
15 with enough time.
16             **THE COURT:**  To do what?
17             **MS. AULT:**  To draft our motion, give the defense time
18 to oppose it, and give us time to reply.
19             **THE COURT:**  Certainly it does.
20             **MS. ARGUEDAS:**  We can answer it really fast.
21             **THE COURT:**  This is a -- it gives you plenty of time.
22 What is today?  Today is something.  What is it?
23             **MS. ARGUEDAS:**  Your Honor --
24             **THE COURT:**  21st.
25             **MS. ARGUEDAS:**  We are back in court on this case, in

1  front of you, on February 18th, for the bill of particulars.
2  So why don't we aim a schedule so this also is heard on
3  February 18th?
4          **THE COURT:**  No.  Let's do this on the 20th.  What
5  about if we do it on the 20th?
6          **MS. ARGUEDAS:**  That's fine.
7          **THE COURT:**  At 2:30 in the afternoon.  And we're going
8  to hear both the bill of particulars and this motion on the
9  20th.  And just work backwards.
10         **MS. ARGUEDAS:**  Good.
11         **THE COURT:**  And I'm not ordering the government to do
12 anything in terms of production at this point.
13         **MS. ARGUEDAS:**  No.  Now that we're going to be quick,
14 that's fine.
15         **THE COURT:**  Thank you very much for coming in.
16         **MR. RUBY:**  Thank you.
17         **MR. GOLDMAN:**  Thank you, Your Honor.
18         **MR. WALDINGER:**  Thank you, Your Honor.
19         **MS. AULT:**  Your Honor, we submitted a stipulation to
20 exclude time under the Speedy Trial --
21         **THE COURT:**  And I signed it.
22         **MS. AULT:**  Thank you.
23         **MR. RUBY:**  Thank you.
24      (At 2:27 p.m. the proceedings were adjourned.)
25                          -   -   -   -

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Tuesday, January 29, 2015

*Katherine Sullivan*

_____

Katherine Powell Sullivan, CSR #5812, RMR, CRR
U.S. Court Reporter