1    MELINDA HAAG (CABN 132612)
     United States Attorney
2
     DAVID R. CALLAWAY (CABN 121782)
3    Chief, Criminal Division

4    KIRSTIN M. AULT (CABN 206052)
     KYLE F. WALDINGER (CABN 298752)
5    Assistant United States Attorneys

6        450 Golden Gate Avenue, Box 36055
         San Francisco, California 94102-3495
7        Telephone: (415) 436-6940
         FAX: (415) 436-7234
8        Kirstin.ault@usdoj.gov
         Kyle.waldinger@usdoj.gov
9
     Attorneys for United States of America
10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13                      SAN FRANCISCO DIVISION

14   UNITED STATES OF AMERICA          )   CR No. 14-380 CRB
                                       )
15           Plaintiff,                )   UNITED STATES' MOTION TO QUASH RULE 17(C)
                                       )   SUBPOENA ISSUED TO DRUG ENFORCEMENT
16       v.                            )   ADMINISTRATION
                                       )
17   FEDEX CORPORATION,                )   Hearing Date:   February 20, 2015
     FEDERAL EXPRESS CORPORATION,      )   Hearing Time:   2:30 p.m.
18     (A/K/A FEDEX EXPRESS)           )   Court:          Hon. Charles R. Breyer
     FEDEX CORPORATE SERVICES, INC.,   )
19                                     )
             Defendants.               )
20   _____)

21

22

23

24

25

26

27

28

## **TABLE OF CONTENTS**

I.    Introduction ................................................................................................1

II.   Background ................................................................................................2

      A.    Production of Discovery ................................................................2

      B.    Additional Production ...................................................................3

      C.    Meet and Confer ...........................................................................4

III.  Discussion .................................................................................................4

      A.    The United States Has Standing to Bring This Motion .................4

      B.    The Subpoena Demands Production of Statements of Potential
            Witnesses That Are Expressly Prohibited from Disclosure by Rule 17 ................5

      C.    The Subpoena Demands Production of Records Relating to
            Internal Agency Deliberations That Are Protected by the
            Deliberative Process Privilege and Word Product Protection ...............6

      D.    The Subpoena Demands Production of Entire Investigative Files
            Which Are Not Subject to Discovery Under Rule 16(a)(2) and
            the Law Enforcement Privilege ....................................................8

      E.    The Subpoena Is Not Limited to Requesting Specific, Relevant,
            Admissible Documents That Are Not Available By Other Means,
            But Is a Broad Discovery Request Prohibited by Rule 17(c) ...............10

            1.    Specificity. ................................................................12

            2.    Admissibility ...............................................................15

            3.    Relevancy....................................................................17

            4.    Not Available By Other Means......................................18

            5.    Overbreadth, Burden, and Reasonableness.................19

      F.    The United States Will Make Reasonable Efforts to Procure and
            Produce Documents Requested by the Defendants ...............21

IV.   Conclusion ................................................................................................22

1

## **TABLE OF AUTHORITIES**

2

### **FEDERAL CASES**

3   *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) .................................................. 8-9, 16

4   *Brady v. Maryland*, 373 U.S. 83 (1963) .........................................................................3, 8, 21

5   *In re Dept. of Investigation of the City of N.Y.*, 856 F.2d 481 (2d Cir. 1988) .......................... 9-10

6   *In re Grand Jury*, 619 F.2d 1022 (3d Cir. 1980) .................................................................4

7   *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1141 (9th Cir. 1988) .................7

8   *United States v. Bergeson*, 425 F.3d 1221 (9th Cir. 2005) ............................................12

9   *United States v. Cadet*, 727 F.2d 1453 (9th Cir. 1984)..................................................9

10  *United States v. Cherry*, 876 F.Supp. 547 (S.D.N.Y. 1995) ...........................................9

11  *United States v. Cuthbertson*, 651 F.2d 189 (3d Cir. 1981)..................................5, 11, 16

12  *United States v. Eden*, 659 F.2d 1376 (9th Cir. 1981) .............................................. 11-12

13  *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) ......................................... 6-8

14  *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981) .............................................12, 16

15  *United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007) .................................................9

16  *United States v. Hang*, 75 F.3d 1275 (8th Cir. 1996) ............................................11, 18

17  *United States v. Layton*, 90 F.R.D. 514 (N.D. Cal. 1981) .............................................11

18  *United States v. Louis*, 2005 WL 180885 (S.D.N.Y. 2005)...........................................14

19  *United States v. Mendinueta-Ibarro*, 956 F.Supp.2d 511 (S.D.N.Y. 2013) .....................5, 9, 14

20  *United States v. Nixon*, 418 U.S. 683 (1974) .................................................... *passim*

21  *United States v. Raineri*, 670 F.2d 702 (7th Cir. 1982) .................................................4

22  *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984) ............................................10, 15

23  *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006) .....................................6, 10-18

24  *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158 (E.D.N.Y. 2005)........ 11-12, 16

25  *United States v. Shinderman*, 232 F.R.D. 147 (D. Me. 2005) .......................................11

26  *United States v. Zavala-Tapia*, 2010 WL 5330506 (E.D. Cal. 2010)...........................11

27  *United States v. Zingsheim*, 384 F.3d 867 (7th Cir. 2004)......................................... 7-8

28

# FEDERAL STATUTES AND RULES

18 U.S.C. § 3500 ...................................................................................................................3

Fed. R. Crim. P. 16 .................................................................................... 1, 3, 8-9, 21

Fed. R. Crim. P. 17 ............................................................................................. *passim*

Fed. R. Crim. P. 26.2 .......................................................................................... 5-6

21 C.F.R. § 1301.13 ...........................................................................................14

28 C.F.R. § 16.24 ..............................................................................................4

## I.  __INTRODUCTION__

Rather than make a reasonable discovery request, the defendants have issued a subpoena pursuant to Federal Rule of Criminal Procedure ("Rule")[1] 17(c) to the Drug Enforcement Administration ("DEA") that is overbroad and contradictory, seeks information prohibited by the rule itself, as well as Rule 16, violates the United States' deliberative process privilege and work product protection, and as the Supreme Court and the Ninth Circuit have held, plainly violates the limitations imposed on Rule 17(c) subpoenas.[2]  Because the defendants are using Rule 17(c) to engage in discovery and to conduct an improper fishing expedition for inadmissible evidence, the subpoena should be quashed.  At the same time, the United States, in an effort to provide the defendants with any and all discovery to which they are entitled, has asked the DEA to gather some of the materials that the defendants seek.  Thus, one of the main requirements for issuance of a Rule 17(c) subpoena – that the materials not be available through other means using the exercise of due diligence – has not been met.

Rule 17(h) precludes the use of a Rule 17(c) subpoena to obtain statements of potential witnesses, yet virtually every request in the subpoena demands precisely this information.  Similarly, Rule 16(a)(2) precludes the discovery of government investigative documents.  Although Rule 17(c) cannot be used to conduct an end-run around the limitations imposed on criminal discovery by Rule 16, the subpoena demands production of entire investigative files.  Similarly, the deliberative process, law enforcement, work product, and attorney-client privileges impose prudential limitations on the materials an agency is required to disclose, yet the subpoena demands production of all materials underlying a wide variety of the DEA's enforcement decisions.  Likewise, the Supreme Court has concluded that a Rule 17(c) subpoena is limited to obtaining specific, relevant, and admissible evidence that is not obtainable by other means, yet the subpoena demands broad swaths of materials that are the hallmark of the fishing expedition the Supreme Court has forbidden.

Nevertheless, the United States construes the subpoena as a further discovery request and is taking reasonable steps to produce additional materials that have not already been provided to the

---

[1]      All reference to "rule" or "rules" herein are to the Federal Rules of Criminal Procedure.

[2]      For the Court's convenience the subpoena is attached hereto as Appendix A.

1  defendants.  The United States has attempted to meet and confer with defense counsel twice in an effort

2  to narrow the subpoena's requests.  However, the defendants have declined to modify the subpoena in

3  any reasonable respect.  Therefore, the United States has no choice but to file this motion to quash the

4  improper and illegal subpoena in its entirety.

## II.  BACKGROUND

### A.  Production of Discovery

7  The Court entered a protective order in this matter on or about July 24, 2014.  Clerk's Record 17.

8  Since that time, the United States has produced to the defendants more than 1.14 terabytes of data,

9  comprising more than 2 million separate files, accompanied by a 22-page detailed discovery guide

10  containing over 600 entries identifying the types of records produced and the conspiracy or issue to

11  which they are most relevant.  Declaration of  AUSA Ault ("Ault Decl.") ¶¶ 3-5.  While federal rules,

12  statutes, and principles limit the materials the United States is responsible for producing to only those

13  within the custody and control of the investigating agents, the United States has made considerable

14  efforts to locate and obtain information from a variety of federal agencies, U.S. Attorney's Offices, state

15  and local agencies, and other entities that are not part of the investigating team.  In summary, the United

16  States has contacted at least 6 U.S Attorney's Offices and obtained documents from investigations

17  conducted in over 20 states.  Ault Decl. ¶ 7.  The United States has also contacted more than 16 DEA

18  offices, as well as DEA headquarters, regarding over 13 Internet pharmacy investigations, including

19  those of RxNetwork and Superior Drugs, and obtained case files, attorney files, discovery, and trial

20  materials, all of which have been reviewed for non-discoverable material (such as attorney work product

21  and privileged information) with the resulting items produced to the defense.  *Id*.

22  In particular, the investigating agents have contacted each DEA and FDA representative (more

23  than 30 in all) who they are aware had a substantive[3] meeting or communication with a FedEx employee

24  regarding Internet pharmacies and have collected materials regarding those meetings or

25  communications.  Ault Decl. ¶ 8.  In addition, e-mail requests have been sent to more than 100 DEA

---

[3]  A substantive meeting or communication is one involving a subject other than the routine issuance of a subpoena for shipping records.

1    agents involved in Internet pharmacy investigations requesting information about substantive

2    communications or meetings with FedEx employees.  Ault Decl. ¶ 8.  Discoverable information from the

3    resulting responses has been turned over to the defense.  Ault Decl. ¶ 8.

4    **B.      Additional Production**

5             In addition to the materials already provided, the United States is also undertaking the following,

6    in a reasonable effort to provide the defendants with documents they have requested:

7         •    DEA employees identified in the subpoena as potentially having substantive

8              communications with FedEx representatives are being asked to search their records again

9              for documents regarding substantive communications and meetings with FedEx

10             concerning Internet pharmacies.  The United States has already contacted a number of

11             these individuals and has provided documents regarding their substantive

12             communications and meetings with FedEx in discovery.  Any additional documents that

13             are discovered will be reviewed for material not subject to production (*i.e.* attorney work

14             product, attorney-client privileged material, documents reflecting the agency's

15             deliberative process, etc.), and the remaining materials will be produced.  Although a

16             number of the identified employees have retired or left the DEA, the United States will

17             make reasonable efforts to determine if any documents regarding relevant

18             communications they may have had can be located.  Ault Decl. ¶ 9a.[4]

19        •    All DEA employees are being asked whether they had substantive communications or

20             meetings with any FedEx employee regarding the subject of Internet pharmacies or a

21             particular Internet pharmacy.  Any employees who have had such communications or

22             meetings are being asked to search their records for documents regarding such

23             communications or meetings.  Ault Decl. ¶ 9b.

24        •    Any DEA registrations for the individuals and entities identified in the subpoena's

25

26    _____

         [4]       By agreeing to produce the categories of documents outlined in this motion, the United
27    States is not conceding that the defendants  are entitle to these materials under Rule 16, *Brady*, the
      Jencks Act (18 U.S.C. § 3500) or any other rule, statute or principle, and the United States is not
28    agreeing to expand its legal responsibility for locating and producing materials beyond that imposed by
      the Constitution and federal law.

Request 1s that have not already been produced will be provided.  Ault Decl. ¶ 9c.  As discussed further below, many of the individuals and entities identified in Request 1s are not subject to registration by the DEA.

**C.     Meet and Confer**

The United States has twice met and conferred with defense counsel in an attempt to narrow the breadth of the subpoena.  Ault Decl. ¶ 10.  Both times, the defendants declined to modify any of the subpoena's requests or definitions.  *Id*.  The sole concession made by the defendants was to agree that, while the subpoena requires the DEA to search for records in every office in the world, the DEA need not search an office where it affirmatively knows no records may be found.  *Id*.  In every other respect, the defendants declined to narrow the requests or even agree to a reasonable methodology by which a search for records may be conducted (*i.e.* by identifying custodians and search terms for electronic records).  *Id*.

## III.     DISCUSSION

**A.     The United States Has Standing to Bring This Motion**

The United States has standing to bring this motion because the United States Attorney has been specifically tasked by regulation with responding to subpoenas issued to the DEA and raising objections to them in court.  28 C.F.R. § 16.24.  Moreover, a party to a criminal case "has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests." *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir. 1982) (citing *In re Grand Jury*, 619 F.2d 1022, 1027 (3d Cir. 1980)).  The United States has standing to move to quash a defendant's subpoena based "upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial overemphasis on [the witness's] credibility."  *Raineri*, 670 F.2d at 712.  In this case, the United States has standing to submit this motion to quash the defendants' subpoena due to the government's interest in protecting the DEA against harassment and undue and unnecessary expense.

Furthermore, the defendants must show that they cannot obtain the items listed in the attachment to their 17(c) subpoena through other means.  However, the United States' records show that many of these materials have been produced to the defendants, and others were offered to the defendants upon

reasonable request.  The United States' production of discovery is not an issue that the DEA is in a

position to address.  Accordingly, fundamental fairness requires that the party with the knowledge and

ability to argue against some of the defendants' claims be heard.

**B.      The Subpoena Demands Production of Statements of Potential Witnesses That Are Expressly Prohibited from Disclosure by Rule 17.**

The subpoena's first request demands production of a variety of "communications" between

FedEx and DEA personnel.  However, Rule 17 itself precludes the use of a Rule 17(c) subpoena to

obtain witness statements:  "No party may subpoena a statement of a witness or of a prospective witness

under this rule.  Rule 26.2 governs the production of the statement."  Fed.R.Crim.P. 17(h).

Nevertheless, the subpoena first requests: "[a]ll documents and records that constitute, record or discuss

any communication or meeting between any employee, agent or representative of the DEA . . and any

employee, agent or representative of . . . FedEx in which the participants discussed online pharmacies in

general or any individual online pharmacy or pharmacies."  The participants in these communications

and meetings are prospective government witnesses on the subject of those meetings and

communications.  Thus, any "statement," as defined by Rule 26.2(f)[5] cannot be obtained by a Rule 17(c)

subpoena.  Fed.R.Crim.P. 17(h); *cf. United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981)

(statements of witness not subject to production until after witness has testified).  Such materials would

include letters or e-mails drafted by the prospective witness and reports created or adopted by the

prospective witness, all of which are beyond the reach of a Rule 17(c) subpoena.  *See United States v.

Mendinueta-Ibarro*, 956 F.Supp.2d 511, 514 (S.D.N.Y. 2013) (witness statements cannot be subpoenaed

prior to trial).

For example,[6] Request 1b encompasses "correspondence and communications involving

---

[5]      Rule 26.2 defines a statement as "a written statement that the witness makes and signs, or otherwise adopts or approves . . . a substantially verbatim, contemporaneously recorded recital of the witness's oral statement that is contained in any recording or any transcription of a recording; or the witness's statement to a grand jury, however taken or recorded, or a transcription of such a statement."

[6]      The United States is moving to quash the subpoena in its entirety on each of the bases discussed herein.  References to requests and sub-requests are made for illustrative purposes, and the failure to specify a particular request or sub-request in relation to any particular ground for this motion is not intended to waive the United States' intent to move to quash each and every request and sub-request on each ground raised in this motion.

1    Elizabeth Willis, Chief of the Drug Operations Section of DEA's Office of Diversion Control,

2    concerning FedEx."  An e-mail drafted by Ms. Willis to a FedEx employee would be encompassed by

3    this request.  However, the e-mail would constitute Ms. Willis's statement as it is "a written statement

4    that the witness makes and signs."  Fed.R.Crim.P. 26.2(f)(1).  Because Ms. Willis is a prospective

5    witness who may be called to testify regarding conversations she had with FedEx employees, and the e-

6    mail would constitute a "statement" made by her concerning the subject matter of her testimony, Rule

7    17(h) precludes the use of a Rule 17(c) subpoena to obtain this e-mail.  Likewise, a signed report drafted

8    by Ms. Willis documenting any conversations she may have had with FedEx employees would also

9    constitute her "statement" regarding those events.  That report would also be barred from production

10   under Rule 17(h).

11          The demand for production of potential witness statements is repeated throughout the subparts of

12   Requests 1 and 2, which repeatedly call for "all records constituting or relating to communications"

13   concerning various meetings, events, telephone calls, conversations, individuals, and entities.  As

14   discussed in more detail below, once the statements themselves are excised from these requests, as they

15   must be under Rule 17(h), the remaining materials demanded have no evidentiary value because they

16   constitute inadmissible hearsay.  Therefore, each of these requests must be quashed in their entirety.

17   **C.    The Subpoena Demands Production of Records Relating to Internal Agency Deliberations**
     **That Are Protected by the Deliberative Process Privilege and Work Product Protection.**
18

19          The subpoena contains another fatal flaw because it demands production of documents

20   concerning the DEA's internal deliberations and decisions.  Not only are the DEA's internal

21   deliberations not admissible or relevant to any possible defense, they are protected from production by

22   the deliberative process privilege.  *See United States v. Reyes*, 239 F.R.D. 591, 598 (N.D. Cal. 2006)

23   (Breyer, J.) ("[A] Rule 17(c) subpoena should be quashed or modified if it calls for privileged matter.")

24   (quotation omitted); *see also United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000)

25   (deliberative process privilege protects predecisional deliberative materials).  Therefore, the subpoena

26   must be quashed in its entirety, including the following specific sub-parts:

27   ///

28
     U.S. Motion to Quash Subpoena                 6
     CR No. 14-380 CRB

| Request 1q | "all records relating to any *effort* by any DEA agent to *investigate* possible criminal or civil liability by common carriers for the shipment of online pharmaceutical packages, and all records relating to any *conclusion* whether such liability could be established . . ." |
|---|---|
| Request 2a | "all records relating to the DEA's *decision* whether to register the person or entity" |
| Request 2b | "all records relating to the DEA's *decision* whether to renew the person's or entity's registration" |
| Request 2e | "all records relating to . . . *the application of any administrative code* to the person or entity's registration, . . . all records, correspondence, notes and memoranda related to the DEA's *decision* whether or not to take such civil, regulatory or administrative *actions*" |
| Request 2i | "all records relating to any *action*, correspondence or *decision* taken as a result of the DEA Miami Field Division Diversion Group's December 11 2006 request" concerning Superior drugs |

(emphasis added).

Compliance with the subpoena would require the DEA to disclose documents related to its internal decision-making processes, including the legal bases for its decisions, resource allocation issues, and discussions of impacts on other investigations or prosecutions. However, the deliberative process privilege protects materials that are "(1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative,' meaning 'it must actually be related to the process by which polices are formulated." *Fernandez*, 231 F.3d at 1246 (quoting *National Wildlife Fed'n v. United States Forest Serv.*, 861 F.2d 1141, 1117 (9th Cir. 1988)). The privilege exists because it "encourages forthright and candid discussions of ideas and, therefore, improves the decisionmaking process." *Fernandez*, 231 F.3d at 1246. To the extent that facts and evidence which are not independently protected by the privilege are "so interwoven with the deliberative material that it is not severable," such material is also protected. *Id.*

The deliberative process privilege applies to materials prepared prior to decisions in criminal, as well as civil and regulatory matters. *Id.* at 1247 (privilege applied to death penalty evaluation form and prosecution memorandum); *see also United States v. Zingsheim*, 384 F.3d 867, 871-72 (7th Cir. 2004) (privilege applied to internal government documents concerning rationales for motions for downward

1  departures under U.S.S.G. § 5K1.1).  Thus, the internal deliberations that underlie the ultimate decisions

2  identified in the subpoena are protected by the agency's deliberative process privilege and cannot be

3  ordered disclosed.  *Fernandez*, 231 F.3d at 1247 (vacating district court's order requiring prosecution to

4  disclose materials protected by the deliberative process privilege).

5      Moreover, to the extent that agency attorneys participated in these decisions, their documents

6  would be protected by the work product privilege and their communications with agents by the attorney-

7  client privilege.  *Id.* (same for materials protected by work product protection); *see also Zingsheim*, 384

8  F.3d at 872 (work product protection and attorney-client privilege apply to discussions between

9  prosecutors and investigating agents).  Such materials also cannot be subpoenaed by the defendants.

10  *Fernandez*, 231 F.3d at 1247.  Any exculpatory information in these documents will be or has been

11  produced to the defense pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).

12  **D.  The Subpoena Demands Production of Entire Investigative Files Which Are Not Subject to
    Discovery Under Rule 16(a)(2) and the Law Enforcement Privilege**

13

14      While on its face, Request 1 appears to be limited to all communications or meetings between

15  DEA and FedEx representatives "in which the participants discussed online pharmacies in general or

16  any individual online pharmacy or pharmacies," subparts of the request are not so limited.  Of particular

17  concern is Request 1q, which demands "all records relating to any effort by any DEA agent to

18  investigate possible criminal or civil liability by common carriers for the shipment of online

19  pharmaceutical packages, and all records relating to any conclusion whether such liability could be

20  established . . ."  This request would require not just the production of the entire investigatory file in this

21  matter (in and of itself problematic for the reasons set forth below), but of all materials related to the

22  investigation of any other common carrier.  As discussed further below, this request is not limited to the

23  specific, relevant, and admissible evidence required by Rule 17.

24      Moreover, Rule 16(a)(2) provides that "reports, memoranda, or other internal government

25  documents made by [a] government agent in connection with investigating or prosecuting the case" are

26  not subject to discovery.  Rule 17 may not be used as a discovery device to circumvent the limits placed

27  on criminal discovery by Rule 16.  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951)  ("It

28

was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.").  However, the defendants' subpoena requests broad swaths of "reports, memoranda or other internal government documents" that are protected from discovery by Rule 16(a)(2).  *See United States v. Fort*, 472 F.3d 1106, 1119 (9th Cir. 2007) (Rule 16(a)(2) exempts reports created by federal agents from disclosure); *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1984) (district court abused its discretion in ordering prosecution "to produce statements of prospective witnesses whom the government subsequently decides not to call at trial").  Because Rule 16(a)(2) prohibits the discovery of these materials, Rule 17 cannot be used to obtain them.  *Bowman Dairy*, 341 U.S. at 220 ("Rule 17(c) was not intended to provide an additional means of discovery."); *see also Mendinueta-Ibarro*, 956 F.Supp.2d at 514 (Rule 16(a)(2) "protects from subpoena any reports made by government agents during the course of an investigation or prosecution"); *United States v. Cherry*, 876 F.Supp. 547, 549 (S.D.N.Y. 1995) (Rule 17(c) subpoena must be quashed where it seeks "to reach the sort of documents that have traditionally been held to be barred from disclosure by Rule 16(a)(2)").

Other examples of requests that similarly demand entire investigative files include:

| Request 1L | "all records relating to any investigation of Creative Pharmacy conducted by the DEA Dallas Field Division" |
|---|---|
| Request 2d | "the contents of all criminal or regulatory investigative files related to the person or entity [identified in Request 1s]" |
| Request 2e | "All records relating to any civil, regulatory or administrative action considered or taken by the DEA against the person or entity [identified in Request 1s]" |
| Request 2g | "All records documenting or relating to visits or meeting between DEA personnel and the person or entity [identified in Request 1s], including but not limited to records of DEA inspections of pharmacies" |
| Request 2h | "Any record of any Suspicious Order Report relating to the person or entity [identified in Request 1s]" |
| Request 2i | "All records relating to any action, correspondence or decision taken as a result of [a DEA request for an Immediate Suspension of Superior Drugs' DEA registration]" |

Such files are also protected from subpoena by the law enforcement privilege.  *See In re Dept. of Investigation of the City of N.Y.*, 856 F.2d 481, 483-84 (2d Cir. 1988) (holding that materials protected

1   by law enforcement privilege cannot be obtained by Rule 17(c) subpoena).  That privilege exists "to

2   prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of

3   sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals

4   involved in an investigation, and otherwise to prevent interference with an investigation."  *Id*. at 484.

5   The defendants' demand for the entirety of the DEA's files regarding its investigations, such as those of

6   the 56 persons and entities identified in Request 1s, invades precisely the interests that the law

7   enforcement privilege and Rule 16(a)(2) were designed to protect.  Moreover, the defendants' desire to

8   fish through the DEA's records for any conceivable information that may assist a potential defense is not

9   a valid rationale for issuing a Rule 17(c) subpoena.  *See Reyes*, 239 F.R.D. at 606 ("A specific theory of

10  defense, however, is not the same thing as a request for specific information.")

11  **E.      The Subpoena Is Not Limited to Requesting Specific, Relevant, Admissible Documents
12           That Are Not Available By Other Means, But Is a Broad Discovery Request Prohibited by
            Rule 17(c).**

13          Rule 17(c) allows a criminal defendant to subpoena documents from third parties before trial.

14  Unlike in civil litigation, however, this right is strictly limited and "was not intended to provide a means

15  of discovery for criminal cases."  *United States v. Nixon*, 418 U.S. 683, 698 (1974); *see also United*

16  *States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) ("Rule 17(c) was not intended as a discovery device.").

17  Specifically addressing subpoenas requiring production before trial, the *Nixon* Court ruled that the

18  movant must generally make the following showings:

19          (1)      the documents are evidentiary and relevant;

20          (2)      they are not otherwise procurable reasonably in advance of trial by exercise of due

21                   diligence;

22          (3)      the party cannot properly prepare for trial without production and inspection in advance

23                   of trial and that the failure to obtain such inspection may tend unreasonably to delay the

24                   trial; and

25          (4)      the application is made in good faith and is not intended as a general "fishing

26                   expedition."

27  *Nixon*, 418 U.S. at 699-700.

28

Thus, the Supreme Court has held that a party seeking to enforce a Rule 17 subpoena "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *Id.* at 700. In addition, the subpoenaing party must show that the documents are not obtainable by "other means." *Id.* Thus, the subpoenaing party has the burden of demonstrating "that the application is made in good faith and is not intended as a general 'fishing expedition.'" *Nixon*, 418 U.S. at 699-700; *see also United States v. Layton*, 90 F.R.D. 514, 516 (N.D. Cal. 1981).

The requirement that a party seeking to enforce a Rule 17 subpoena show that the subpoena seeks specific materials precludes the use of broad catch-all document requests. Indeed, "[a] subpoena signals a fishing expedition when it calls for '[a]ny materials' regarding a particular subject." *United States v. Zavala-Tapia*, 2010 WL 5330506, at *1 (E.D. Cal. 2010); s*ee also United States v. Eden*, 659 F.2d 1376, 1381 (9th Cir. 1981) (affirming trial court's quashing of subpoena requesting production of "any and all documents"); *Reyes*, 239 F.R.D. at 606 ("Where . . . a defendant requests any and all information related to a particular policy or procedure, courts have rejected such requests as an abuse of Rule 17(c)."); *United States v. Shinderman*, 232 F.R.D. 147, 152 (D. Me. 2005) ("Use of terms such as 'any and all documents' or 'including, but not limited to' indicates a fishing expedition" and is improper).

A request that is sufficiently specific must also satisfy the relevance and admissibility requirements. It is not enough for the proponent to argue that the requested documents could contain information that turns out to be relevant and admissible. *See United States v. Hang*, 75 F.3d 1275, 1283 (8th Cir. 1996) (holding that subpoena's "broad request [for documents] exemplified [the proponent's] 'mere hope' that the desired documents would produce favorable evidence, and a Rule 17(c) subpoena cannot properly be issued upon a 'mere hope.'"); *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005) ("In order to meet its burden, the proponent has to show that the documents sought are both relevant and admissible at the time of the attempted procurement. The fact that they are potentially relevant or may be admissible is not sufficient."). If the materials are not admissible, they may not be obtained by a Rule 17(c) subpoena as a matter of law. *See Cuthbertson*, 651 F.2d at 195; *see also Reyes*, 239 F.R.D. at 597 (citing Fed. Prac. & Proc. for proposition that "Rule

1    17(c) was not intended as a discovery device" and observation that rule "is limited to evidentiary

2    materials").

3          Impeachment evidence generally does not meet the admissibility test and may not be the sole

4    support for a party's demand.  *Nixon*, 418 U.S. at 701; *United States v. Fields*, 663 F.2d 880, 881 (9th

5    Cir. 1981) (defendant must show that the documents have an evidentiary use aside from mere

6    impeachment).  The burden of proving relevance and admissibility is on the proponent of the subpoena.

7    *Eden*, 659 F.2d at 1381.

8          If a subpoena meets these requirements, the proponent must show that the documents  sought

9    "are not otherwise procurable reasonably in advance of trial by exercise of due diligence."  *Nixon*, 418

10   U.S. at 699.  Thus, a defendant may not properly subpoena documents that can be obtained from the

11   prosecution or that are already in the defendant's own possession.  *See Eden*, 659 F.2d at 1381

12   (affirming order quashing subpoena when materials were otherwise obtainable through exercise of

13   reasonable diligence); *RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. at 163-64 (unreasonable and

14   unnecessary to have subpoena recipient conduct "massive search for countless documents, at great

15   expense" to re-produce documents already given to the defendant in another action, or to produce

16   materials or information in the possession of the government; instead defendant must first look through

17   its civil and criminal discovery to find the documents sought, and obtain documents from the

18   government "in the usual manner").

19         Rule 17 provides that this Court may quash or modify a subpoena where compliance would be

20   "unreasonable or oppressive."  Fed.R.Crim.P. 17(c)(2); *United States v. Bergeson*, 425 F.3d 1221, 1224

21   (9th Cir. 2005).[7]  As set forth in more detail below, the defendants' subpoena does not satisfy any of the

22   four *Nixon* factors set out above and is unreasonable and oppressive.  Therefore, it must be quashed.

23         1.    Specificity

24         The subpoena is the type of broad discovery device for which Rule 17(c) cannot be used.

25   Rather, Rule 17(c) may be used only to request specific documents that the defendant has reason to

26

27   ───────────────

          [7]      That decision will be reviewed on appeal for abuse of discretion.  *See Bergeson*, 425 F.3d

28   at 1224 ("We review orders quashing subpoenas under Rule 17(c)(2) for abuse of discretion.").

1   believe exist and that are themselves admissible evidence.  Rule 17(c) may not be used to require that

2   the DEA engage in an agency-wide scavenger hunt for documents that may potentially lead to relevant

3   and admissible evidence.  However, this is precisely what the subpoena demands.

4        First, the subpoena contains a 13-line definition of the terms "documents" and "records" and

5   uses the terms "all records constituting or relating to" in virtually every request.  These terms include

6   such vaguely-defined items as "papers," "computer facilitated or transmitted materials," "electronically

7   stored information," "information in any computer database," "printouts," "checks," "receipts," and the

8   catch-all phrase "any other written, recorded or memorialized material of any nature whatsoever."  Such

9   a broad definition does not even attempt to limit the materials sought to admissible evidence, but rather

10   is a hallmark of the fishing expedition common to civil cases that the Supreme Court expressly held

11   could not be conducted using Rule 17(c).  Rather than requesting a "discrete set of existing written

12   materials," *Reyes*, 239 F.R.D. at 599, the subpoena casts a wide net for any item conceivably ever

13   created by a DEA employee involving a wide range of topics, investigations, persons, and entities.  Such

14   a broad demand does not meet the specificity requirement of Rule 17.

15        Second, the subpoena's demand that the DEA search and produce records from "any local,

16   branch or other office of the DEA," encompasses literally every DEA office on the planet, and is the

17   exact opposite of the specificity required by Rule 17(c).[8]

18        Third, the subpoena requests "all records created since January 1, 2000."  Demanding a general

19   search of all records for a 15-year time period defies any definition of the term "specific."  *See Reyes*,

20   239 F.R.D. at 604-606 (subpoena not sufficiently specific where it compelled production of "any and all

21   information related to stock options issued between 1994 and 1999 by a multi-million dollar company

22   with thousands of employees").

23        Fourth, the subpoena's repeated use of terms such as "all records," "constitute, record or

24   discuss," and "relating to," broadens its reach beyond the specificity required for a proper Rule 17(c)

25   subpoena.  As this Court has observed, "[a] demand for 'any and all documents relating to several

26

27         [8]    The DEA currently has over 300 offices worldwide.  *See* http://www.dea.gov/about/

28   Domesticoffices.shtml.

categories of subject matter . . ., rather than specific evidentiary items,' suggests that the subpoena's proponent 'seeks to obtain information helpful to the defense by examining large quantities of documents, rather than to use Rule 17 for its intended purpose – to secure the production for a court proceeding of specific admissible evidence.'" *Reyes*, 239 F.R.D. at 606 (quoting *United States v. Louis*, 2005 WL 180885 at *5 (S.D.N.Y. 2005)); *see also Mendinueta-Ibarro*, 956 F.Supp.2d at 513 (subpoenas seeking "any and all" materials "justify the inference that the defense is engaging in the type of 'fishing expedition' prohibited by *Nixon*").

For example, the subpoena demands "all documents and records that relate to . . . [a] meeting that occurred on or about May 13, 2002 during which the participants discussed the topic of online pharmacies. . . ." Taken together with the other language in the subpoena, this request requires that the DEA search the files and records of every employee, in every office, on the entire planet, for a 15-year period for any materials related to this meeting.[9] This is not a request for specific items of admissible evidence, but a broad discovery request calling for precisely the type of "fishing expedition" prohibited by Rule 17. *See Mendinueta-Ibarro*, 956 F.Supp.2d at 513 ("In order to avoid speculation that the moving party is using Rule 17(c) to circumvent normal discovery requirements, the party's Rule 17(c) subpoena must be able to reasonably specify the information contained or believed to be contained in the document sought rather than merely hope that something useful will turn up.") (internal quotations omitted).

Similarly, Request 2 demands production of a variety of DEA files and internal documents concerning administrative records, investigations and regulatory actions involving 56 identified "persons" and "entities." The DEA issues registrations to a limited category of persons and entities, including physicians and pharmacies, but not pharmacists or pharmacy owners.[10] However, the list of

---

[9] As discussed above, the United States met and conferred with defense counsel twice in an effort to narrow the reach of the subpoena. The defendants were unwilling to make any concessions regarding the time period of the search, or the definition of records sought, and were only willing to limit the worldwide reach of the subpoena to the extent that the DEA affirmatively knows that a particular office contains no responsive records.

[10] The DEA also issues registrations to a number of entities not at issue here, such as manufacturers, distributors, importers, exporters, researchers, hospitals, clinics, narcotics treatment programs, and chemical analysts. 21 C.F.R. § 1301.13.

56 persons and entities includes no physicians and over 35 entities that are not pharmacies.  Therefore, the request has made no attempt to limit itself to specific documents that are likely to exist, but, rather seeks records for over 35 entities for which the DEA does not even issue registrations.

In addition to these general objections to the lack of specificity in any of the requests, a number of the requests call for the production of entire investigative files and broad swaths of other information:

| | |
|---|---|
| Request 1L | "all records relating to any investigation of Creative Pharmacy conducted by the DEA Dallas Field Division" |
| Request 1q | "all records relating to any effort by any DEA agent to investigate possible criminal or civil liability by common carriers for the shipment of online pharmaceutical packages, and all records relating to any conclusion whether such liability could be established . . ." |
| Request 1r | "all records related to a DEA-sponsored Pharmaceutical Industry Conference held in September 2007 in Houston, TX . . ." |
| Request 2c | "The content of the DEA's Controlled Substances Act file related to [the 56 persons and entities identifies in Request 1s]" |
| Request 2d | "the contents of all criminal or regulatory investigative files related to [the 56 persons and entities identifies in Request 1s]" |
| Request 2e | "all records relating to any civil, regulatory or administrative action considered or taken by the DEA against [the 56 persons and entities identifies in Request 1s]" |

These overbroad requests appear to demand production of literally every document or record in the DEA's possession regarding these matters and fall far short of the specificity necessary for a Rule 17(c) subpoena to be enforceable.  *See Reed*, 726 F.2d at 577 (subpoena that "did not request specific documents, but sought entire arson investigation files" did not meet requirements of specificity and admissibility).  Where a subpoena, such as this one, is not "tailored to obtain specific documents," but "adopts a particular theory of defense and then casts a wide net with the goal of reeling in something to support it," the requirements of Rule 17(c) are not satisfied, and the subpoena must be quashed.  *Reyes*, 239 F.R.D at 606.

2.   Admissibility

The subpoena also does not even attempt to limit itself to admissible evidence.  First, while the superseding indictment charges conduct ending in 2010, the subpoena demands production of all records

1 created up to the present.  The subpoena, therefore, demands the production of materials created 5 years

2 after the time period alleged in the indictment.  The admissibility of such materials is dubious at best and

3 cannot be established with the certainty necessary to comply with Rule 17.  *See RW Prof'l Leasing*

4 *Servs. Corp.*, 228 F.R.D. at 162  (documents must be both relevant and admissible at the time subpoena

5 is issued); *see also Cuthbertson*, 651 F.2d at 195 (quashing Rule 17(c) subpoena where requested

6 witness statements were not admissible at the time they were subpoenaed).

7   Second, the subpoena's broad definition of "documents" and "records" to encompass "any other

8 written, recorded, or memorialized material of any nature whatsoever," and its repeated use of the terms

9 "all documents and records that constitute, record or discuss" does not make any attempt to limit the

10 subpoena to admissible evidence as required by *Nixon*.  *See Reyes*, 239 F.R.D. at 597 (noting that in

11 *Bowman Dairy* the Supreme Court "quashed an expansive 'catch-all provision' in the subpoena that was

12 'not intended to produce evidentiary materials' but served 'merely [as] a fishing expedition to see what

13 may turn up") (quoting *Bowman Dairy*, 341 U.S. at 221).  Rather, virtually every document and record

14 requested by the subpoena would constitute inadmissible hearsay.

15   For example, Request 1L requires the production of all reports concerning any surveillance

16 conducted by any agent in the DEA Dallas Field Division regarding the investigation of Creative

17 Pharmacy.  However, such surveillance reports do not constitute admissible evidence.  At most, the

18 reports could be used to impeach the agents if they testified; however, Rule 17(c) cannot be used to

19 obtain impeachment material, and, to the extent that the reports constitute statements of potential

20 witnesses, they are protected from production by Rule 17(h).  *See Fields*, 663 F.2d at 881 (impeachment

21 is "generally insufficient to justify the pretrial production of documents").  Similarly, to the extent that

22 the subpoena demands "summaries, notes and memoranda related to the interviews of" other

23 individuals, it requests "only hearsay" and must be quashed.  *Reyes*, 239 F.R.D. at 600; *see also*

24 *Cuthbertson*, 651 F.2d at 195 (quashing subpoena for witness statements that were "simply hearsay"

25 until witness testified inconsistently with them at trial).

26   In addition to these general concerns regarding all of the requests, Requests 1q, 2a, 2b, 2e, and

27 2i, are particularly troubling.  These requests demand documents concerning DEA's decisions, including

28

1    "whether to register the person or entity," "whether to renew the person's or entity's registration,"

2    "whether or not to take [proposed] civil, regulatory or administrative actions."  As discussed above,

3    these requests explicitly ask for materials concerning DEA policy decisions which are neither admissible

4    as non-impeachment evidence nor discoverable in any form because they are protected by the

5    deliberative process privilege.  *See Reyes*, 239 F.R.D. at 600 ("[T]he second-hand reflections, findings,

6    and conclusions of investigating attorneys would not themselves become evidence at trial to prove the

7    truth of the matters they assert.").

8           Only if Request 1 is limited to communications and correspondence between the DEA

9    representatives identified in the various subparts and FedEx employees can that request be construed as

10   requesting specific admissible evidence.  All the other materials requested appear to be inadmissible

11   hearsay.  *See Reyes*, 239 F.R.D. at 600 (records of what investigating attorneys told government about

12   what witnesses said is "hearsay-upon-hearsay" that cannot be obtained through a Rule 17(c) subpoena).

13   Similarly, the only admissible evidence demanded in Request 2 are the registrations identified in

14   Request 2a, which may be admissible as public records under Federal Rule of Evidence 803(8).

15   However, the statements called for by Request 1 are expressly precluded from the reach of Rule 17(c) by

16   Rule 17(h), and the registrations demanded in Request 2a have already been provided or will be

17   produced.  Therefore, as discussed below, because they are available by other means, the subpoena to

18   obtain them must be quashed.

19          3.    Relevancy

20          The subpoena also requests a wide variety of materials that are not relevant to any possible

21   defense except as potential impeachment material, a purpose for which a Rule 17(c) subpoena cannot be

22   issued.  For example, Requests 1a, 1c, 1g-i, 1g-ii, 1g-v, 1g-vi, 1i-i, 1i-iii, 1r, and 2g demand production

23   of "all records that relate to" a series of meetings or suspected meetings involving DEA personnel.

24   Because the term "records" is broadly defined to include any material, including specifically "checks"

25   and "receipts," this request requires the DEA to produce airline tickets, hotel bills, reimbursement

26   checks, invoices for meeting room rentals, and similar materials regarding the process of holding and

27   attending the meetings which cannot be relevant to any conceivable defense.  Only if a participant were

28

to deny attending the meeting could these materials potentially be used for impeachment; but, as noted above, records that are only admissible as impeachment evidence cannot be obtained with a Rule 17(c) subpoena.

Additionally, Requests 1q, 2a, 2b, 2e, and 2i, demand documents and records concerning internal agency decisionmaking.  However, agency personnel's subjective thoughts, beliefs, opinions, and conclusions, to the extent they were not communicated to FedEx, are not relevant to any conceivable defense, except – again – as potential impeachment material not obtainable through a Rule 17(c) subpoena.  *Reyes*, 239 F.R.D. at 600 ("[T]he second-hand reflections, findings, and conclusions of investigating attorneys would not themselves become evidence at trial to prove the truth of the matters they assert").

Similarly, as discussed above, Requests 1L, 1q, 1r, 2c, 2d, and 2e demand production of entire investigation files, including every surveillance note, operations plan, subpoena response, investigative report, search warrant, and any other document or record created as a part of an investigation.  It is difficult to determine how this broad swath of materials, unknown to and not involving FedEx, could be relevant to FedEx's defense.  *See Hang*, 75 F.3d at 1283 ("[A] Rule 17(c) subpoena cannot properly be issued upon a 'mere hope'" of turning up favorable evidence).

### 4.   Not Available By Other Means

*Nixon* also requires that the documents called for by the subpoena not be available by other means.  While the United States is not required to conduct the worldwide search for records called for by the subpoena, as discussed above, the United States has undertaken significant efforts to collect documents of the type requested by the subpoena, along with other potentially relevant materials, and produce them to the defense.

In the rare instances where the defense has requested materials that were not being produced in the course of discovery, the United States has been willing to work with the defense to procure these materials.  For example, Request 2a demands "records relating to the DEA's registration" of 56 identified persons and entities.  The United States has provided registrations for a number of the pharmacies on this list.  Ault Decl. ¶ 11.  The United States further informed defense counsel if, after

1  reviewing the materials produced, the defendants believed there were additional registrations that they

2  would like but that had not been produced, the United States would help the defense obtain those

3  registrations from the DEA.  Ault Decl. ¶ 12.  Rather than making this request, the defendants issued the

4  subpoena.

5       Because many of these materials are already in the possession of the defendants, and the

6  defendants have not shown that they could not obtain these materials through other means, such as by

7  making a reasonable request of the United States, they have not met this requirement for obtaining a

8  Rule 17(c) subpoena.

9       5.    Overbreadth, Burden, and Reasonableness

10      Rule 17(c)(2) provides that "the court may quash or modify the subpoena if compliance would

11  be unreasonable or oppressive," as it would be here.  As noted above, the United States has twice met

12  and conferred with defense counsel in an attempt to narrow the breadth of the subpoena, and both times,

13  the defendants declined to alter any of the subpoena's requests or definitions by narrowing the requests

14  in any meaningful fashion or even agreeing to a reasonable methodology by which a search for records

15  may be conducted.  The refusal of the defendants to agree to any reasonable concessions highlights both

16  the overbreadth of the subpoena and its intent not to obtain specific items of relevant, admissible

17  evidence as required by Rule 17(c)(1) and *Nixon*, but to harass, burden and intimidate the DEA, as

18  prohibited by Rule 17(c)(2).

19      In addition, as discussed above, the United States has already made attempts to search for

20  records like those requested in the subpoena in the places where they are most likely to be found.  The

21  subpoena, therefore, would require that the DEA continue this search in the places where those records

22  are least likely to be found.  The demand that the DEA engage in this exercise in futility is another

23  indication that the subpoena is not designed to obtain specific admissible evidence relevant to the

24  defense, but to harass and burden the DEA by causing it to engage in a pointless fishing expedition.

25      Finally, the subpoena is drafted in such a fashion as to render a number of the requests

26  unintelligible.  For example, many of the requests include sub-requests and sub-sub-requests which

27  confuse the nature of the documents actually requested.  For example, Request 1 appears to be limited to

28

materials that relate to "any communication or meeting" between representatives of DEA and FedEx "in which the participants discussed online pharmacies in general or any individual online pharmacy or pharmacies." However, Requests 1d, e, and f then request "all records and communications" regarding "FedEx's cooperation and assistance" with three investigations. It is not clear whether these requests are limited to materials relating to any "communication or meeting" between DEA and FedEx representatives concerning online pharmacies, as stated in Request 1, or if they truly request "all records and communications" relating to FedEx's cooperation, whether the records involve a "communication or meeting" between FedEx and DEA representatives or not.

Similarly, Request 1g demands "[a]ll records constituting or relating to communications between DEA personnel . . and FedEx employees . . . concerning pharmaceutical shipments into the states of Kentucky, Tennessee, Virginia or West Virginia." It is not clear whether Request 1g seeks records concerning all "pharmaceutical shipments," as it states, or whether the request is limited to only those concerning "online pharmacies" as specified in Request 1. Moreover, Request 1g demands documents "including but not limited to" six separate sub-requests. Subrequest 1giii then asks for "[a]ny DEA subpoena or request for information for records concerning pharmaceutical shipments into Kentucky, Tennessee, Virginia, or West Virginia . . ." The format of this request makes it unclear whether the subpoena is calling for the production of the subpoenas themselves or for "records constituting or relating to communications" between DEA and FedEx representatives regarding the subpoenas.

Request 1L demands "all records relating to any investigation of Creative Pharmacy conducted by the DEA Dallas Field Division." It is unclear whether the request truly seeks all records of the investigation or is limited by the specification in Request 1 that the subpoena is only seeking materials related to communications or meetings between DEA and FedEx personnel concerning this investigation. Similarly the request also demands "all records constituting or relating to communications between the DEA Dallas Field Division and DEA personnel in other regions, including but not limited to Florida, concerning Creative Pharmacy." Again, it is unclear if this request seeks all communications between DEA personnel about Creative Pharmacy or only those that relate to communications and meetings between DEA and FedEx representatives.

Request 1o demands "all records that relate to the DEA New Orleans Field Office's acquisition of FedEx shipment and delivery records for American Medical Services . . . including without limitation an administrative subpoena served upon FedEx on March 19, 2004, and any other subpoena or document requests issued by the DEA to FedEx, any responses to such subpoenas or requests by FedEx, and any communications between FedEx and DEA personnel relating to these matters." This request on its face appears to encompass documents such as subpoenas and subpoena responses as well as communications concerning them; however, its inclusion in Request 1, which states that it is limited to communications and meetings between DEA and FedEx representatives, renders it contradictory.

Request 1q demands "all records relating to any effort by any DEA agent to investigate possible criminal or civil liability by common carriers for the shipment of online pharmaceutical packages, and all records relating to any conclusion whether such liability could be established." Again, this record does not appear to be limited to materials that constitute or relate to communications or meetings between FedEx and DEA representatives, but appears to seek every document in any DEA file regarding any investigation into any common carrier at any time for the delivery of online pharmaceutical packages.

For purposes of this motion, the United States has interpreted the requests according to what appears to be their natural meaning; but the contradiction between the broad Request 1 and its various subparts renders the subpoena difficult to interpret and is yet another reason why compliance would be unduly burdensome and unreasonable.

**F.    The United States Will Make Reasonable Efforts to Procure And Produce Documents Requested by the Defendants.**

The United States has already provided the defendants with many of the documents the subpoena demands and will take the reasonable steps to obtain additional materials, which will be reviewed and produced as appropriate, keeping in mind the United States' obligations under *Brady* and Rule 16. As described above, these reasonable measures will include specifically requesting that the DEA employees named in the subpoena conduct additional searches of their records for substantive Internet pharmacy-related communications and correspondence with FedEx employees as well as records of substantive

1    meetings at which FedEx employees were present at which Internet pharmacies were discussed.  DEA

2    will also issue a general request to all its employees requesting that any employee who has had

3    substantive communications with FedEx employees regarding Internet pharmacies conduct a similar

4    search for records.  The United States will also produce the DEA registrations for the pharmacies

5    identified in Request 1s that have not already been provided to the defendants.

6         It bears repeating that at no point has the United States refused to produce these materials.  To

7    the contrary, the United States has consistently requested that the defense meet and confer regarding any

8    discovery issues prior to raising them with the Court.

9                              **IV.    <u>CONCLUSION</u>**

10        For the reasons discussed above, the Court should grant the United States' motion to quash the

11   Rule 17(c) subpoena issued at the request of the defendants.  The subpoena seeks statements of potential

12   witnesses in violation of Rule 17(h), documents protected by a variety of privileges, and fails to meet

13   any of the requirements imposed by the Supreme Court's *Nixon* decision.

14        Nevertheless, the United States has offered to work with the defense counsel to make reasonable

15   efforts to obtain specific items that have not already been produced and are reasonably subject to

16   production in this criminal case.  The parties have been able to resolve all discovery disputes to date, and

17   if disputes arise, they can be addressed by the Court applying the rules and principles of criminal

18   discovery.

19

20   DATED: January 30, 2015                          Respectfully Submitted:

21                                                    MELINDA HAAG
22                                                    United States Attorney

23                                                            /s

24                                                    _____
                                                     KIRSTIN M. AULT
25                                                   KYLE F. WALDINGER
                                                     Assistant United States Attorneys

26

27

28