MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KIRSTIN M. AULT (CABN 206052)
KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorneys

JENNY C. ELLICKSON (DCBN 489905)
Trial Attorney

      450 Golden Gate Avenue, Box 36055
      San Francisco, California 94102-3495
      Telephone: (415) 436-6940
      FAX: (415) 436-7234
      Kirstin.ault@usdoj.gov
      Kyle.waldinger@usdoj.gov
      Jenny.ellickson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CR No. 14-380 CRB |
| Plaintiff, | UNITED STATES' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT |
| v. | |
| FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, (A/K/A FEDEX EXPRESS) FEDEX CORPORATE SERVICES, INC., | Hearing Date: May 13, 2015<br>Hearing Time: 2:00 p.m.<br>Court: Hon. Charles R. Breyer |
| Defendants. | |

# **TABLE OF CONTENTS**

I.   INTRODUCTION .................................................................................................1

II.  BACKGROUND .................................................................................................3

III. DISCUSSION ...................................................................................................5

    A.    Legal Standards...........................................................................................5

    B.    The CSA Counts (Counts 1-10 & 13-15) Properly State Offenses
        Under the CSA ...........................................................................................6

        1.    Section 822(c) does not exempt common carriers from the
              CSA's prohibitions..........................................................................6

              a.    Section 822(c) is an exemption from the CSA's
                    registration requirements, not a provision that
                    authorizes common carriers and other unregistered
                    persons to engage in conduct that would otherwise
                    be criminal under the CSA...............................................7

              b.    The defendants' interpretation of Section 822(c)
                    undermines the goals of the CSA....................................10

        2.    In any event, the superseding indictment alleges that the
              defendants acted outside the usual course of business when
              they committed the charged offenses, which places them
              outside the scope of any Section 822(c) exemption.....................13

              a.    The superseding indictment specifically alleges that
                    the defendants acted outside "the usual course of business"
                    and departed from their "usual business practices"
                    when they committed the charged conduct....................13

              b.    The defendants cannot show that, as a matter of law,
                    they were acting in the usual course of their business .................14

                c.    The defendants' departure from their own individual
                    business practices is relevant to whether they were
                    acting in the usual course of business ...........................17

        3.    The distribution counts (Counts 2-10, 14 & 15) properly
              state offenses under the CSA ........................................18

         4.    The CSA conspiracy charges (Counts 1 & 13) properly
               state offenses under the CSA ........................................20

    C.    The Money-Laundering Conspiracy Charges (Counts 12, 17 & 18)
        Properly State Offenses Under 18 U.S.C. § 1956.................................21

    D.    The FDCA Conspiracy Charges (Counts 11 & 16)
        Properly State Offenses Under the FDCA ..........................................23

E.      Because the Defendants Had Fair Warning That the Charged
        Conduct Violates the CSA and FDCA, the Fifth Amendment
        Does Not Require Dismissal of Any Charges.......................................................25

IV.     CONCLUSION...........................................................................................................27

**<u>TABLE OF AUTHORITIES</u>**

**FEDERAL CASES**

*Bates v. United States*, 522 U.S. 23 (1997).............................................................................18-19

*Clark v. Brown*, 450 F.3d 898 (2006) ........................................................................................26

*First Nat'l Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971 (7th Cir. 2007)....................17

*Franklin v. Terr*, 201 F.3d 1098 (9th Cir. 2000)........................................................................21

*Gonzales v. Raich*, 545 U.S. 1 (2005)........................................................................... 10-11, 16

*Hanni v. American Airlines*, 2010 WL 289297 (N.D. Cal. 2010) .......................................... 16-17

*In re Straightline Investments, Inc.*, 525 F.3d 870 (9th Cir. 2008)......................................24

*Miller v. Carrington Mortgage Servs.*, 2013 WL 5291939 (N.D. Cal. 2013) ..............................17

*POM Wonderful LLC v. Coca-Cola Co.*, 134 S.Ct. 2228 (2014) ..............................................23

*Rehberg v. Paulk*, 132 S.Ct. 1497 (2012) ..................................................................................21

*Robinson v. Shell Oil, Co.*, 519 U.S. 337 (1997) ........................................................................5

*Salinas v. United States*, 522 U.S. 52 (1997)......................................................................20, 22

*Stubblefield v. Gonzales*, 150 Fed. Appx. 630 (9th Cir. 2005) ..............................................18

*United States v. Backlund*, 689 F.3d 986 (9th Cir. 2012) ............................................5-6, 19, 25

*United States v. Bansal*, 663 F.3d 634 (3d Cir. 2011) ..............................................................20

*United States v. Boettjer*, 569 F.2d 1078 (9th Cir. 1978) ......................................................8

*United States v. Boren*, 278 F.3d 911 (9th Cir. 2002) ...........................................................5, 24

*United States v. Feingold*, 454 F.3d 1001 (9th Cir. 2006)......................................................8, 18

*United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008) ......................................................20-21

*United States v. Golb*, 69 F.3d 1417 (9th Cir. 1995) ..............................................................22

*United States v. Goldfine*, 538 F.2d 815 (9th Cir. 1976) ......................................................9

*United States v. Harriss*, 347 U.S. 612 (1954) ........................................................................25

*United States v. Heredia*, 483 F.3d 913 (9th Cir. 2007) ........................................................26

*United States v. Hill*, 589 F.2d 1344 (8th Cir. 1979)..............................................9-10, 14-15, 26

*United States v. Kristic*, 558 F.3d 1010 (9th Cir. 2009) ........................................................5

*United States v. Lanier*, 520 U.S. 259 (1997) ..........................................................6, 25

*United States v. Lyle*, 742 F.3d 434 (9th Cir. 2014) ...............................................5, 14

*United States v. Miranda*, 494 F.2d 783 (5th Cir. 1974) ......................................13, 15

*United States v. Moore*, 423 U.S. 122 (1975) ...................................7-9, 15-16, 18, 26

*United States v. Nader*, 542 F.3d 713 (9th Cir. 2008) ...................................................5

*United States v. Rosenberg*, 515 F.2d 190 (9th Cir. 1975) ................................8, 13, 15

*United States v. Sioux*, 362 F.3d 1241 (9th Cir. 2004) ...................................................5

*United States v. Smith*, 141 Fed. Appx. 83 (4th Cir. 2005) ........................................15

*United States v. Smith*, 573 F.3d 639 (8th Cir. 2009) ................................................25

*United States v. Vamos*, 797 F.2d 1146 (2d Cir. 1986) ...............................................15

*Wyeth v. Levine*, 555 U.S. 555 (2009) ..........................................................................23

## FEDERAL STATUTES AND RULES

18 U.S.C. § 371 .......................................................................................4, 23, 25

18 U.S.C. § 1264 .................................................................................................11

18 U.S.C. § 1341 .................................................................................................11

18 U.S.C. § 1462 .................................................................................................11

18 U.S.C. § 1956 .............................................................................................4, 21

18 U.S.C. § 2252A ........................................................................................ 11-12

21 U.S.C. § 331 ..........................................................................................2-4, 23

21 U.S.C. § 333 ....................................................................................................4

21 U.S.C. § 353 ....................................................................................................4

21 U.S.C. § 373 ........................................................................................2-3, 23-26

21 U.S.C. § 802 .................................................................................................6, 9

21 U.S.C. § 822 ....................................................................................... *passim*

21 U.S.C. § 823 ....................................................................................................6

21 U.S.C. § 841 ....................................................................................... *passim*

21 U.S.C. § 846 .................................................................................................. 3-4, 20

21 U.S.C. § 885 .......................................................................................................13

42 U.S.C. § 1983 ......................................................................................................21

49 U.S.C. § 80302 ....................................................................................................12

FDA Compliance Policy Guide § 100.500 (1989)...................................................24

H.R. Rep. No. 91-1444, 1970 U.S.C.A.A.N. 4566 ............................................11, 15

Pub. L. No. 63-233, 38 Stat. 785 (1914)..........................................................10-11, 16

Pub. L. No. 89-74, 79 Stat. 226 (1965)............................................................10-11, 16

Pub. L. No. 98-473, 98 Stat. 2071 (1984) ................................................................9

Pub. L. No. 99-570, 100 Stat. 3207-6 (1986) ...........................................................9

# I.    INTRODUCTION

In their Motion to Dismiss the Indictment, the defendants argue that they cannot be prosecuted for the conduct described in the superseding indictment because, in their view, Congress exempted common carriers from any criminal liability arising from their transportation and delivery of illegal drugs. According to the defendants, these exemptions give them and other common carriers carte blanche to knowingly and intentionally distribute illegal drugs; to conspire with others to distribute illegal drugs; and to conspire to launder the proceeds of illegal drug activity. In other words, the defendants believe that they could conspire with a Mexican drug cartel to deliver cocaine to customers around the United States, and the United States would be unable to prosecute them for this conduct. Such a broad exemption from the federal drug laws would be unprecedented, and the defendants identify no court that has recognized a carve-out of this scope and magnitude. The absence of support for the defendants' position is understandable because their proposed exemptions are inconsistent with the text, structure, purpose, and legislative history of the relevant criminal statutes.

The defendants ask the Court to dismiss most of the claims in the superseding indictment based on a purported exemption in 21 U.S.C. § 822(c), which provides that certain persons, including common carriers who possess controlled substances in the usual course of their business, are excepted from the registration requirements of the Controlled Substances Act (CSA), 21 U.S.C. § 841, *et seq*. According to the defendants, however, Section 822(c) is not only a registration exception but also creates a broad exemption from any and all criminal liability under the CSA because it provides that the persons described in the exception "may lawfully possess any controlled substance . . . under this subchapter." But this language does not mean what the defendants claim. Indeed, the Supreme Court, the Ninth Circuit, and at least one other court of appeals have rejected similar interpretations of Section 822, holding instead that Section 822 authorizes only conduct that is otherwise lawful under the CSA. As these courts concluded, interpreting Section 822 in the way the defendants suggest would thwart the core purposes of the CSA and undermine Congress's intent to punish drug transactions that occur outside legitimate distribution channels. The defendants' interpretation is also inconsistent with the text and structure of the CSA.

But even if Section 822(c) did create a broad exemption from criminal liability, the defendants still would not be entitled to dismissal because this provision does not apply to their conduct in this case. By its terms, Section 822(c) applies only to common carriers who possess a controlled substance in the usual course of business, and the superseding indictment alleges that the defendants' conduct in this case was outside "the usual course of business" and constituted a departure from the defendants' "usual business practices." These allegations, which the Court must accept as true for purposes of this motion, demonstrate that Section 822(c) does not apply to the defendants on the face of the indictment. The defendants attempt to avoid this result by arguing that, as a matter of law, a common carrier always acts in the usual course of business when it transports and delivers packages for the general public, even if it knows that those packages contain illegal drugs, but they offer no meaningful support for this position. Indeed, the courts that have interpreted Section 822(c) have concluded that "the usual course of business" includes only acts within the legitimate distribution chain of a controlled substance, a description that does not apply to the defendants' conduct here.

In addition, Section 822(c) provides only that certain unregistered persons may "lawfully possess" controlled substances; it does not provide that they may distribute them, conspire to distribute them, or launder the proceeds of any illegal distribution. Accordingly, even if Section 822(c) did constitute an exemption from criminal liability, this exemption would apply only to possession and would not shield the defendants from prosecution for the charges in the indictment. Furthermore, the conspiracy charges in the indictment allege that the defendants conspired to facilitate Internet pharmacies' unlawful distribution of controlled substances and to launder the proceeds of such conduct. Even if Section 822(c) somehow authorizes the defendants to engage in illegal drug distribution themselves, it plainly does not authorize the defendants to conspire to facilitate the illegal drug distribution of others.

The defendants also ask the Court to dismiss Counts 11 and 16 of the superseding indictment based on 21 U.S.C. § 373(a), a provision in the Food Drug and Cosmetics Act ("FDCA"), 21 U.S.C. § 331, *et seq.*, that provides that "carriers shall not be subject to the other provisions of this chapter by reason of their receipt, carriage, holding, or delivery of . . . drugs . . . in the usual course of business as

carriers." But the defendants identify no court that has concluded that this provision exempts common carriers from all criminal liability under the FDCA. Furthermore, as with Section 822(c), Section 373(a) applies only to common carriers who are acting in the usual course of business, and the superseding indictment sufficiently alleges that the defendants' conduct here places them outside that category. Likewise, any exemption in Section 373(a) would not allow the defendants to escape criminal liability for conspiring to facilitate Internet pharmacies' distribution of misbranded drugs, which is the basis for the charges in Counts 11 and 16.

Finally, there is no merit to the defendants' claim that the superseding indictment must be dismissed because the CSA and FDCA did not give them fair warning that their conduct was criminal. These statues are unambiguous as applied to the defendants' conduct and therefore gave them sufficient notice that they could be prosecuted for the offenses described in the indictment. Indeed, it should not come as a shock to the defendants to learn that they may be criminally liable for knowingly and intentionally distributing illegal drugs on behalf of their customers or for conspiring to engage in this conduct.

For all these reasons, the Court should deny the defendants' motion to dismiss in its entirety.

## II.   BACKGROUND

On August 13, 2014, a grand jury sitting in the Northern District of California returned an 18-count superseding indictment charging FedEx Corporation and two of its operating companies, Federal Express Corporation (also known as FedEx Express) and FedEx Corporate Services, Inc., with violating and/or conspiring to violate federal laws prohibiting the unlawful distribution of controlled substances, in violation of the CSA, and misbranded drugs, in violation of the FDCA. Clerk's Record ("CR") 28 (hereinafter "Super. Ind."). Counts 1 and 13 charged these defendants with conspiring to distribute and to possess with intent to distribute controlled substances in violation of, *inter alia*, 21 U.S.C. §§ 841(a)(1), all in violation of 21 U.S.C. § 846. *Id.* ¶¶ 22-40, 70-87. Counts 2 through 10, 14, and 15 charged the defendants with possessing with intent to distribute and distributing controlled substances, in violation of, *inter alia*, 21 U.S.C. § 841(a)(1). *Id.* ¶¶ 41-42, 88-89. Counts 11 and 16 charged the defendants with conspiring to distribute and dispense misbranded drugs in violation of 21 U.S.C.

§§ 331(k), 333(a)(1), (a)(2), and 353(b), all in violation of 18 U.S.C. § 371. *Id.* ¶¶ 43-61, 90-106. Counts 12, 17, and 18 charged the defendants with conspiring to launder money that was the proceeds of possession with intent to distribute and distribution of controlled substances in violation of, *inter alia*, 21 U.S.C. §§ 841(a), 841(b), and 846, all in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and (h). *Id.* ¶¶ 62-69, 107-120.

The superseding indictment contained 126 paragraphs of allegations, including 21 introductory paragraphs that summarized the conduct underlying these charges. Super Ind. ¶¶ 1-21. Among other things, these introductory paragraphs alleged that the defendants shipped controlled substances and prescription drugs for two illegal Internet pharmacy organizations and that they did so knowing that these pharmacies were distributing drugs outside the usual course of professional practice and not for a legitimate medical purpose. *Id.* ¶¶ 4-7. These introductory paragraphs further alleged that the defendants enacted several internal policies and procedures that applied only to Internet pharmacies and that these policies were designed to allow the defendants to continue to ship controlled substances and prescription drugs for illegal Internet pharmacies while protecting against lost revenue and addressing employee compensation and safety issues. *Id.* ¶¶ 8-21. Each count of the indictment incorporated the allegations in these introductory paragraphs by reference. *Id.* ¶¶ 22, 41, 43, 62, 70, 88, 90, 107, 114.

The superseding indictment further described the manner and means by which each of the charged conspiracies operated, including specific allegations regarding the role the defendants played. Super. Ind. ¶¶ 24-40, 45-61, 64-69, 72-87, 92-106, 109-113, 116-120. The "manner and means" sections for the CSA conspiracies charged in Counts 1 and 13 each included allegations that the defendants "did not ship contraband, including illegal drugs, in the usual course of business" and that the defendants "departed from [their] usual business practices" to participate in and facilitate the illegal Internet pharmacies' unlawful sale of controlled substances. *Id.* ¶¶ 39, 84. The other counts in the superseding indictment incorporated these allegations by reference. *Id.* ¶¶ 41, 43, 62 (incorporating Count 1 allegations into Counts 2 through 12); *id.* ¶¶ 88, 90, 107, 114 (incorporating Count 13 allegations into Counts 14 through 18).

# III. <u>DISCUSSION</u>

## A. **Legal Standards.**

In their motion to dismiss, the defendants principally contend that the superseding indictment is defective on its face because the conduct described in the indictment is not a crime under the CSA or FDCA. *See* Def. Mot. 3, 10-35. The defendants also argue in the alternative that the Court should dismiss the indictment because the CSA and FDCA did not give the defendants fair warning that their conduct was criminal. *See id.* at 3-4, 11, 35-39. According to the defendants, each of these claims raises "a pure question of law" based on the allegations in the indictment. *Id.* at 10; *see id.* at 11. Accordingly, in ruling on the defendants' motion, this Court is bound by the four corners of the indictment and must accept the truth of its allegations in analyzing whether a cognizable offense has been charged. *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). Put differently, "[a] motion to dismiss the indictment cannot be used as a device for a summary trial of the evidence," and "[t]he Court should not consider evidence not appearing on the face of the indictment." *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).

Both of the defendants' dismissal claims require the Court to interpret provisions of the CSA and FDCA. In addressing questions of statutory interpretation, the Court's inquiry begins with the text of the statute. *United States v. Kristic*, 558 F.3d 1010, 1013 (9th Cir. 2009). "[T]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *United States v. Sioux*, 362 F.3d 1241, 1245 (9th Cir. 2004) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)). When a statute's terms are ambiguous, the Court may look to other sources to determine congressional intent, such as the canons of construction and the statute's legislative history. *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008). The Court may also consider related statutes because "statutes dealing with similar subjects should be interpreted harmoniously." *Id.* At the end of this interpretation process, the Court may apply the rule of lenity, which requires that ambiguous criminal statutes be construed in favor of the accused, only "if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess at what Congress

1  intended." *United States v. Backlund*, 689 F.3d 986, 997-98 (9th Cir. 2012). The rule of lenity "ensures

2  fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly

3  covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997).

4  **B.      The CSA Counts (Counts 1-10 & 13-15) Properly State Offenses Under the CSA.**

5          1.      Section 822(c) does not exempt common carriers from the CSA's prohibitions.

6          The CSA imposes certain registration requirements on every person who manufactures,

7  distributes, dispenses, or proposes to manufacture, distribute, or dispense any controlled substance. 21

8  U.S.C. §§ 822(a), 823. Under Section 822(b), persons who register under the CSA "are authorized to

9  possess, manufacture, distribute, or dispense such substances . . . to the extent authorized by their

10 registration and in conformity with the other provisions of [the CSA]." 21 U.S.C. § 822(b). Section

11 822(c), titled "Exceptions," further provides:

12              The following persons shall not be required to register and may lawfully
                possess any controlled substances or list I chemical under this subchapter:
13
                (1) An agent or employee of any registered manufacturer, distributor, or
14              dispenser of any controlled substance or list I chemical if such agent or
                employee is acting in the usual course of his business or employment.
15
                (2) A common or contract carrier or warehouseman, or an employee
16              thereof, whose possession of the controlled substance or list I chemical is
                in the usual course of his business or employment."
17
                (3) An ultimate user who possesses such substance for a purpose specified
18              in section 802(25) of this title.

19 21 U.S.C. § 822(c). The effect of this provision is to exempt certain categories of persons from the

20 CSA's registration requirements.

21          Section 822(c) also states that, despite their unregistered status, the categories of persons

22 described in that provision "may lawfully possess any controlled substances . . . under this subchapter."

23 Read in isolation, this phrase seems susceptible to two different interpretations. Under the first

24 interpretation, this language clarifies that certain unregistered persons may possess controlled substances

25 to the extent that such possession is otherwise lawful under the CSA. Under the second interpretation,

26 which the defendants press in their motion to dismiss, this language authorizes these unregistered

27 persons to possess controlled substances in any and all circumstances, even if such possession would

28

otherwise be unlawful under the CSA. Although both of these interpretations may seem plausible in a vacuum, only the first is consistent with the text and structure of the CSA, Congress's goals in enacting the statute, and the cases interpreting Section 822, including the Supreme Court's decision in *United States v. Moore*, 423 U.S. 122 (1975). Read in the light of these considerations, Section 822(c) is unambiguous, and the Court should therefore reject the defendants' contention that this provision exempts them from prosecution under the CSA.

> a. *Section 822(c) is an exemption from the CSA's registration requirements, not a provision that authorizes common carriers and other unregistered persons to engage in conduct that would otherwise be criminal under the CSA.*

The defendants are not the first to argue that Section 822, titled "Persons required to register," creates broad exemptions from criminal liability, but courts have consistently rejected similar claims under both Section 822(b) and Section 822(c).[1] Perhaps most notably, in *Moore*, the Supreme Court rejected a registered physician's contention that Section 822(b) authorized his illegitimate distribution of controlled substances and therefore exempted him from prosecution under 21 U.S.C. § 841. *See* 423 U.S. at 124, 131-33. The Court disagreed with the physician's reading of the statute, holding that Section 822(b) did not amount to "a blanket authorization of all acts by certain persons." *Id.* at 131. In support of this conclusion, the Court explained that the physician's proposed construction of Section 822(b) "would constitute a sharp departure from prior laws" and that "there is no indication that Congress had any such intent." *Id.* at 132. The Court concluded instead that Congress had added Section 822(b) to the CSA "merely to ensure that persons engaged in lawful activities could not be prosecuted." *Id.* at 133. Indeed, the Court found that the legislative history of the CSA revealed that "Congress was concerned with the nature of the drug transaction, rather than with the status of the defendant" and intended the CSA's penalties "to turn on whether the 'transaction' falls within or without legitimate channels." *Id.* at 134, 135.

In short, *Moore* holds that Section 822(b) does not give CSA registrants carte blanche to

---

[1] In other cases, defendants have made the same arguments about Section 822(b) that the defendants now make about Section 822(c), claiming that it authorizes them engage in conduct that would otherwise be unlawful under the CSA. *See, e.g.*, *Moore*, 423 U.S. at 131-33. Because Section 822(b) and Section 822(c) therefore present overlapping questions of interpretation, the Court may and should consider cases construing Section 822(b) when determining the meaning of Section 822(c).

distribute controlled substances, but rather provides "a qualified authorization" to engage in certain legitimate, lawful activities. 423 U.S. at 131. This result is unavoidable, as the contrary interpretation could allow any CSA registrant, including a pharmacy or wholesaler, to knowingly distribute illegal drugs without fear of prosecution. *See id.* at 143 (noting that physician's interpretation of the CSA would exempt any registered manufacturer, wholesaler, and pharmacist from prosecution under 21 U.S.C. § 841). Accordingly, under *Moore*, CSA registrants "are still subject to criminal prosecution 'when their activities fall outside the usual course of professional practice.'" *United States v. Feingold*, 454 F.3d 1001, 1003 (9th Cir. 2006) (quoting *Moore*, 423 U.S. at 124) (upholding Section 841(a) conviction of registered doctor who issued prescriptions with disregard for proper prescribing practices); *see also United States v. Boettjer*, 569 F.2d 1078, 1079 (9th Cir. 1978) (upholding Section 841(a) convictions of registered physician based on prescriptions that "were not issued for legitimate medical purposes").

 *Moore*'s reasoning applies equally to the unregistered persons described in Section 822(c). As the Supreme Court explained in *Moore*, Congress did not intend the CSA to create a system where criminal penalties depend on "the status of the defendant" – *e.g.*, whether he was a registrant or a person exempted from registration requirements. *See Moore*, 423 U.S. at 134-35; *United States v. Rosenberg*, 515 F.2d 190, 195 (9th Cir. 1975) (holding that 21 U.S.C. § 841 applies "to all persons" and noting that "[w]henever Congress wanted to limit the scope of a provision's coverage it specifically so indicated"). Rather, Congress intended to protect lawful activities from prosecution but punish drug transactions that occurred outside legitimate channels. *See Moore*, 423 U.S. at 134-35. Accordingly, Section 822(c), like Section 822(b), cannot constitute "a blanket authorization of all acts by certain persons" because that result "would constitute a sharp departure from prior laws," and "there is no indication that Congress had any such intent." *Id.* at 131, 132.

 The language of Section 822(c) confirms this conclusion. Although the defendants' brief focuses on Section 822(c)'s application to common carriers, Section 822(c) sweeps more broadly and provides that two other categories of unregistered persons "may lawfully possess" controlled substances: (1) agents and employees of CSA registrants, provided that the agents and employees are acting in the

usual course of their business or employment, 21 U.S.C. § 822(c)(1); and (2) any "ultimate user" who possesses a controlled substance "for his own use or for the use of a member of his household or for an animal owned by him or by a member of his household."[2] 21 U.S.C. §§ 822(c)(3), 802(27) (defining "ultimate user").

The first category, which encompasses persons acting on behalf of CSA registrants, is particularly helpful in construing Section 822(c) because it reveals that Congress intended any possession exemption in Section 822(c) to be no broader than the parallel possession exemption in Section 822(b). Specifically, in enacting Section 822(c)(1), Congress understandably concluded that the agents and employees of CSA registrants should not be required to separately register under the CSA for work they undertook on behalf of CSA registrants, but Congress undoubtedly did not intend to authorize these agents and employees to engage in conduct that would have been off-limits to the registrants for whom they worked. Accordingly, because Section 822(b) exempts only the lawful activities of CSA registrants from prosecution, *see Moore*, 423 U.S. at 133, any exemption in Section 822(c) must similarly apply only to lawful acts of possession. Otherwise, CSA registrants could circumvent the CSA's prohibitions by delegating illegal activity to their unregistered agents and employees.

Consistent with this analysis, the Ninth Circuit has rejected the contention that a defendant who is exempted from registration requirements under Section 822(c)(1) is thereby "authorized to possess controlled substances and thus should be free from prosecution under § 841." *United States v. Goldfine*, 538 F.2d 815, 819-20 (9th Cir. 1976) (discussing *Moore*). Likewise, in *United States v. Hill*, 589 F.2d 1344 (8th Cir. 1979), the Eighth Circuit specifically addressed and rejected a defendant's claim that Section 822(c) exempted him from criminal liability under 21 U.S.C. § 841. *Id.* at 1350. In that case, the defendant was a sales representative for a pharmaceutical company who took advantage of his

---

[2] Section 822(c)(3) states that the persons exempted from the CSA's registration requirements include "[a]n ultimate user who possesses [a controlled substance or list I chemical] for a purpose specified in section 802(25) of this title." *Id.* Section 802(25) originally contained a definition for "ultimate user" but was redesignated 802(26) by Pub. L. 98-473, § 507(a), Oct. 12, 1984, 98 Stat. 2071, and was further redesignated 802(27) by Pub. L. 99-570, Title I, § 1003(b)(2), Oct. 27, 1986, 100 Stat. 3207-6, without amending 21 U.S.C. § 822(c)(3) to conform to the redesignations. 21 U.S.C. § 822, Historical and Statutory Notes: References in Text (Thompson Reuters 2015 ed.).

position to distribute large quantities of his employer's diet pills to persons other than the customers he claimed had ordered them. *Id.* at 1348-50. The defendant argued that he was covered by Section 822(c)(1) because he was an employee of a registered drug manufacturer who was distributing the diet pills in the usual course of his employment and further claimed that Section 841(a)(1) was inapplicable to him because of his Section 822(c) exemption. *Id.* at 1350. The Eight Circuit disagreed. *Id.* The court of appeals first concluded that the evidence allowed the jury to conclude that the defendant was not, in fact, acting within the usual course of business and was instead diverting his employer's diet pills from legitimate business channels of distribution. *Id.* But the court then held that neither the employer's authorization nor Section 822(c) "legitimatizes illegal activities." *Id.* The court explained that Section 822(c) is only "an exemption to registration" and "does not attempt to make criminal conduct lawful under any circumstances." *Id.* at 1353. The Court should reach the same conclusion here.

> b. *The defendants' interpretation of Section 822(c) undermines the goals of the CSA.*

In their motion, the defendants acknowledge that "[t]he main objectives of the CSA were to conquer drug abuse and to control the legitimate and illegitimate traffic in controlled substances." Def. Mot. 13 (quoting *Gonzales v. Raich*, 545 U.S. 1, 12-13 (2005)). According to the defendants, however, Congress set aside these primary objectives in drafting Section 822(c) in the interest of furthering of a long-term, apparently overarching goal of protecting common carriers from criminal liability "[i]n order to avoid obstructing common carriers' vital function of facilitating commerce." Def. Mot. 2; *see id.* at 13-16. The defendants provide two bases for this sweeping claim, but neither is persuasive.

First, the defendants claim that Congress enacted four drug-control statutes between 1914 and 1970 that contained common-carrier exemptions, and they contend that these statutes reflect "Congress's consistent judgment" that common carriers should not be part of regulatory schemes for pharmaceuticals. Def. Mot. 14-15. Of course, two of these four statutes are the CSA and FDCA, and as discussed herein, neither exempts common carriers from criminal liability. The other two statutes are the Harrison Act, which imposed registration requirements on manufacturers and distributors of opiates and regulated the issuance of prescriptions, and the Drug Abuse Control Amendments of 1965, which

similarly required manufacturers and certain distributors of depressant and stimulant drugs to register under the statute. Pub. L. No. 63-233, 38 Stat. 785 (1914) ("Harrison Act"); Pub. L. No. 89-74, 79 Stat. 226 (1965) ("Drug Abuse Control Amendments"); *see Gonzales*, 545 U.S. at 10 (discussing Harrison Act). Both statutes included exemptions for common carriers, but like Section 822(c), they amounted to exemptions from the statutes' registration requirements. *See* Harrison Act, § 8, 38 Stat. 785, 789; Drug Abuse Control Amendments, § 511(b), 79 Stat. 226, 229. Specifically, the statutes granted registered persons and certain unregistered persons, including common carriers, the same authorization to engage in certain activities. *See* Harrison Act, § 8, 38 Stat. 785, 789 (possession of opiates); Drug Abuse Control Amendments, § 511(b), 79 Stat. 226, 229 (sale, delivery, or disposal of depressant or stimulant drugs). But neither statute created a unique exclusion for common carriers that authorized them to engage in conduct that would have been off-limits to registered distributors. *See id.* Furthermore, these statutes represented only a small fraction of the drug-control statutes that Congress passed during this period. *See* H.R. Rep. No. 91-1444, available at 1970 U.S.C.C.A.N. 4566, 4571 ("Since 1914 the Congress has enacted more than 50 pieces of legislation relating to control and diversion, from legitimate channels, of those drugs referred to as narcotics and dangerous drugs.") (cited by Def. Mot. 15). Accordingly, these statutes are not persuasive evidence that Congress has a longstanding and overriding concern for protecting common carriers that has consistently trumped its desire to regulate and control the distribution of narcotics and dangerous drugs.

Second, the defendants identify a handful of common-carrier exemptions scattered throughout the United States Code and argue that these provisions reveal a "broader scheme" to ensure that common carriers are "free to carry out their vital societal function without fear that they will be criminally liable for the contents of packages tendered for carriage." Def. Mot. 15; *see id.* at 15-16. But of course there are also statutory provisions that do not exempt common carriers from prohibitions that might apply to them as a result of their transportation and delivery of packages. *See, e.g.*, 18 U.S.C. § 1264 (statute prohibiting officer, agent, or employee of common carrier from knowingly misdelivering alcoholic beverages); 18 U.S.C. § 1341 (mail-fraud statute); 18 U.S.C. § 1462 (statute prohibiting importation or transportation of obscene matters); 18 U.S.C. § 2252A(a) (child-pornography distribution

statute).  For example, 49 U.S.C. § 80302 provides that "[a] person may not— (1) transport contraband in an aircraft, vehicle, or vessel; (2) conceal or possess contraband on an aircraft, vehicle, or vessel; or (3) use an aircraft, vehicle, or vessel to facilitate the transportation, concealment, receipt, possession, purchase, sale, exchange, or giving away of contraband."  49 U.S.C. § 80302(b).  For purposes of this section, "contraband" includes a narcotic drug that "is acquired, possessed, sold, transferred, or offered for sale" in violation of the laws of the United States.  49 U.S.C. § 80302(a)(1)(B).  This statute includes no exemption for common carriers and therefore undercuts the defendants' claim that Congress has demonstrated a "consistent intent to exclude common carriers from participation in the regulatory schemes governing the distribution of goods, particularly pharmaceuticals."  Def. Mot. 16.

In arguing that Congress has adopted a "broad scheme" to protect common carriers, the defendants suggest that Congress wanted to protect common carriers from prosecution for unwittingly furthering their customers' criminal conduct.  *See* Def. Mot. 2, 15.  The defendants further argue that Congress sought to ensure that common carriers are under no obligation to monitor packages for controlled substances.  *See* Def. Mot. 2, 13, 15-16.  Neither of these objectives is furthered by a rule that allows common carriers to knowingly distribute controlled substances, and yet the defendants argue that the primary purpose of Section 822(c) is to protect carriers from prosecution for such knowing conduct. *See* Def. Mot. 27-28.  The defendants identify no reason why Congress might have been inclined to create an exemption that would give common carriers a free pass to knowingly distribute cocaine, heroin, and methamphetamine as long as they do so in the usual course of business.  Nor do they explain why Congress would have been inclined to extend the same broad exemption to the agents and employees of CSA registrants and to the ultimate users of controlled substances.

In short, the defendants' interpretation of Section 822(c) is inconsistent with the text and structure of the CSA, with Supreme Court precedent, and with the core purpose the CSA.  Accordingly, the Court should hold that when Section 822(c) states that persons exempted from the CSA's registration requirements "may lawfully possess any controlled substance . . . under this subchapter," this language unambiguously provides that common carriers may possess controlled substances in the usual course of business only to the extent that such possession is otherwise lawful under the CSA.

2. <u>In any event, the superseding indictment alleges that the defendants acted outside the usual course of business when they committed the charged offenses, which places them outside the scope of any Section 822(c) exemption.</u>

For the reasons set forth in the previous subsection, Section 822(c) does not provide common carriers the authority to engage in conduct that would otherwise be illegal under the CSA. But even if Section 822(c)(2) did grant common carriers such authority, the defendants would still not be entitled to dismissal based on this exemption because the superseding indictment alleges that their conduct falls outside of its scope.

> a. *The superseding indictment specifically alleges that the defendants acted outside "the usual course of business" and departed from their "usual business practices" when they committed the charged conduct.*

As an initial matter, the superseding indictment did not need to allege the inapplicability of Section 822(c)(2). The CSA expressly provides that:

> It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any complaint, information, indictment, or other pleading or in any trial, hearing, or other proceeding under this subchapter, and the burden of going forward with the evidence with respect to any such exemption or exception shall be upon the person claiming its benefit.

21 U.S.C. § 885(a)(1); *cf. United States v. Miranda*, 494 F.2d 783, 786 (5th Cir. 1974) (rejecting defendant's claim that CSA indictment must aver that he was not one of the persons described in Section 822(c)). Under this provision, a defendant bears the initial burden of presenting a claim that he falls within a CSA exemption, and then the burden shifts to the government to prove beyond a reasonable doubt that the exemption does not apply. *Rosenberg*, 515 F.2d at 199. For example, if the defendants seek to invoke Section 822(c)(2) as an exemption from liability at trial, each defendant will bear the burden of making an initial showing that, among other things, it is "[a] common or contract carrier or warehouseman, or an employee thereof." 21 U.S.C. § 822(c)(2). The defendants' motion suggests that FedEx Express will be able to carry this initial burden, but it is less clear that defendants FedEx Corporation and FedEx Corporate Services, Inc., will be able to do so.[3] *See* Def. Mot. 4-6, 22.

---

[3] The defendants' motion alleges that FedEx Express maintains an Air Carrier Certificate from the Federal Aviation Administration that authorizes it to "operate as an air carrier and conduct common carriage operations" and that FedEx Express transports over four million packages a day. Def. Mot. 5; *see also id.* at 22. The defendants do not make comparable allegations about FedEx Corporation and

In any event, the Court need not decide whether an indictment must address the inapplicability of Section 822(c)(2) because the allegations in the defendants' superseding indictment do, in fact, negative this exemption. By its terms, Section 822(c)(2) applies only to a common carrier who possesses the relevant controlled substance "in the usual course of his business or employment." 21 U.S.C. § 822(c)(2). The superseding indictment alleges that the defendants' conduct in this case did not satisfy this requirement. In particular, the superseding indictment alleges that the defendants "did not ship contraband, including illegal drugs, in the usual course of business" and that they departed from their "usual business practices" in order to participate in and facilitate the unlawful sales of controlled substances described in the indictment. Super. Ind. ¶¶ 39, 84. For purposes of the defendants' motion, the Court must accept the truth of these allegations when evaluating the potential applicability of Section 822(c)(2) and therefore must assume that the defendants' conduct in this case occurred outside the usual course of their business. *See Lyle*, 742 F.3d at 436. Because this circumstance places the defendants outside the scope of any Section 822(c)(2) exemption, the defendants cannot show that Section 822(c)(2) applies on the face of the indictment and therefore are not entitled to dismissal of any counts based on this provision.

> b.    *The defendants cannot show that, as a matter of law, they were acting in the usual course of their business.*

In an attempt to escape the plain language of the indictment, the defendants ask the Court to hold that, as a matter of law, a common carrier always acts "in the usual course of [its] business" when it transports and delivers goods for the general public. Def. Mot. 17. But the defendants identify no court that has so held. *See id.* at 17-20.

Indeed, the courts that have considered the meaning of "the usual course of his business" in the context of Section 822(c) have concluded that this language means that the unregistered person must be participating in "the legitimate distribution chain" for the relevant controlled substance. *See Hill*, 589 F.2d at 1350 (explaining that the government proved that the defendant was not acting in the usual

---

FedEx Corporate Services, Inc. *See id.* at 4-6, 22. Instead, these two defendants suggest that they may attempt to carry their burden by pointing to allegations in the superseding indictment. *See* Def. Mot. 4-5, 11 n.3. The United States reserves the right to challenge this position.

course of business in part by demonstrating that the relevant drug shipments "were diverted from legitimate business channels of distribution:"); *United States v. Smith*, 141 Fed. Appx. 83, 86 (4th Cir. 2005) ("To qualify under the employee or agent exception to registration under § 822, the person must be employed in the 'legitimate distribution chain' of the controlled substance."); *Miranda*, 494 F.2d at 786 ("Employees of registered distributors, common carriers, and ultimate users are exempted from registration if their activities are within the legitimate distribution chain."). This interpretation comports with Congress's stated intent that the CSA "make[] transactions outside the legitimate distribution chain illegal." *Moore*, 423 U.S. at 135 (quoting H.R. Rep. No. 91-1444 at 3, available at 1970 U.S.C.C.A.N. 4569); *see also id.* at 141 (explaining that a registration under the CSA "authorizes transactions within 'the legitimate distribution chain' and makes all others illegal"); *Rosenberg*, 515 F.2d at 193 (explaining that Congress, in enacting the CSA, "was concerned with the diversion of drugs out of legitimate channels of distribution"); *United States v. Vamos*, 797 F.2d 1146, 1152 (2d Cir. 1986) ("Section 841(a) . . . is clearly directed at halting distribution outside the scope of a legitimate chain of possession.").

By contrast, under the defendants' proposed interpretation of "the usual course of his business," Section 822(c)(2) would apply to common carriers that intentionally facilitate drug transactions outside the legitimate distribution chain, as long as those carriers do so by providing shipping services to the public. In other words, the defendants could elect to distribute cocaine for a Mexican drug cartel and still reap the benefits of Section 822(c)(2) because they would be providing shipping services to the general public, including their co-conspirators. Conversely, a Mexican drug cartel could solve its legal problems and avoid prosecution in the United States by offering to transport goods for the general public along with its shipments of cocaine. And because the "usual course of his business or employment" language also appears in Section 822(c)(1), a registered pharmaceutical distributor could instruct its sales representative to start distributing heroin, and the employee would be immune from prosecution for this conduct because it was his job to distribute controlled substances. *See* 21 U.S.C. § 822(c)(1). All of these outcomes would plainly undermine the CSA's goal of "mak[ing] transactions outside the legitimate distribution chain illegal." *Moore*, 423 U.S. at 135 (quoting H.R. Rep. No. 91-1444 at 3, available at 1970 U.S.C.C.A.N. 4569).

1    The defendants argue that two CSA predecessor statutes – the 1914 Harrison Act and the Drug

2    Abuse Control Amendments of 1965 – support their interpretation of "the usual course of his business."

3    *See* Def. Mot. 19.  As discussed in Part B.1.b, *supra*, these statutes exempted common carriers from

4    statutory registration requirements but did not authorize common carriers to engage in conduct that

5    would have been off-limits to registered distributors.  The Harrison Act specified that its registration

6    exemption applied to "common carriers engaged in transporting . . . drugs," and the Drug Abuse Control

7    Amendments stated that its registration exemption applied to a common carrier whose possession of a

8    drug was "in the usual course of his business or employment as such."  Harrison Act, § 8, 38 Stat. 785,

9    789; Drug Abuse Control Amendments, § 511(b), 79 Stat. 226, 229.  Neither of these provisions

10   suggested that a carrier's "usual course of business" encompassed all of its shipping activities, including

11   its knowing possession and distribution of illegal drugs.  Furthermore, as the Supreme Court explained

12   in *Moore*, the CSA "was intended to 'strengthen' rather than to weaken, 'existing law enforcement

13   authority in the field of drug abuse.'"  423 U.S. at 132 (quoting 84 Stat. 1236 (1970) (preamble)); *see

14   also Gonzales*, 545 U.S. at 11-12 (recognizing that "federal drug policy underwent a significant

15   transformation" in 1970, in part because of the enactment of the CSA).  In other words, the scope of

16   criminal liability under the CSA is broader than its predecessor statutes.  Accordingly, even if the

17   Harrison Act and the Drug Control Abuse Amendments did define a common carrier's "usual course of

18   business" to encompass its knowing shipment of illegal drugs, the defendants could not rely on these

19   predecessor statutes to expand the plain meaning of "the usual course of his business" in the CSA.

20           The civil cases that the defendants invoke are similarly unhelpful to their position.  *See* Def. Mot.

21   19-20.  Only one of these cases discusses a common carrier, and it does not address whether the

22   common carrier – an airline – acted in the usual course of business when it moved the plaintiffs' luggage

23   from their point of origin to their destination.  *See Hanni v. American Airlines*, 2010 WL 289297, *14-

24   *15 (N.D. Cal. 2010).  Rather, the court simply noted that "a common carrier incurs no liability for

25   conversion in receiving and forwarding goods tendered in the usual course of business" before holding

26   that the common carrier was entitled to summary judgment on the plaintiffs' conversion claim because it

27   had not exercised dominion, asserted ownership, or prevented the plaintiffs from asserting ownership of

28

their luggage. *Id.* The defendants' other two civil cases are even less relevant because neither involves a common carrier, much less a question about whether and when a common carrier acts in the usual course of business. *See First National Bank of Manitowoc v. Cincinnati Ins. Co.*, 485 F.3d 971, 978-79 (7th Cir. 2007) (addressing the meaning of "the usual course of business" in a bank's insurance agreement); *Miller v. Carrington Mortgage Services*, 2013 WL 5291939, at *2 (N.D. Cal. 2013) (applying bankruptcy law that authorizes a trustee to enter into transactions "in the ordinary course of business").

For all of these reasons, the defendants have offered no meaningful support for their claim that, as a matter of law, a common carrier possesses a controlled substance "in the usual course of his business or employment" whenever the carrier transports the substance for a customer, even if the carrier does so outside the legitimate distribution chain for the drug. The Court therefore should reject the defendants' claim that Section 822(c)(2) applies to them on the face of the indictment and should instead conclude that the indictment sufficiently alleges the inapplicability of this exception. Accordingly, even if Section 822(c)(2) created a complete exemption from criminal liability under the CSA, as the defendants now claim, the defendants would not be entitled to dismissal of any counts based on this provision.

> ### c. The defendants' departure from their own individual business practices is relevant to whether they were acting in the usual course of business.

For the reasons set forth in the previous subsections, the superseding indictment sufficiently alleges that Section 822(c)(2) will not apply in this case because the defendants were not acting "in the usual course of [their] business." 21 U.S.C. § 822(c)(2). Because these arguments do not rely on the superseding indictment's allegations that the defendants established special policies that applied only to Internet pharmacies, Super. Ind. ¶¶ 8-21, the Court need not decide whether those allegations would also be sufficient to negative Section 822(c)(2) by showing that the defendants were not acting in the usual course of their business. At trial, however, evidence that the defendants departed from their own internal policies would shed light on whether they were acting in the usual course of business for purposes of Section 822(c)(2). For example, the defendants' internal policies and practices were

presumably consistent with the usual practices of their industry, and so the defendants' decision to stray from their internal standards is probative of whether they were also straying from industry standards.[4]

3. The distribution counts (Counts 2-10, 14 & 15) properly state offenses under the CSA.

Counts 2 through 10, 14, and 15 charge the defendants with violating 21 U.S.C. § 841(a)(1), which makes it unlawful for "any person knowingly or intentionally . . . to . . . distribute . . . or possess with intent to . . . distribute . . . a controlled substance." *Id.*; Super. Ind. ¶¶ 41-42, 88-89. For all of the reasons set forth in the previous subsections, Section 822(c) does not exempt the defendants from prosecution for such conduct. Furthermore, Section 822(c) does not apply to these distribution counts because it provides only that certain unregistered persons may "lawfully possess" controlled substances. In other words, as the Supreme Court expressly stated in *Moore*, "nonregistrants are barred from making any distributions whatsoever." 423 U.S at 133 n.10. Accordingly, even if Section 822(c) somehow immunized common carriers from criminal liability under the CSA for possessing controlled substances, it does not shield the defendants from prosecution for distributing them.

The text of Section 822 confirms that Congress intentionally chose to limit the scope of Section 822(c) to possession. Specifically, Section 822(b) authorizes CSA registrants to "possess, manufacture, distribute, or dispense" controlled substances to the extent authorized by their registration and the other provisions of the CSA, but Section 822(c) provides only that non-registrants may "lawfully possess" controlled substances, without mentioning manufacturing, distribution, or dispensing. *Compare* 21 U.S.C. § 822(b) *with* 21 U.S.C. § 822(c); *cf. Stubblefield v. Gonzales*, 150 Fed. Appx. 630, 632 (9th Cir. 2005) (concluding that Section 822(c)(3) authorizes ultimate users only to lawfully possess controlled substances for certain specified purposes and does not permit them to manufacture controlled substances). As the Supreme Court has explained, "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that

---

[4] The United States does not contend that "FedEx may define for itself the scope of the 'usual course of business' of a common carrier." Def. Mot. 24. Rather, as with the CSA's exception for physicians, a common carrier's "usual course of business" should be determined by looking at the standards of the industry. *See Feingold*, 454 F.3d at 1004 ("[A] physician remains criminally liable when he ceases to distribute or dispense controlled substances as a medical professional, and acts instead as a 'pusher.'").

Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29-30 (1997). Section 822(b)'s reference to distribution therefore demonstrates that Congress intentionally chose to exclude distribution-related activities from the scope of Section 822(c). And because Section 822(b) refers in the alternative to the possession, distribution, and dispensing of controlled substances, Section 822(c)'s reference to possession plainly does not encompass all of these activities, as the defendants now claim. *See* Def. Mot. 29-31.

Furthermore, interpreting the word "possess" in Section 822(c) to exclude distribution would not render this provision "meaningless." Def. Mot. 29. As discussed in Part B.1, *supra*, Section 822(c) merely creates an exception to the CSA's registration requirements and does not authorize common carriers to engage in any conduct that would otherwise be unlawful under the CSA. But even if Section 822(c) created an exemption from criminal liability, as the defendants claim, Congress could reasonably decide to limit the scope of this exemption to possession alone, rather than extending it to distribution. Indeed, if this theoretical exemption applied only to possession, rather than possession and distribution, then Section 822(c) would allow a common carrier to avoid prosecution if, in the course of transporting a package, it discovered that the package contained an illegal controlled substance.[5] At that point, the common carrier would knowingly be in possession of the substance, but not by choice. In those circumstances, Congress might plausibly conclude that the carrier should not be prosecuted for its knowing but inadvertent possession. Congress could also reasonably conclude, however, that once the common carrier discovered the controlled substance, it should alert law enforcement, rather than delivering the package to its final destination. This reasoning would explain why, even under the defendants' flawed interpretation of the statute, Congress might limit the scope of any Section 822(c) exemption to possession, rather than expanding it to cover distribution.

For all of these reasons, Section 822(c)'s reference to "possess" means "possess," not "possess and distribute," and because this term is unambiguous, the rule of lenity does not apply. *See Backlund*, 689 F.3d at 997-98. Accordingly, even if Section 822(c) exempted the defendants from any criminal

---

[5] This rationale would apply equally to employees whose work requires them to distribute and dispense controlled substances. *See* Def. Mot. 30-31 (discussing such persons).

liability for possessing controlled substances in the usual course of their business, the defendants would not be entitled to dismissal of Counts 2 through 10, 14, and 15 because these counts charge the defendants with distribution, rather than mere possession.

4.    The CSA conspiracy charges (Counts 1 & 13) properly state offenses under the CSA.

Counts 1 and 13 charge the defendants with violating 21 U.S.C. § 846, which makes it unlawful to conspire to distribute and to possess with intent to distribute controlled substances in violation of, *inter alia*, 21 U.S.C. § 841(a)(1). Super. Ind. ¶¶ 22-40, 70-87. For all of the reasons set forth in the previous subsections, Section 822(c) does not exempt the defendants from prosecution for such conduct. But even if Section 822(c) somehow authorized the defendants to knowingly engage in the unlawful distribution of controlled substances, the defendants would still not be entitled to dismissal of Counts 1 and 13 for two reasons. First, nothing in Section 822(c) suggests that a common carrier may conspire with others to violate the CSA. Second, as the defendants acknowledge, Counts 1 and 13 charge the defendants with agreeing to participate in and facilitate their co-conspirator Internet pharmacies' unlawful distribution of controlled substances. Super. Ind. ¶¶ 38-39, 83-84; *see* Def. Mot. 32. Section 822(c) plainly does not exclude Internet pharmacies from the reach of the CSA or authorize such pharmacies to distribute controlled substances outside the usual course of professional practice and without a legitimate medical purpose. *See United States v. Bansal*, 663 F.3d 634, 665 (3d Cir. 2011) (upholding § 846 conviction based on conspiracy to distribute drugs without a valid prescription via an Internet pharmacy). Furthermore, the defendants may be liable for conspiring to facilitate the Internet pharmacies' unlawful distribution even if the defendants would be exempt from prosecution for their own distribution of the same controlled substances. *See Salinas v. United States*, 522 U.S. 52, 64 (1997) (explaining that a person "may conspire for the commission of a crime by a third person" and "may be liable for conspiracy even though he was incapable of committing the substantive offense").

The Ninth Circuit applied this rule in *United States v. Fiander*, 547 F.3d 1036 (9th Cir. 2008), a RICO conspiracy case in which the indictment charged the defendant with conspiring to facilitate the commission of the crime of contraband cigarette trafficking. *Id.* at 1041-42. Although the defendant could not be charged with the substantive offense of contraband cigarette trafficking because of his

tribal status, the Ninth Circuit concluded that he could nonetheless be prosecuted for a RICO conspiracy in which the racketeering activity was contraband cigarette trafficking. *Id.* at 1042. In so doing, the court of appeals explained that "a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself. *Id.* The same reasoning applies here.

Although the defendants claim that any Section 822(c) exemption must shield them from criminal liability for conspiring to violate the CSA, the two cases on which they rely do not support this contention. *See* Def. Mot. 32-33. The first case, *Rehberg v. Paulk*, 132 S. Ct. 1497 (2012), holds that grand jury witnesses have absolute immunity from any § 1983 claim based on their testimony. *Id.* at 1506. The Supreme Court further held that this immunity must extend to claims that a grand jury witness conspired to present false testimony because otherwise "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." *Id.* The Ninth Circuit reached a similar conclusion in *Franklin v. Terr*, 201 F.3d 1098 (9th Cir. 2000), about the absolute immunity granted to trial witnesses for their testimony. *See id.* at 1101-02. Both of these cases base their holdings on the specific concerns that motivate absolute witness immunity, which include "the policy of protecting the judicial process" and the need "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Id.* at 1101; *see also Rehberg*, 132 S. Ct. at 1506. Needless to say, these concerns are not present when a common carrier conspires to illegally distribute controlled substances, and therefore the holdings of *Rehberg* and *Franklin* cannot stretch to encompass this conduct.

For all of these reasons, the Court should deny the defendants' motion to dismiss the CSA conspiracy counts.

## C. The Money-Laundering Conspiracy Charges (Counts 12, 17 & 18) Properly State Offenses Under 18 U.S.C. § 1956.

Counts 12, 17, and 18 charged the defendants with violating 18 U.S.C. § 1956(a)(1)(A)(i) and (h), which make it unlawful to conspire to conduct financial transactions that involve the proceeds of specified illegal activity, knowing that the property involved in the transactions represents the proceeds

of some form of illegal activity, with the intent to promote the carrying on of the specified unlawful activity.[6] Super. Ind. ¶¶ 63, 108, 115. In support of these charges, the superseding indictment alleged that the financial transactions at the heart of these three conspiracies involved the proceeds of "the possession with intent to distribute and distribution of controlled substances outside the usual course of professional practice and not for a legitimate medical purpose, knowing and intending that the possession with intent to distribute and distribution was outside the usual course of professional practice and not for a legitimate medical purpose," in violation of 21 U.S.C. § 841(a). *Id.* ¶¶ 63, 108, 115.

For all of the reasons set forth in the previous sections, Section 822(c) does not exempt the defendants from criminal liability under the CSA. But even if Section 822(c) somehow authorized the defendants to engage in conduct that would otherwise be illegal under the CSA, the defendants would still not be entitled to dismissal of the money-laundering conspiracy counts for two reasons.

First, a money-laundering charge does not require the government to prove that the defendants themselves participated in the specified unlawful activity that generated the laundered proceeds. *See United States v. Golb*, 69 F.3d 1417, 1429 (9th Cir. 1995). Accordingly, even if Section 822(c)(2) somehow exempted the defendants from criminal liability under the CSA, it would not authorize the defendants to launder the proceeds of activity that was unlawful under the CSA.

Second, in this case, the superseding indictment alleged that the proceeds the defendants conspired to launder consisted of payments that its co-conspirator Internet pharmacies had made to the defendants and that represented the proceeds of those pharmacies' illegal sale of controlled substances. Super. Ind. ¶¶ 67-68, 111-12, 118-19. Accordingly, even if Section 822(c)(2) somehow authorized the defendants to launder the proceeds of their own drug activities, it would not entitle them to conspire to launder the proceeds of the pharmacies' illegal drug sales because those co-conspirators are still subject to the restrictions of the CSA. *See Salinas*, 522 U.S. at 64 (explaining that a person "may conspire for the commission of a crime by a third person" and "may be liable for conspiracy even though he was incapable of committing the substantive offense").

---

[6] Because these charges require that the defendants intended to promote the underlying illegal activity, they do not subject the defendants to liability "simply for accepting payment for the performance of its business." Def. Mot. 33.

For all of these reasons, the Court should deny the defendants' motion to dismiss the money-laundering conspiracy counts.

**D.     The FDCA Conspiracy Charges (Counts 11 & 16) Properly State Offenses Under the FDCA.**

Counts 11 and 16 charged the defendants with violating 18 U.S.C. § 371 by conspiring with certain Internet pharmacies to violate the FDCA by distributing and dispensing prescription drugs to consumers without valid prescriptions from licensed practitioners, thereby causing the drugs to be misbranded while held for sale after their shipment. Super. Ind. ¶¶ 44, 90. In support of these charges, the superseding indictment alleged that the co-conspirator Internet pharmacies falsely and fraudulently represented to customers and government agencies that they were lawfully distributing prescription drugs pursuant to valid prescriptions. *Id.* ¶¶ 44-47, 91-94. The defendants argue that the Court should dismiss these counts because, in their view, the FDCA shields common carriers from criminal liability for conduct that would otherwise violate the statute. The defendants base this claim on 21 U.S.C. § 373(a), which provides that "carriers shall not be subject to the other provisions of this chapter by reason of their receipt, carriage, holding, or delivery of . . . drugs . . . in the usual course of business as carriers." For several reasons, Section 373(a) does not exempt the defendants from criminal liability for the conduct charged in the superseding indictment and therefore does not warrant dismissal of Counts 11 and 16.

First, the defendants identify no court that has concluded that Section 373(a) exempts all "carriers," including common carriers, from any criminal liability under the FDCA, and the government is aware of no opinion that so holds. Indeed, such an interpretation would be inconsistent with the FDCA statutory regime, which "is designed primarily to protect the health and safety of the public at large," *POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct. 2228, 2234 (2014), and "to bolster consumer protection against harmful products." *Wyeth v. Levine*, 555 U.S. 555, 574 (2009). This objective would be thwarted if common carriers could distribute misbranded drugs with impunity as long as they did so in the usual course of business. Accordingly, for many of the same reasons discussed in Part B.1, *supra*,

1    the Court should conclude that Section 373(a) does not authorize carriers to knowingly distribute and

2    dispense misbranded drugs.

3         Second, even if Section 373(a) does create an exemption from all criminal liability under FDCA,

4    the defendants are not entitled to dismissal of Counts 11 and 16 because the superseding indictment

5    sufficiently alleges that this exemption does not apply to the defendants here. Specifically, Section

6    373(a) applies only to carriers who receive, carry, hold, or deliver misbranded drugs "in the usual course

7    of business as carriers." 21 U.S.C. § 373(a). The United States agrees with the defendants that this term

8    has the same meaning as "the usual course of his business" in Section 822(c). *See* Def. Mot. 18.

9    Accordingly, for the reasons set forth in Part B.2, *supra*, the superseding indictment sufficiently alleges

10    that Counts 11 and 16 are based on conduct that the defendants engaged in outside the usual course of

11    business, and the defendants cannot show that these allegations are wrong as a matter of law. *See, e.g.*,

12    Super. Ind. ¶¶ 8-11, 39, 43, 84, 90.

13         The FDA policy statement on which the defendants rely does not suggest otherwise. This policy

14    statement, which discusses Section 373(a), suggests that carriers do not act "in their usual course of

15    business as carriers" when they perform "operations or functions which are outside the normal duties of

16    a carrier." Def. Mot. 17-18 (quoting FDA Compliance Policy Guide § 100.500 (1989)). But the policy

17    statement does not explain what constitutes a carrier's "normal duties," much less provide that those

18    duties include knowingly transporting illegal drugs for customers. In other words, to the extent that this

19    policy statement can be read to define "the usual course of business," it simply replaces one question of

20    fact (whether a carrier acted in the usual course of business) with another (whether the carrier was

21    performing "the normal duties of a carrier"). *Cf. In re Straightline Investments, Inc.*, 525 F.3d 870, 879

22    (9th Cir. 2008) ("A determination of whether a transaction falls outside the ordinary course of business

23    is a question of fact that depends on the nature of industry practice."). The Court may not resolve such

24    factual questions when ruling on a motion to dismiss. *See Boren*, 278 F.3d at 914 ("A motion to dismiss

25    the indictment cannot be used as a device for a summary trial of the evidence.").

26         Finally, even if Section 373(a) authorized the defendants to distribute misbranded drugs with the

27    intent to defraud, the defendants would still not be entitled to dismissal of Counts 11 and 16 because

28

nothing in Section 373(a) suggests that a common carrier may conspire with others to violate the FDCA. In addition, these counts charge conspiracies whose goal was to facilitate the co-conspirator Internet pharmacies' distribution of misbranded drugs. Super Ind. ¶¶ 44-47, 91-94. Section 373(a) does not exclude Internet pharmacies from the reach of the FDCA or authorize such pharmacies to distribute misbranded drugs. 21 U.S.C. § 373(a); *see also United States v. Smith*, 573 F.3d 639, 650-52 (8th Cir. 2009) (holding that the FDCA applies to Internet pharmacy distributing drugs that were misbranded because they were not issued pursuant to a "valid" prescription). Accordingly, for the reasons set forth in Part B.4, *supra*, the defendants may be liable for conspiring to facilitate the Internet pharmacies' unlawful conduct even if the defendants would be exempt from prosecution if they engaged in this conduct themselves.

For all of these reasons, Section 373(a) does not exempt the defendants from criminal liability for conspiring to distribute misbranded drugs with the intent to defraud, and Counts 11 and 16 properly state offenses under 18 U.S.C. § 371. The Court should therefore deny the defendants' motion to dismiss these counts.

## E. Because the Defendants Had Fair Warning That the Charged Conduct Violates the CSA and FDCA, the Fifth Amendment Does Not Require Dismissal of Any Charges.

In the alternative, the defendants argue that the superseding indictment should be dismissed because they did not have fair warning that their conduct was criminal under the CSA and FDCA. *See* Def. Mot. 35-39. A statute presents a fair-warning problem only "if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute such that the Court must simply guess at what Congress intended." *Backlund*, 689 F.3d at 997-98. In that circumstance, the rule of lenity applies and "ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Lanier*, 520 U.S. at 266; *see Backlund*, 689 F.3d at 997-98. As discussed in the previous sections, however, the CSA and FDCA are unambiguous as applied to the defendants' conduct. Because the statutes therefore "give a person of ordinary intelligence fair notice that [this] conduct is forbidden," they provide the fair warning that the Fifth Amendment requires. *United States v. Harriss*, 347 U.S. 612, 617 (1954). Indeed, the defendants should not be surprised to

learn that they cannot intentionally deliver cocaine for a Mexican drug cartel. In fact, the en banc Ninth Circuit has specifically alerted FedEx to the fact that it could be prosecuted for knowingly distributing illegal drugs. *See United States v. Heredia*, 483 F.3d 913, 920 n.10 (9th Cir. 2007) (en banc) ("[I]f a particular package leaks a white powder or gives any other particularized and unmistakable indication that it contains contraband, and the carrier fails to investigate, it may be held liable – and properly so.").

Finally, there is no merit to the defendants' suggestion that this Court would violate due process if it interprets Sections 822(c) and 373(a) in a way that subjects the defendants to criminal liability under the CSA and FDCA. *See* Def. Mot. 39. As an initial matter, this Court would simply be following a trail blazed by earlier decisions, including the Supreme Court's decision in *Moore* and the Eighth Circuit's decision in *Hill*.[7] *See* Part B.1, *supra.* But even if this Court were the first to approach the issues raised by the defendants' motion, its decision would not retroactively subject the defendants to prosecution without fair warning. Rather, the Court's interpretation of Sections 822(c) and 373(a) would be grounded in the text, structure, purposes, and history of the CSA and FDCA, all of which have given the defendants' ample notice of their criminal liability. Accordingly, the Court's ruling would not amount to "[a]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, [that] violates the federal due process right to fair warning of what constitutes criminal conduct." *Clark v. Brown*, 450 F.3d 898, 911 (9th Cir. 2006).

///
///
///
///
///
///
///
///

---

[7] These cases belie the defendants' claim that "there are no judicial decisions . . . that would have given fair warning to FedEx that its transportation of pharmaceuticals could give rise to criminal liability." Def. Mot. 39.

1

## IV. <u>CONCLUSION</u>

2     For the reasons set forth above, the Court should deny the defendants' motion to dismiss in its

3 entirety.

4 DATED: April 22, 2015                                    Respectfully Submitted:

5                                                          MELINDA HAAG
                                                           United States Attorney
6
                                                                  /s
7
                                                           _____
8                                                          KIRSTIN M. AULT
                                                           KYLE F. WALDINGER
9                                                          Assistant United States Attorneys

10                                                         JENNY C. ELLICKSON
                                                           Trial Attorney
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28