DAVID R. CALLAWAY (CABN 121782)
Attorney for the United States
Acting Under Authority Conferred by 28 U.S.C. § 515

KIRSTIN M. AULT (CABN 206052)
KYLE F. WALDINGER (CABN 298752)
W.S. WILSON LEUNG (CABN 190939)
Assistant United States Attorneys

JENNY C. ELLICKSON (DCBN 489905)
Trial Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6940
FAX: (415) 436-7234
kirstin.ault@usdoj.gov
kyle.waldinger@usdoj.gov
wilson.leung@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

UNITED STATES OF AMERICA

Plaintiff,

v.

FEDEX CORPORATION,
FEDERAL EXPRESS CORPORATION,
(A/K/A FEDEX EXPRESS)
FEDEX CORPORATE SERVICES, INC.,

Defendants.

CR No. 14-380 CRB

UNITED STATES' OPPOSITION TO MOTION FOR DISCLOSURE OF INSTRUCTIONS TO THE GRAND JURY

Hearing Date: December 16, 2015
Hearing Time: 2:00 p.m.
Court: Hon. Charles R. Breyer

# TABLE OF CONTENTS

I. Introduction ........ 1

II. Background ........ 3

III. Discussion ........ 4

A. The Grand Jury Functions at Stake in This Motion. ........ 4

B. Legal Advice Provided to the Grand Jury During the Course of a Specific Investigation is Not Subject to Public Disclosure Because It Is a "Matter Occurring Before the Grand Jury." ........ 5

C. The Defendants Have Failed to Meet Their Burden of Showing a Particularized Need for Grand Jury Materials that Outweighs the Strong Interests of Continuing Grand Jury Secrecy. ........ 10

1. The Continued Need for Grand Jury Secrecy Remains Strong. ........ 12

2. The Defendants Have Not Met Their Burden of Demonstrating a Particularized Need for the Grand Jury's Legal Colloquy that Outweighs the Necessity for Grand Jury Secrecy. ........ 14

a. The Defendants' Speculation that the Grand Jury Received Erroneous Advice on the "Common Carrier Exemption" is Based on Their Own Misreading of the Law and Cannot Support Dismissal of the Superseding Indictment, as the Court Has Already Ruled. ........ 14

b. The Defendants' Speculation that the Grand Jury Was Erroneously Instructed on the Theory of Corporate Collective Knowledge is Wholly Unsupported and Cannot Support Dismissal of the Superseding Indictment. ........ 16

c. The Defendants' Assertion That It Was Impossible to Correctly Instruct the Grand Jury on the Meaning of "Gross Gain" Is Unsupported and Cannot Support Dismissal of the Superseding Indictment. ........ 18

D. The Defendants Have Not Met Their Burden of Demonstrating the Need for In Camera Review. ........ 20

IV. Conclusion ........ 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .......... 11, 18

*Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211 (1979) .......... 5, 10, 12-14

*Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) .......... 17

*In re Grand Jury Subpoena*, 920 F.2d 235 (4th Cir. 1990) .......... 6

*In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046 (9th Cir. 2014) .......... 17

*In re Special Grand Jury (Anchorage, Alaska)*, 674 F.2d 778 (9th Cir. 1982) .......... 7-9, 20

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) .......... 11

*Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395 (1959) .......... 14

*Standley v. Dept. of Justice*, 835 F.2d 216 (9th Cir. 1987) .......... 5-6

*United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973) .......... 7-9, 20

*United States v. Bank of New England, NA*, 821 F.2d 844 (1st Cir. 1987) .......... 17

*United States v. Barry*, 71 F.3d 1269 (7th Cir. 1995) .......... 6-7

*United States v. Belton*, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015) .......... 9

*United States v. Bruce*, 395 F.3d 1215 (9th Cir. 2005) .......... 5

*United States v. Cardenas-Mendoza*, 579 F.3d 1024 (9th Cir. 2009) .......... 13

*United States v. Carozza*, 608 Fed.Appx. 532 (9th Cir. July 24, 2015) .......... 17

*United States v. Diaz*, 236 F.R.D. 470 (N.D. Cal. 2006) .......... 9

*United States v. Ferreboeuf*, 632 F.2d 832 (9th Cir. 1980) .......... 10, 19-20

*United States v. Fowlie*, 24 F.3d 1059 (9th Cir. 1994) .......... 11, 21

*United States v. Fuentes*, 2008 WL 2557949 (E.D. Cal. 2008) .......... 9

*United States v. Goldfine*, 538 F.2d 815 (9th Cir. 1976) .......... 15

*United States v. Hill*, 589 F.2d 1344 (8th Cir. 1979) .......... 15-16

*United States v. Ho*, 2009 WL 2591345 (E.D. Cal. 2007) .......... 7, 21

*United States v. Hui Hsiung*, 778 F.3d 738 (9th Cir. 2015) .......... 19

*United States v. Jack*, 2009 WL 435124 (E.D. Cal. 2009) .......... 7, 9

*United States v. Jordan*, 291 F.3d 1091 (9th Cir. 2002) ........ 19

*United States v. Kennedy*, 564 F.2d 1329 (9th Cir. 1977) ........ 11-12, 15

*United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981) ........ 1, 6, 11

*United States v. Kilpatrick*, 474 F.Supp. 325 (D. Colo. 1983) ........ 11

*United States v. Larrazolo*, 869 F.2d 1354 (9th Cir. 1989) ........ 11

*United States v. Larson*, 2012 WL 4112026 (W.D.N.Y. 2012) ........ 7

*United States v. Mahoney*, 495 F.Supp. 1270 (E.D. Penn. 1980) ........ 11

*United States v. Morales*, 2007 WL 628678 (E.D.Cal. 2007) ........ 7, 10-11, 16-18

*United States v. Murray*, 751 F.2d 1528 (9th Cir. 1985) ........ 12

*United States v. Napoli*, CR 10-642 CRB (N.D. Cal.) ........ 17

*United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir. 2005) (en banc) ........ 4-5, 9

*United States v. PG&E*, 2015 WL 395811 (N.D. Cal. Jun. 29, 2015) ........ 9, 20

*United States v. PG&E*, CR 14-175 TEH (N.D. Cal.) ........ 9, 16-17

*United States v. Proctor & Gamble Co.*, 356 U.S. 677 (1958) ........ 13

*United States v. R Enterprises*, 498 U.S. 292 (1991) ........ 5, 10, 14

*United States v. Ruyle*, 524 F.2d 1133 (6th Cir. 1975) ........ 15

*United States v. Salazar-Lopez*, 506 F.3d 748 (9th Cir. 2007) ........ 19

*United States v. Sells Engineering, Inc.*, 463 U.S. 418 (1983) ........ 9

*United States v. Twersky*, 1994 WL 319367 (S.D.N.Y. 1994) ........ 7, 20-21

*United States v. Welch*, 201 F.R.D. 521 (D. Utah 2001) ........ 7

*United States v. Williams*, 504 U.S. 36 (1992) ........ 4, 12, 15

*United States v. Wright*, 667 F.2d 793 (9th Cir. 1982) ........ 12, 18

*United States v. Zhitlovsky*, 2003 WL 21939024 (D. Kan. 2003) ........ 7

**FEDERAL STATUTES**

18 U.S.C. § 3500 ........ 13

21 U.S.C. § 822 ........ 15-16

21 U.S.C. § 841 ........ 15-16

21 U.S.C. § 885 .................................................................................................................. 14-15

**FEDERAL RULES**

Fed. R. Crim. P. 6(e) ....................................................................................................... *passim*

**OTHER AUTHORITIES**

3 William M. Fletcher, *Fletcher Cyclopedia of Corporations*, § 790 (2010) ..........................................17

# I. INTRODUCTION

In their motion to obtain certain grand jury transcripts, the defendants seek to divert this case into an inquiry that the Ninth Circuit has characterized as a "toilsome mire":[1] the correctness or adequacy of legal advice that government attorneys gave the grand jury during its investigation. The defendants begin with a flawed premise: that the general public may review all legal instructions given to any grand jury because such instructions are not "matters occurring before the grand jury" that are protected by the principles of grand jury secrecy and Federal Rule of Criminal Procedure 6(e). Such a drastic abandonment of the rule of grand jury secrecy that has existed since before this nation was founded is supported by no controlling case law and would critically undermine one of the core principles that allows the grand jury to maintain its place as an independent arbiter of justice in our federal criminal system. Courts have consistently held that legal instructions provided to grand jurors during the course of a specific investigation are "matters occurring before the grand jury" and therefore must remain secret unless and until a defendant demonstrates a "particularized need" that is sufficiently important to outweigh the secrecy that is vital to the proper functioning of the grand jury in our judicial system.

The defendants have not demonstrated such a "particularized need" to obtain the grand jury's legal colloquy because they have not provided any specific facts that raise the specter of the gross prosecutorial misconduct leading to an abandonment of the grand jury's traditional role of independence that is necessary to support a dismissal of the indictment. The defendants' mere speculation that instructional error could possibly have occurred falls far short of meeting the stringent requirements necessary to breach the secrecy of the grand jury's proceedings. Rather, the defendants must establish particularized reasons for believing that grave errors in legal instructions given to the grand jury led the grand jury to indict when it otherwise would not have done so. This the defendants have not done. Rather, the defendants' three assertions that the legal advice the grand jury received might have been erroneous are based on their desire to relitigate the motion to dismiss that the Court has already denied

---

[1] *United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981).

and their own interpretation of legal principles that is wholly speculative and that the defendant themselves concede is not clearly established.

The defendants first speculate that the grand jury might have been given legal advice on the so-called "common carrier exemption" and that such advice might have been erroneous because it does not comport with their view of the law – a view that has already been rejected by this Court and the Ninth Circuit. Such a disagreement with the Court's ruling on the law does not establish the probability of prosecutorial misconduct necessary to outweigh the continuing need for grand jury secrecy. This is especially true here, where the grand jury was not required to find that the "common carrier exemption" did not apply in order to return the indictment. Therefore, any discussion on this issue could not have influenced the grand jury's decision to indict, and the defendants have not met the standard for overcoming the long-held policy protecting the secrecy of grand jury proceedings.

The defendants' next speculation – that the grand jury might have been misled regarding the principles of corporate criminal liability – is based on their own interpretation of what they think the law should be. However, courts have concluded that a corporation can be held criminally liable based on the collective knowledge of its employees, as well as under the *respondeat superior* theory that the defendants espouse. The defendants' speculation that a court in the future may change the current state of the law to abolish the collective knowledge doctrine is insufficient to meet their burden of establishing a high probability that the grand jury was misled into returning an indictment by a prosecutor's gross misstatement of applicable legal principles. Moreover, the defendants provide no particularized rationale for believing that the grand jury in this case was so misled. The defendants cite only to the instructions given to a different grand jury during a different investigation in support of their assertion that the grand jury in this case might have been instructed similarly. However, in that other case, the grand jury was instructed on both *respondeat superior* and collective knowledge theories, consistent with the current state of the law. In fact, the superseding indictment in this matter is rife with examples of highly-placed FedEx employees who had both the knowledge and intent necessary to bind the corporation under a *respondeat superior* theory of liability. Because instructing the grand jury consistent with the current state of the law cannot provide a ground for dismissal, the defendants have

not established the particularized need necessary to meet their burden for obtaining the grand jury's legal colloquy.

Finally, the defendants speculate that the grand jury might have been improperly instructed on the legal principles applicable to the sentencing allegation. The defendants argue that because the current state of the law is "conflicting and unsettled," any legal advice given to the grand jury was likely wrong. This argument is again based on the possibility that a future court could settle the law in such a way that would make the legal advice given to the grand jury incorrect. However, as the defendants acknowledge, the only Ninth Circuit pronouncement on this issue runs contrary to the defendants' wishes for what the law should be. Moreover, the defendants' argument goes only to a sentencing allegation in the indictment – even if the instructions were erroneous, and there is no reason to believe that they were, the result would not be the dismissal of the indictment.

The defendants have not met their burden of demonstrating that the grand jury materials they seek may disclose prosecutorial misconduct in the instructing of the grand jury sufficient to support dismissal of the indictment. The defendants provide nothing more than speculation that the grand jury might have been erroneously instructed, and such speculation is insufficient to meet their burden of showing a particularized need for grand jury materials. At most, the defendants suppose that the grand jury may have been provided with legal advice that contradicts their belief of what the law should be. However, the defendants' disagreement with this Court's ruling and supposition that a future court may change the state of the law provide no basis for dismissing the present indictment. Because the defendants have established no particularized need for the grand jury materials they seek, the Court need not undertake *in camera* review, as the alleged infirmities in the instructions cannot provide the relief that the defendants claim they will eventually seek. Therefore, the defendants' motion should be denied in its entirety.

## II. BACKGROUND

This case is the culmination of a six-year grand jury investigation that resulted in an indictment returned on July 17, 2014, and a superseding indictment returned on August 14, 2014. Clerk's Record ("CR") 1 and 28. The United States has produced 20 transcripts to the defendants containing the grand

jury testimony of current and former FedEx employees, which this Court unsealed for that purpose. CR 109. The United States has also agreed to produce, under the Jencks Act, the grand jury testimony of witnesses who will testify at trial. CR 139. Although the Jencks Act requires the production of these transcripts only after each witness's direct trial testimony, the United States agreed to produce them four months before trial. *Id*.

The defendants now seek production of all legal advice given to and questions posed by grand jurors during grand jury sessions regarding three subjects: (1) the "common carrier exemption"; (2) the theory of corporate criminal liability; and (3) the meaning of the term "gross gain" in the sentencing allegation. Defendants' Motion ("Def. Mot.), p. 23. The defendants ask the Court to order this production either as a matter of course, because such materials are not matters before the grand jury that are protected by the principles of grand jury secrecy, or based on speculation that government attorneys might have given the grand jury erroneous legal advice because the defendants disagree with the Court's ruling on their motion to dismiss and suppose that the current state of the law on the other issues may change at some unspecified future date. Def. Mot. pp. 6-8, 11-22.

## III. DISCUSSION

### A. The Grand Jury Functions At Stake In This Motion.

The grand jury is "a constitutional fixture in its own right" that serves as a "buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992). In this role, the grand jury operates at "arm's length" from the Judicial Branch, which confines its involvement with the grand jury to calling it together and administering the oath of office. *Id*. The Supreme Court has been reluctant to invoke the Court's supervisory power as a basis for prescribing modes of grand jury procedure and has specifically prohibited judicial review of the sufficiency of the prosecutor's presentation to the grand jury. *Id*. at 49-50, 55. The grand jury also functions independently from the prosecution and, indeed, acts as a check on the prosecution. *United States v. Navarro-Vargas*, 408 F.3d 1184, 1200 (9th Cir. 2005) (en banc) ("Grand juries and prosecutors serve as a check on one another."). The grand jury's independence stems from two foundational principles: the grand jury's deliberations

are secret, and its decisions are unreviewable. *Id*. at 1201 ("It is the fact that its judgments are unreviewable and its deliberations unknowable that gives the grand jury its independence.").

First, the Supreme Court has "consistently" recognized that the proper functioning of the grand jury depends upon the secrecy of its proceedings. *Douglas Oil Co. of California v. Petrol Stops Northwest*, 441 U.S. 211, 218 (1979). Among other things, this secrecy protects grand juries when they decline to indict despite executive or public pressure to do so. *United States v. Bruce*, 395 F.3d 1215, 1231 (9th Cir. 2005). Grand jury secrecy also protects witnesses who may fear retaliation if their testimony were known to the target of a grand jury investigation, and protects grand jurors from pressure or inducements by those under investigation. *Douglas Oil Co.*, 441 U.S. at 219.

Second, once a grand jury has voted to indict, the courts "may not presume to correct its decision." *Bruce*, 395 F.3d at 1231. Relatedly, "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *United States v. R Enterprises*, 498 U.S. 292, 300 (1991). This presumption, commonly known as the presumption of regularity, protects the grand jury from judicial oversight absent particularized proof of irregularities in the grand jury process. *Id*.

**B. Legal Advice Provided to the Grand Jury During the Course of a Specific Investigation is Not Subject to Public Disclosure Because It Is a "Matter Occurring Before the Grand Jury."**

Rule 6(e) of the Federal Rules of Criminal Procedure ("Rule 6(e)") codifies the common law tradition of grand jury secrecy, and prohibits — with certain exceptions — the public disclosure of any "matter occurring before the grand jury." Fed. R. Crim. P. 6(e)(2)(B). The Ninth Circuit has explained that the scope of protected "matters occurring before the grand jury" encompasses "anything which may reveal what occurred before the grand jury," including "identities of witnesses or jurors, the substance of testimony as well as actual transcripts, the strategy or direction of the investigation, the deliberations or questions of jurors, and the like." *Standley v. Dept. of Justice*, 835 F.2d 216, 218 (9th Cir. 1987). Moreover, given the intimate relationship between the substantive criminal law that a grand jury will apply in voting on an indictment and the factual investigation leading to that vote, it follows that Rule 6(e)'s secrecy provisions apply equally to matters that reveal a grand jury's analysis of the facts and to

matters that reveal the grand jury's analysis of the law. For example, the questions posed by grand jurors during grand jury proceedings may reveal both the focus of the grand jury's investigation and the reasoning underlying the grand jury's ultimate decision about whether or not to indict. *Standley* therefore did not distinguish between grand jurors' questions about the relevant facts and grand jurors' questions about the applicable law when it explained that the scope of Rule 6(e) extends to "the deliberations or questions of the jurors." *Id.* Accordingly, to the extent that the defendants are seeking "the records of questions the jurors may have asked about the above-described subjects, along with records of any answers provided," they must overcome the secrecy provisions of Rule 6(e). Defendants' Proposed Order Directing the Disclosure of Instructions to the Grand Jury, CR 144.

By the same logic, the secrecy provisions in Rule 6(e) extend to both a prosecutor's factual presentation to the grand jury and to any legal instructions that a prosecutor may provide during the grand jury proceedings. Prosecutors are not required to instruct the grand jury on the law, and the Ninth Circuit has declined to impose this requirement expressly to avoid "protracted review of their adequacy and correctness" by trial courts. *Kenny*, 645 F.2d at 1347. But if a prosecutor does give the grand jury legal instructions on the elements of an offense, or legal advice in response to a grand juror's questions, that advice by definition relates to the crimes that the grand jury is investigating. Unlike the general charge that the Court gives each new grand jury, the prosecutor's legal advice — and the grand jury's request for it — concerns the specific matter before the grand jury. While the elements of a crime are not secret, the fact that a grand jury is investigating that particular crime is. "It is not information itself, but the fact that the grand jury was considering information that is protected from disclosure." *In re Grand Jury Subpoena*, 920 F.2d 235, 241 (4th Cir. 1990).

Accordingly, the Seventh Circuit and at least six district courts have expressly applied Rule 6(e)'s secrecy provisions to the legal instructions that a prosecutor gives a grand jury during a particular investigation. These courts reason that such instructions reveal the substance of a particular charge before the grand jury and therefore constitute a "matter occurring before the grand jury." *See United States v. Barry*, 71 F.3d 1269, 1274 (7th Cir. 1995) (rejecting defendant's claim that the government's instructions to the grand jury were not subject to Rule 6(e) and holding that the instructions were not

"ministerial in nature"); *United States v. Larson*, 2012 WL 4112026, *5 (W.D.N.Y. 2012) (prosecutor's legal instructions to the grand jury in the context of a specific investigation reveal the "deliberative process for that body" and must be considered covered by Rule 6(e)); *United States v. Ho*, 2009 WL 2591345, *4 (D. Haw. 2009) (prosecutor's instructions to the grand jury necessarily covered by Rule 6(e)); *United States v. Morales*, 2007 WL 628678, *4 (E.D. Cal. 2007) (finding "little support" for the defendant's claim that a prosecutor's instructions to the grand jury were outside Rule 6(e)); *United States v. Twersky*, 1994 WL 319367, *5 (S.D.N.Y. 1994) (prosecutor's instructions to the grand jury covered by Rule 6(e) and requiring an *in camera* review of the instructions even after the defendant had shown particularized need); *see also United States v. Zhitlovsky*, 2003 WL 21939024, *2 n.1 (D. Kan. 2003); *United States v. Welch*, 201 F.R.D. 521, 524 (D. Utah 2001) ("The instructions to the grand jury are intimately associated with the deliberation and judgement (*sic*) aspects of the grand jury function.").

The Ninth Circuit addressed a different question in *United States v. Alter*, 482 F.2d 1016 (9th Cir. 1973), holding that the constituting judge's charge to a new grand jury is not secret. *Id.* at 1029 n.21. In so doing, the court of appeals reasoned that the judge's charge, which is published in a Judicial Conference handbook, concerns "the ground rules by which the grand jury conducts [its] proceedings," not the proceedings themselves, which are secret. *Id.* The "ground rules" that fall outside the scope of Rule 6(e)'s secrecy provisions are those that "generally relate to the procedural aspects of the empaneling and operation of the . . . Grand Jury, as opposed to records which relate to the substance of the . . . Grand Jury's investigation." *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 779 n.1, 780 (9th Cir. 1982) (hereinafter *In re Alaska Grand Jury*). Thus, courts have held that defendants, or any other member of the public, need not establish a particularized need for disclosure of the grand jury's empaneling instructions. *See, e.g.*, *id.* at 778; *Alter*, 482 F.2d at 1029 n.21; *United States v. Jack*, 2009 WL 435124 (E.D. Cal. 2009).

As these courts correctly concluded, the "ground rules" that the Ninth Circuit addressed in *Alter* and *In re Alaska Grand Jury* are the basic instructions that courts give grand jurors at empanelment, which explain the general obligations and duties of the grand jury, the necessity of finding probable cause before returning an indictment, the role of the grand jury in our constitutional democracy, and

similar topics.  Such "instructions" relate to how the grand jurors are to comport themselves in general and the standards by which the grand jury should operate.  They do not pertain to any particular investigation, and therefore their disclosure does not impinge on any of the important matters that lie at the heart of the longstanding principles of grand jury secrecy.  *See In re Alaska Grand Jury*, 674 F.2d at 781-82 (distinguishing between "a court order authorizing the summons of a Special Grand Jury" as likely not protected, and transcripts of testimony, votes of grand jurors, roll sheets and attendance records, which likely are protected).

Because the Ninth Circuit concluded that such "ministerial" matters are available *to the general public* absent a showing of any particularized need, this holding necessarily applies only to "instructions" that do not relate to any particular investigation.  By their very nature, the instructions presented to the grand jury in a given investigation reveal what crimes the grand jury is investigating in that particular instance.  Thus, they are clearly a "matter occurring before the grand jury" that lie at the heart of the grand jury secrecy provisions.  If the Ninth Circuit's holdings regarding the disclosure of ministerial matters were to extend to instructions given in a particular investigation, the general public would be entitled to obtain such instructions and would be able to ascertain the crimes under investigation by the grand jury at any time.  *See In re Alaska Grand Jury*, 674 F.2d at 780 (holding "interested members of the public" have standing to obtain "ministerial" records of the grand jury without a showing of need).  Members of the press or public could routinely request production of the legal instructions given to the grand jury and publish them in a weekly column or blog, exposing grand jurors to precisely the type of public scrutiny and pressure the longstanding rules and principles of grand jury secrecy were designed to prevent.

There is nothing in the Ninth Circuit's opinions in *Alter* or *In re Alaska Grand Jury* indicating that the Circuit intended to so dramatically undercut the traditional secrecy that has been afforded to the nature of the grand jury's investigations since the founding of our republic.  To the contrary, the Ninth Circuit has repeatedly expressed its appreciation for the importance of maintaining the utmost secrecy of the grand jury's proceedings.  *See, e.g., In re Alaska Grand Jury*, 674 F.2d at 780-81 ("If such a right [of access] is available at all with respect to grand jury records, it must clearly be tempered by the long-

standing rule of secrecy of the grand jury, and by the well-recognized policies behind that rule"); *see also Navarro-Vargas*, 408 F.3d at1191-96 (extensively reviewing the history of the grand jury and emphasizing the continual import of secrecy to its proper functioning).

The defendants argue that the Ninth Circuit's decision in *Alter*, which held that the Court's general empaneling instructions to the grand jury did not fall within Rule 6(e), should by analogy support the release of all government legal advice and instructions to the grand jury without a showing of particularized need. Def. Mot. pp. 6-7. Three of the district court decisions that the defendants cite in their motion have adopted this view.[2] Def. Mot. p. 7 (citing *United States v. PG&E*, 2015 WL 395811, *13 (N.D. Cal. Jun. 29, 2015); *United States v. Belton*, 2015 WL 1815273 (N.D. Cal. Apr. 21, 2015); and *United States v. Diaz*, 236 F.R.D. 470, 477 (N.D. Cal. 2006)). Most recently, in *PG&E*, Judge Henderson ruled that some instructions given to the grand jury in that investigation may have been "ministerial," while others may not have been. 2015 WL 395811, *13. Judge Henderson ordered that the prosecution produce transcripts of all instructions for *in camera* review, and the court undertook the process of separating instructions it deemed to be purely "ministerial" from those that revealed the deliberative processes of the grand jury. *Id.*; CR 14-175 TEH, Docket No. 110. As discussed above, this approach misapprehends the Ninth Circuit's rulings. Indeed, such a dramatic extension of *Alter* and *In re Alaska Grand Jury* would run contrary to the Supreme Court's instruction that "[i]n the absence of a clear indication in a statute or Rule, we must always be reluctant to conclude that a breach of this secrecy has been authorized." *United States v. Sells Engineering, Inc*., 463 U.S. 418, 425 (1983).

The Court should follow the weight of authority and find that the legal advice given to the grand jury and any related questions are not available to the general public because they go to the heart of the matters under consideration by the grand jury that lie at the core of Rule 6(e)'s secrecy protections.

[2] The defendants cite two other district court decisions for this proposition — *United States v. Jack*, 2009 WL 435124 (E.D. Cal. 2009), and *United States v. Fuentes*, 2008 WL 2557949 (E.D. Cal. 2008) — but they have misinterpreted them. Def. Mot. p. 7. Those cases did not hold that government legal instructions were not subject to Rule 6(e), but that general empanelment instructions by the Court were not subject to Rule 6(e). *Jack*¸ 2009 WL 435124, *4 (granting defendant's request for "[a] transcript of the Court's instructions and charges to the grand jury"); *Fuentes*, 2008 WL 2557949, *1 (same). The United States does not dispute this point, irrelevant here, as it was decided by the Ninth Circuit in *Alter*, 482 F.2d at 1029 n.21.

**C. The Defendants Have Failed to Meet Their Burden of Showing a Particularized Need for Grand Jury Materials that Outweighs the Strong Interests of Continuing Grand Jury Secrecy.**

As discussed above, Federal Rule of Criminal Procedure 6(e)(2)(B) imposes a general rule that certain parties, including attorneys for the Government, "must not disclose a matter occurring before the grand jury." Even after the return of an indictment, the need for secrecy persists. *Douglas Oil*, 441 U.S. at 222. However, Rule 6(e)(3)(E)(ii) creates an exception to this general rule by allowing the Court to order disclosure of a grand jury matter "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222. Accordingly, a defendant can overcome Rule 6(e)'s presumption in favor of protecting the secrecy of any "matter occurring before the grand jury" only by showing a "particularized need" for disclosure, such as prosecutorial misconduct which would justify dismissing the indictment. *See* Fed. R. Crim. P. 6(e); *Douglas Oil*, 441 U.S. at 222.

The Court must presume, "absent a strong showing to the contrary," that a grand jury acts within the legitimate scope of its authority. *R Enterprises*, 498 U.S. at 300. Therefore, "[m]ere unsubstantiated, speculative assertions of improprieties in the proceedings do not supply the 'particular need' required to outweigh the policy of grand jury secrecy." *United States v. Ferreboeuf*, 632 F.2d 832, 835 (9th Cir. 1980) (internal quotation omitted). Instead, a party seeking grand jury material must show "with particularity" its need for it, and why without it a defense would be greatly prejudiced or an injustice would be done. *Douglas Oil*, 441 U.S. at 1674. Also, the request must be structured to cover only the grand jury material that is subject to the particularized need. *Id.*

Courts routinely find that assertions that a grand jury returned an indictment too quickly or that the government misled the grand jury, without more, fall short of the particularized need requirement. *See, e.g.*, *Ferreboeuf*, 632 F.2d at 835 (speed with which indictment was returned was "mere speculation" of misconduct); *Morales*, 2007 WL 628678 at *4 (defendant could not use his own

evaluation of the evidence to compel production of grand jury instructions because "[t]his sort of deductive reasoning is insufficient to overcome the presumption of regularity"). Rather, a defendant establishes a "particularized need" for protected grand jury materials where the defendant can point to specific facts suggesting severe misconduct that jeopardized the independence of the grand jury. For example, courts have found a particularized need for further disclosure where a defendant already received some grand jury materials, and those materials revealed that the prosecution misrepresented the evidence. *United States v. Mahoney*, 495 F. Supp. 1270, 1273 (E.D. Penn. 1980); *see also United States v. Kilpatrick*, 575 F.Supp. 325, 326-39 (D. Colo. 1983) (summaries of grand jury transcripts and court's *in camera* review revealed wide range of prosecutorial misconduct). The defendants make no such claims here.

The defendants' showing of particularized need must establish that a "ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii) (emphasis added). Therefore, the standard for dismissing an indictment is relevant to the standard for disclosure of grand jury materials. *See United States v. Fowlie*, 24 F.3d 1059, 1065-66 (9th Cir. 1994). "[D]ismissal of the indictment [for prosecutorial error] is appropriate only 'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988).

A prosecutor need not instruct the grand jury on the law in order to secure an indictment. *Kenny*, 645 F.2d at 1347. Even where instructions are provided, "the prosecutor has no duty to outline all the elements of [the offense] so long as the instructions given are not flagrantly misleading or so long as all the elements are at least implied." *United States v. Larrazolo*, 869 F.2d 1354, 1359 (9th Cir. 1989), *overruled on other grounds by Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989). "Erroneous grand jury instructions do not automatically invalidate an otherwise proper grand jury indictment." *Larrazolo*, 869 F.2d at 1359 (quotation and citation omitted).

The Supreme Court and Ninth Circuit have refused to allow challenges to indictments on the ground "that there was inadequate or incompetent evidence before the grand jury," because of the delay

and risk of mini-trials concerning grand jury proceedings that such a process would promote. *United States v. Kennedy*, 564 F.2d 1329, 1337 (9th Cir. 1977); *see also Williams*, 504 U.S. at 54 (challenges to the reliability, competency or sufficiency of evidence presented to the grand jury will not be heard). "Only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury." *Kennedy*, 564 F.2d at 1338. The Ninth Circuit has concluded that even a prosecutor's erroneous instruction "did not significantly infringe on the ability of the grand jury to exercise its independent judgment." *United States v. Wright*, 667 F.2d 793, 796 (9th Cir. 1982). Thus, only flagrant prosecutorial misconduct that usurps the grand jury's independence through patently false legal instructions provides a ground for dismissal of the indictment. *Id*. ("In this Circuit, a grand jury indictment will not be dismissed unless the record shows that the conduct of the prosecuting attorney was flagrant to the point that the grand jury was 'deceived' in some significant way.") The defendants have set forth no facts supporting an allegation that such misconduct occurred through the legal advice discussed with the grand jurors in this case. Therefore, they have failed to meet their burden of overcoming the grand jury's secrecy provisions, and their motion for the grand jury's legal colloquy must be denied. *See United States v. Murray*, 751 F.2d 1528, 1533-34 (9th Cir. 1985) (defendants did not make showing of particularized need necessary to outweigh secrecy of grand jury proceedings where "the claimed misconduct would not have compelled the dismissal of the first superseding indictment").

1. <u>The Continued Need for Grand Jury Secrecy Remains Strong.</u>

The defendants claim that the Rule 6(e) concerns relating to the secrecy of the grand jury proceedings in this case "are not seriously implicated" because the grand jury has already returned two indictments and the United States has disclosed transcripts of the testimony of a number of witnesses. Def. Mot. p. 9. This argument is a distortion of the governing precedent. The Supreme Court has held that the interests favoring grand jury secrecy continue after the grand jury has ended its activities, even if those interests are reduced. *Douglas Oil*, 441 U.S. at 222. The Supreme Court, in reviewing a Ninth Circuit decision to allow disclosure of grand jury documents after conclusion of the grand jury investigation, was quick to note that such closure of proceedings does not automatically lower the

standard of proof required for disclosure under Rule 6(e). *Douglas Oil*, 441 U.S. at 223 n.14. Instead, the Supreme Court criticized the Ninth Circuit's use of the word "minimal" in describing the necessary showing under Rule 6(e), noting that in a different factual context it could be seen as "an unjustified lowering of the standard of proof." *Id*.

The defendants' argument that the government has no interest in protecting the secrecy of its colloquy with grand jurors because it has produced some transcripts that are subject to the Jencks Act is a *non sequitur*. Def. Mot. p. 9. The United States must produce witness grand jury testimony that is subject to the Jencks Act, even though it is indisputably subject to Rule 6(e). In this context, the defendants' particularized need for the prior statements of witnesses who are testifying at trial is well established by case law and statute. *See* 18 U.S.C. § 3500; *United States v. Cardenas-Mendoza*, 579 F.3d 1024, 1031 (9th Cir. 2009).

As the Supreme Court has admonished, the Court must consider not only the effect of the disclosure on a particular grand jury, but also "the possible effect upon the functioning of future grand juries." *Douglas Oil*, 441 U.S. at 1674. Grand jurors must feel free to ask questions and seek legal advice absent any pressure brought to bear by the prospect of after-the-fact scrutiny from the judiciary or from those that the grand jury chooses to indict. *Id*.

Moreover, one of the most important aspects of the grand jury secrecy provisions is the protection afforded for those who are investigated but not ultimately prosecuted. *See id.* at 219 n.10; *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 681-82 n.6 (1958). The decision to return an indictment against one person but not others, or the decision to indict on some charges but not others, renders the need for secrecy following the return of an indictment more critical, not less. The portions of the grand jury colloquy addressing legal issues has particular relevance in this context. For example, a grand jury's request for instructions on the crime of perjury immediately following the conclusion of a witness's testimony, reveals an important facet of direction of the grand jury's investigation at that moment. If the witness is not ultimately indicted, the secrecy provisions serve their intended function of protecting the witness from the opprobrium that comes from having been investigated for a serious crime. The need for this protection does not dissipate when other targets of the grand jury's

investigation have been indicted. This is particularly true in the context of a criminal investigation of a corporation where many grand jury witnesses will necessarily be the corporation's own employees. *See Douglas Oil*, 441 U.S. at 1674 (expressing particular concern for the need for grand jury secrecy where employees are testifying during the investigation of their corporate employer); *see also Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) (need for secrecy is paramount in corporate cases where "fear of business reprisal might haunt both the grand juror and the witness"). Similarly, the legal colloquy may reveal that the grand jury investigation involved charges more serious or different in character from those ultimately brought. *See R Enterprises*, 498 U.S. at 297 ("[T]he identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors not at the beginning") (quotation omitted). The need to protect a defendant from the stigma of an investigation for offenses that were not charged is not dispelled when an indictment is returned. *See Douglas Oil*, 441 U.S. at 218 n.8 ("One of the several interests promoted by grand jury secrecy is the protection of the innocent accused from disclosure of the accusations made against him before the grand jury. . . . Although petitioners in the present case were indicted and pleaded *nolo contendere*, under our decisions they nonetheless are legally entitled to protection, as there may have been accusations made for which no indictment was returned.").

2. The Defendants Have Not Met Their Burden of Demonstrating a Particularized Need for the Grand Jury's Legal Colloquy that Outweighs the Necessity for Grand Jury Secrecy.

*a. The Defendants' Speculation that the Grand Jury Received Erroneous Advice on the "Common Carrier Exemption" is Based on Their Own Misreading of the Law and Cannot Support Dismissal of the Superseding Indictment, As the Court Has Already Ruled.*

The defendants' speculation that the grand jury's independence was usurped by fatally flawed instructions on the common carrier "exemption" does not support disclosure of the grand jury's legal colloquy for two reasons. First, the grand jury was not required to pass on whether this exemption applied before returning an indictment. *See* 21 U.S.C. § 885(a)(1) ("It shall not be necessary for the United States to negative any exemption or exception set forth in this subchapter in any . . . indictment, . . . and the burden of going forward with the evidence with respect to any such exemption or exception

shall be upon the person claiming its benefit."). As with any other factual or legal defense, the United States was not required to present exculpatory evidence to the grand jury, nor was the grand jury required to evaluate the merits of such a defense before returning an indictment. *See Williams*, 504 U.S. at 55. Therefore, even if the grand jury had been presented with erroneous legal advice on this topic, and the defendants have not shown any reason to believe that they were, such advice could not have affected the grand jury's decision to indict. *See Kennedy*, 564 F.2d at 1337 (agreeing with decision in *United States v. Ruyle*, 524 F.2d 1133 (6th Cir. 1975), affirming refusal to dismiss indictment on ground that prosecutor had not presented evidence in drug trafficking case that defendant was "a registered distributor licensed to distribute such controlled substances" because exculpatory evidence need not be presented to grand jury). As a result, the particularized need that the defendants claim for this legal colloquy – that it may reveal grounds to dismiss the indictment because of misconduct before the grand jury – simply does not exist.

Second, the alleged instructional error was not error at all, as this Court has already ruled. The defendants persist in their argument that 21 U.S.C. § 822(c)(2) "exempts" common carriers not simply from registration with the Drug Enforcement Administration for activities that fall within the legitimate channels of distribution, but from the Controlled Substances Act in its entirety. Def. Mot. pp. 13-17. The defendants again put forward their belief that so long as they were delivering illegal drugs in the same manner as they delivered other packages, they were "exempt" from the Controlled Substances Act and any implication otherwise would misstate the law. Def. Mot. pp. 14-15. The defendants acknowledge that the Court has ruled against them on this issue, Def. Mot. p. 5 n.2, yet they persist in attempting to relitigate the Court's decision through the vehicle of this motion for the grand jury's legal colloquy. The only particularized evidence they assert in support of their speculation that the grand jury was improperly instructed is the arguments the United States made in opposition to their motion to dismiss – arguments that this Court agreed correctly stated the law. *See United States v. Goldfine*, 538 F.2d 815, 819-20 (9th Cir. 1976) (rejecting the contention that a defendant who is exempted from registration requirements under Section 822(c) is thereby "authorized to possess controlled substances and thus should be free from prosecution under § 841"); *see also United States v. Hill*, 589 F.2d 1344,

1353 (8th Cir. 1979) (holding that Section 822(c) is only "an exemption to registration" and "does not attempt to make criminal conduct lawful under any circumstances.").

The defendants assert that, contrary to the superseding indictment's allegations, they were acting in the usual course of business when they delivered drugs for illegal Internet pharmacies. Def. Mot. pp. 14-15. However, the fact that the defendants may have answers to the factual allegations in the grand jury's charge does not show that the grand jury was inadequately instructed. "This sort of deductive reasoning [that a perceived insufficiency in evidence means that the grand jury was incorrectly instructed] is insufficient to overcome the presumption of regularity." *Morales*, 2007 WL 628678, *4.

*b. The Defendants' Speculation that the Grand Jury Was Erroneously Instructed on the Theory of Corporate Collective Knowledge is Wholly Unsupported and Cannot Support Dismissal of the Superseding Indictment.*

The defendants' next speculation – that the grand jury received erroneous legal instructions on the theory of corporate criminal liability – is not supported by any competent rationale. The defendants allege that the grand jury may have been instructed on a theory of corporate collective knowledge – that the corporation can be held criminally liable based on the collective knowledge and actions of its employees, when it should have been instructed on a theory of *respondeat superior* – that a single employee must have the requisite knowledge and intent to commit the crime charged in the indictment. Def. Mot. pp. 20-21. The defendants' sole support for this assertion is that the grand jury in this case might have been instructed similarly to a different grand jury sitting in a different case (*United States v. PG&E*, CR 14-00175 TEH). The defendants provide no rationale for this assertion, other than that the grand jury that indicted the *PG&E* matter was sitting at the same time as the entirely different grand jury that returned the indictment in this case. Def. Mot. pp. 17, 20-21. The *PG&E* matter involves a different statute (the Pipeline Safety Act), with a different scienter (willfulness), and a different set of facts. The defendants' speculation that an entirely different grand jury, investigating an entirely different case, would have been instructed identically to the *PG&E* grand jury is just that – speculation. In fact, contrary to the defendants' assertions, the *PG&E* grand jury was instructed on *both* the theory of corporate collective responsibility *and* the theory of *respondeat superior*. *See* CR 14-00175 TEH,

Docket No. 141, p.2. If the Court is going to engage in the speculation encouraged by the defense, the Court must assume that the grand jury was similarly instructed on both theories in this case.

The defendants contend that "the law in this area is unsettled," and admit that the leading federal circuit court of appeals case to address this issue has concluded that "[a] collective knowledge instruction is entirely appropriate in the context of corporate criminal liability." *United States v. Bank of New England, N.A.*, 821 F.2d 844, 856 (1st Cir. 1987); Def. Mot. pp. 17-18. As that court reasoned, "[a] corporation cannot plead innocence by asserting that the information obtained by several employees was not acquired by any one individual who then would have comprehended its full import." *Id*. at 856. The defendants acknowledge that the Ninth Circuit has not ruled on this issue but assert that the *Bank of New England* case has been criticized by other courts and commentators "by showing that it has applied only in cases of willful blindness." Def. Mot. pp. 18-19. Even if such criticism were taken to heart, the concept of willful blindness would appear to be fully applicable to the charges in this case. *See United States v. Napoli, et al.*, CR 10-642 CRB, Docket No. 1056 (instructing the jury on willful blindness in Internet pharmacy prosecution), *aff'd United States v. Carozza, et al.*, 608 Fed.Appx. 532, 536 (9th Cir. July 24, 2015). In fact, the Ninth Circuit's most recent pronouncement on this issue, albeit in the civil context, indicates a favorable view of the collective knowledge doctrine. *See In re NVIDIA Corp. Securities Litigation*, 768 F.3d 1046, 1063 (9th Cir. 2014) (holding that the collective corporate scienter doctrine "might be appropriate in some cases" without proof of any specific employee's willfulness, for example, if "a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication"), *quoting Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 743 (9th Cir. 2008); 3 William M. Fletcher, *Fletcher Cyclopedia of Corporations* § 790 (2010) ("The knowledge necessary to adversely affect the corporation does not have to be possessed by a single corporate agent; the cumulative knowledge of several agents can be imputed to the corporation.").

At most, the defendants have established that if the grand jury were instructed on the doctrine of corporate collective criminal responsibility, the instructions comport with the law as it currently stands, but some commentators have expressed doubts about the doctrine's future viability. However, "a

properly instructed jury, grand or petit, may return an indictment or a verdict later found to be insufficient." *Morales* 2007 WL 628678, *4. Even if the grand jury received legal advice on corporate collective responsibility, as the defendants speculate, such advice fully comports with the current state of the law and cannot have been instructional error.

Moreover, as discussed above, if the Court is engaging in the speculation invited by the defense, there is even greater evidence that the grand jury was also instructed on the theory of *respondeat superior*. The superseding indictment is replete with references to high-ranking FedEx employees who had the requisite scienter to commit the crimes charged. *See, e.g.*, Superseding Indictment, CR 28, at ¶¶ 9 (Managing Director of Revenue Operations, Vice President of Worldwide Revenue Operations, Chief Financial Officer, President of Customer Information Services, Senior Vice President of Sales); 11 (Senior Managing Director of Revenue Operations); 36d (Senior Managing Director of Revenue Operations); 60 (Senior Vice President of Field Sales); 102 (Senior Vice President of Security). Therefore, even if the grand jury had been erroneously instructed on the theory of collective knowledge, an instruction on the alternate theory of *respondeat superior* would have provided ample support for the return of the superseding indictment. *See Wright*, 667 F.2d at 796 (even assuming prosecutor's legal instruction to grand jury was erroneous, indictment would not be dismissed where grand jury was "thoroughly informed" of the correct elements of the offense through other means and the prosecutor's conduct did not "significantly infringe on the ability of the grand jury to exercise its independent judgment"); *see also Bank of Nova Scotia*, 487 U.S. at 263 (district court has no authority to dismiss indictment absent a finding that defendants were prejudiced by any alleged error).

*c. The Defendants' Assertion That It Was Impossible to Correctly Instruct the Grand Jury on the Meaning of "Gross Gain" Is Unsupported and Cannot Support Dismissal of the Superseding Indictment.*

The defendants' final speculation that the grand jury received erroneous legal instructions regarding the definition of "gross gain" in the sentencing allegation of the superseding indictment does not meet their burden of providing a particularized need for the grand jury's legal colloquy. Under Federal Rule of Criminal Procedure 6(e)(3)(E)(ii), the Court may order disclosure only where the defendant "shows that a ground may exist to dismiss the indictment because of a matter that occurred

before the grand jury." Even if the sentencing allegation were wholly unsupported by any evidence, which it is not, such an error would not provide grounds to dismiss the indictment as it does not go to any of the offenses actually charged. *See United States v. Jordan*, 291 F.3d 1091, 1097 (9th Cir. 2002) (remedy for failure to include sentencing allegation in the indictment is cap on maximum sentence, not reversal of conviction or dismissal of indictment); *see also United States v. Salazar-Lopez*, 506 F.3d 748, 750 (9th Cir. 2007) (failure to include sentencing allegation in indictment is subject to harmless error analysis).

Moreover, the defendants again contend that the law in this area is unsettled, although admitting that the Ninth Circuit's sole pronouncement on this issue runs contrary to their assertion of legal error. Def. Mot. p. 22 n.3 (noting that in *United States v. Hui Hsiung*, 778 F.3d 738, 761 (9th Cir. 2015), the Ninth Circuit "affirmed a judgment in which the trial court had instructed the jury that '[g]ross gain is the additional revenue to the conspirators from the conspiracy. That total gain should not be reduced by any taxes or costs associated with the sales of those products'"). The defendants strangely claim that "the conflicting and unsettled jurisprudence on the meaning of the term [gross gain]" renders any instruction given to the grand jury "likely . . . wrong." Def. Mot. p. 22. Under this theory, the only way for the prosecutor not to have erred was to provide no legal advice to the grand jury at all. Again, the defendants attempt to create a particularized need for the grand jury's legal colloquy based on speculation that the grand jury was instructed in a manner that was inconsistent with the way they hope the law may be interpreted at some future date. Such speculation upon speculation is the antithesis of the particularized need that the Supreme Court and Ninth Circuit have mandated before the prized secrecy of the grand jury may be breached. *See Ferreboeuf*, 632 F.2d at 835 (affirming denial of disclosure of grand jury materials where defendant's "mere speculation" of improprieties amounted to a "fishing expedition").

Because the defendants have not provided anything other than speculation that the grand jury was instructed in a way that does not comport with the current state of the law, nor have they established that the grand jury's independence was usurped by legal advice that led it to return an indictment when it

otherwise would not have, the defendants have not met their burden of establishing a particularized need for the grand jury's legal colloquy that outweighs the compelling interests of grand jury secrecy.

**D. The Defendants Have Not Met Their Burden of Demonstrating the Need for *In Camera* Review.**

Two courts have ordered *in camera* review of legal instructions presented during a grand jury investigation to determine if ministerial instructions concerning the ground rules by which the grand jury operates could be segregated from instructions that would disclose the nature and direction of the grand jury's investigation. *See PG&E*, 2015 WL 3958111, at *13 ("[T]he Court does not believe that the legal instructions provided to the grand jury are necessarily separate from the substance of the grand jury's deliberations."); *Twersky*, 1994 WL 319367, at *5. However, these rulings misunderstand the fundamental holdings of the Ninth Circuit in *Alter*, 482 F.2d 1016, and *In re Alaska Grand Jury*, 674 F.2d 778. In those cases the Ninth Circuit did not address the instructions given during a particular investigation, and, in fact, expressed strong concern for protecting the secrecy of any information that may disclose the nature or direction of the grand jury's investigation. The legal advice shared with grand jurors, which exposes the nature of crimes under consideration – both those ultimately charged and any potential charges not included in the superseding indictment – goes to the heart of the grand jury's deliberative and investigative process.

The better reasoning requires that a defendant make a particularized showing as discussed above before obtaining *in camera* review. Given Supreme Court and Ninth Circuit authority, and the paucity of the defendants' showing, this Court has no reason to find that the defendants have shown a particularized need to obtain the legal advice discussed with grand jurors. *See Ferreboeuf*, 632 F.2d at 835 (affirming district court's decision to deny disclosure of grand jury materials without conducting *in camera* review where the defendant's "unsubstantiated, speculative assertions of improprieties" gave "no indication that such an inspection would have been fruitful"). However, if the Court finds that the defendants have met this high threshold as to any part of the grand jury's investigation, the Court should order the relevant material produced for *in camera* review to determine whether the prospect of prejudicial instructional error so severe that it potentially compromised the independence of the grand

jury requires production to the defendants. *See Fowlie*, 24 F.3d at 1065-66 (affirming district court's refusal to disclose grand jury materials to defendant where court examined materials *in camera* and determined that any alleged impropriety did not substantially influence the grand jury's decision to indict); *Ho*, 2009 WL 2591345, *5 (after finding defendant made showing of particularized need, reviewing transcripts in camera, and, finding no error in prosecutor's instructions, declining to produce transcripts to defendant); *Twersky*, 1994 WL 319367, *5 (reviewing transcripts *in camera* before determining whether to produce them to the defense).

## IV. CONCLUSION

For the reasons set forth above, the Court should deny the defendants' motion to obtain certain grand jury transcripts.

DATED: December 2, 2015

Respectfully Submitted:

DAVID R. CALLAWAY
Attorney for the United States Acting Under
Authority Conferred by 28 U.S.C. § 515

/s

KIRSTIN M. AULT
KYLE F. WALDINGER
WILSON W.S. LEUNG
Assistant United States Attorneys

JENNY C. ELLICKSON
Trial Attorney