Cristina C. Arguedas (CalBN 87787)
      Email: arguedas@achlaw.com
Ted W. Cassman (CalBN 98932)
      Email: cassman@achlaw.com
Raphael M. Goldman (CalBN 229261)
      Email: goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

Allen J. Ruby (CalBN 47109)
      Email: allen.ruby@skadden.com
Jack P. DiCanio (CalBN 138782)
      Email: jack.dicanio@skadden.com
Patrick Hammon (CalBN 255047)
      Email: patrick.hammon@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER
      & FLOM LLP
525 University Avenue, Suite 1100
Palo Alto, CA  94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

*Counsel for FedEx Corporation,
Federal Express Corporation and
FedEx Corporate Services, Inc.*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FEDEX CORPORATION, FEDERAL EXPRESS CORPORATION, and FEDEX CORPORATE SERVICES, INC.,<br><br>Defendants. | **No. CR 14-380 (CRB)**<br><br>**MOTION TO DISMISS THE INDICTMENT DUE TO ERRORS IN THE GRAND JURY PROCEEDINGS**<br><br>Date: April 20, 2016<br>Time: 2:00 p.m.<br>Hon. Charles R. Breyer<br><br>**[Public/Redacted Version]** |

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................1

II.     DISCUSSION .....................................................................................3

        A.      Incomplete or Erroneous Instructions to the Grand Jury May Require
                Dismissal ..............................................................................3

        B.      The Prosecution's Erroneous ███████████████████
                █████████ Require Dismissal...............................................4

                1.      A "Collective Knowledge" Theory is Not a Proper Basis for
                        Liability ..................................................................6

                2.      No Court Has Ever Permitted Specific Intent to be Proved
                        Through Aggregation ...............................................9

                3.      There Is Grave Doubt that the Grand Jury's Decision to Indict
                        Was Free from the Substantial Influence of the Instructional
                        Errors ..................................................................11

        C.      The Prosecution's Incomplete and Misleading Instructions █████
                ████████████████████ Require Dismissal...........................13

                1.      The Government Misled the Grand Jury by █████████
                        █████████████████████████████████████
                        █████████████████████ ...............................13

                2.      There Is Grave Doubt that the Grand Jury's Decision to Indict
                        Was Free from the Substantial Influence of the Error .................17

III.    CONCLUSION....................................................................................18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF AUTHORITIES

Cases

*Bank of Nova Scotia v. United States*, 487 U.S. 250 (1988) .........................................4

*Cohen v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*, 768 F.3d 1046 (9th Cir. 2014) ...............................................................................................................................8, 9

*Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ...........................................13, 14, 15

*First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256 (S.D.N.Y. 1988) .....10

*Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD-CWH, 2013 U.S. Dist. LEXIS 86162 (D. Nev. June 19, 2013) ...........................................................................7

*Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008) ..........7, 8, 9

*Gutter v. E.I. DuPont de Nemours*, 124 F. Supp. 2d 1291 (S.D. Fla. 2000) ...............10

*In re Winship*, 397 U.S. 358, 364 (1970) ......................................................................10

*Mejia v. Garcia*, 534 F.3d 1036 (9th Cir. 2008) .........................................................10

*Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004) ................................8

*Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379 (9th Cir. 1985) ......................................................................................................10

*Saba v. Compagnie Nationale Air Fr.*, 78 F.3d 664 (D.C. Cir. 1996) ...........................9

*SEC v. Alexander*, No. 10-CV-04535-LHK, 2015 U.S. Dist. LEXIS 93476 (N.D. Cal. Jul. 15, 2015) .......................................................................................................17

*Staub v. Proctor Hospital*, 562 U.S. 411 (2011) ...........................................................7

*Southland Securities Corp. v. INSpire Insurance Solutions Inc.*, 365 F.3d 353 (5th Cir. 2004) ......................................................................................................................8

*United States v. Bank of New England, N.A.*, 821 F.2d 844 (1st Cir. 1987) ........6, 9, 10

*United States v. Bowling*, No. 7:14-CR-98-D, 2015 U.S. Dist. LEXIS 70802 (E.D.N.C. May 26, 2015) ................................................................................................4

*United States v. Breslin*, 916 F. Supp. 438 (E.D. Penn. 1996) ...................................17

*United States v. Caruto*, 663 F.3d 394 (9th Cir. 2011) ...........................................3, 4

*United States v. Cerullo*, No. 05-cr-1190*, 2007 U.S. Dist. LEXIS 101358 (S.D. Cal. Aug. 28, 2007) ..................................................................................4, 17

*United States v. Dionisio*, 410 U.S. 1 (1973) ................................................3

*United States v. Gurolla*, 333 F.3d 944 (9th Cir. 2003)...............................5

*United States v. Hilton Hotels Corp.*, 467 F.2d 1000 (9th Cir. 1972) ...........................5

*United States v. Hoey*, No. S3 11-cr-337 (PKC), 2014 U.S. Dist. LEXIS 91093 (S.D.N.Y. Jul. 2, 2014) ................................................................4, 17

*United States v. Giovannetti*, 919 F.2d 1223 (7th Cir. 1990) .......................................14

*United States v. Kasper*, No. 10CR813S, 2011 U.S. Dist. LEXIS 152388 (W.D.N.Y. Jun. 20, 2011) ..............................................................................4

*United States v. Kenny*, 645 F.2d 1323 (9th Cir. 1981) ..................................3

*United States v. LBS Bank-New York, Inc.*, 757 F. Supp. 496 (E.D. Pa. 1990)...........10

*United States v. Marcucci*, 299 F.3d 1156 (9th Cir. Cal. 2002) .................................1, 3

*United States v. Montgomery*, 384 F.3d 1050 (9th Cir. 2004) ...............................5

*United States v. Napoli*, No. 10-cr-642 (CRB), Dkt. 1056 (2012) ...............................5

*United States v. Navarro*, 608 F.3d 529 (9th Cir. 2010) ..........................................4, 11

*United States v. Navarro-Vargas*, 408 F.3d 1184 (9th Cir. 2005) (en banc).................3

*United States v. PG&E*, No. 14-cr-00175-THE, 2015 U.S. Dist. LEXIS 171577 (N.D. Cal. Dec. 23, 2015) ...........................................................................9, 11

*United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009) .....................9

*United States v. Potter*, 463 F.3d 9 (1st Cir. 2006).........................................5

*United States v. Reed*, 575 F. 3d 900 (9th Cir. 2009)........................................5

*United States v. Samango*, 607 F.2d 877 (9th Cir. 1979)...........................................17

*United States v. Science Applications Int'l Corp.*, 626 F.3d 1257 (D.C. Cir. 2010)........7

*United States v. Smith*, 105 F. Supp. 3d 255 (W.D.N.Y. 2015) ...............................4, 17

*United States v. Stevens*, 771 F. Supp. 2d 556 (D. Md. 2011) ...............................4, 17

*United States v. T.I.M.E.-D.C., Inc.*, 381 F. Supp. 730 (W.D. W. Va. 1974)...........6, 11

*United States v. Wenner*, 351 F.3d 969 (9th Cir. 2003)................................................15

*United States v. Williams*, 504 U.S. 36 (1992) ...........................................................4

*Wood v. Georgia*, 370 U.S. 375 (1962) ...................................................................1, 3


<u>Other Authorities</u>

18 U.S.C. § 371..........................................................................................................5

18 U.S.C. § 1956........................................................................................................5

21 U.S.C. § 373.................................................................................11, 13, 15, 16

21 U.S.C. § 822.................................................................................11, 13, 15, 16

21 U.S.C. § 841..........................................................................................................5

21 U.S.C. § 846..........................................................................................................5

FDA Compliance Guide § 100.500 (1989) ...................................................16

Fifth Amendment to the United States Constitution....................................3

Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 8.20...................5

Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 9.19...................5

Thomas A. Hagemann & Joseph Grinstein, *The Mythology of Aggregate Corporate Knowledge: a Deconstruction*, 65 GEO. WASH. L. REV. 210, 226-36 (1997)....................7

On April 20, 2016 at 2:00 p.m. in the above-titled Court, FedEx Corporation, Federal Express Corporation and FedEx Corporate Services, Inc. (collectively, "FedEx") will and hereby do move this Court for an order dismissing the superseding indictment. The government erroneously and incompletely instructed the grand jury, and there is grave doubt that the grand jury's decision to indict was free from the substantial influence of the instructional errors.

## I.   INTRODUCTION

As the Court has recognized, this is a "unique . . . prosecution."  Dkt. 165 at 8. The government has never before sought to prosecute an "otherwise innocent" common carrier, *see* Dkt. 122 at 12, for allowing allegedly improperly-prescribed medications to pass through its system.  Yet FedEx stands charged with criminal conspiracies arising from its provision to alleged wrongdoers of the same socially productive shipping services it offers to every other member of the public.  How could we have gotten to this point?

The government's recent production of grand jury transcripts[1] reveals the problem.

> Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . .

*United States v. Marcucci*, 299 F.3d 1156, 1161 (9th Cir. Cal. 2002) (quoting *Wood v. Georgia*, 370 U.S. 375, 390 (1962); alteration added by *Marcucci* court).  But the government subverted the grand jury's vital role as a bulwark against improper

---

[1] The transcripts of the instructions are already before the Court.  *See* Dkt. 165 at 8.

1    prosecutions by misleading the jurors about the most crucial legal concepts in the case.

2        First, the prosecution misinstructed the grand jury concerning the proof that could

3    satisfy the *mens rea* elements of the offenses under consideration. ███████████

4    ████████████████████████████████████████████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████

7    ████████████████████████         That instruction was incorrect: neither

8    knowledge nor specific intent may be proved by such a mechanism.  No grand jury can

9    serve its bulwark function if it misunderstands the scienter elements of the offenses in

10   question.

11       Second, the prosecution failed to properly inform the grand jury about the line

12   that differentiates culpable from innocent conduct.  The law recognizes that carriers and

13   other such intermediaries do not become criminally culpable simply because they

14   knowingly provide the same generally productive services to wrongdoers that they do to

15   the rest of the public.  While Congress may impose on intermediaries an obligation to

16   inquire into the lawfulness of a customer's activities, Congress has not done so with

17   respect to shipments of controlled substances or other prescription medications.  To the

18   contrary, in this matter there are statutory provisions that expressly relieve from liability

19   common carriers acting in the usual course of their business.  Yet the government

20   entirely failed to explain these fundamental principles to the grand jury.

21       The government's presentation to the jury (a) impermissibly broadened the type

22   of proof that could serve to demonstrate that crimes were committed and (b)

23   misleadingly lowered the bar that such evidence would have to clear.  The errors

24   compounded one another, and there is grave doubt that the grand jury's decision to

indict was free from the substantial influence of the errors.

## II.     DISCUSSION

### A.     Incomplete or Erroneous Instructions to the Grand Jury May Require Dismissal

"The text of the Fifth Amendment simply provides for the right to indictment by a grand jury and does not explain how the grand jury is to fulfill this constitutional role." *United States v. Navarro-Vargas*, 408 F.3d 1184, 1188 (9th Cir. 2005) (en banc). "Such details were either assumed by the framers of the Bill of Rights or left to Congress, the Executive, and the Judiciary to flesh out." *United States v. Caruto*, 663 F.3d 394, 399 (9th Cir. 2011) (citing *Navarro-Vargas*, 408 F.3d at 1188).

As discussed, the grand jury "serves the invaluable function in our society of standing between the accuser and the accused." *Marcucci*, 299 F.3d at 1161 (quoting *Wood*, 370 U.S. at 390). "The grand jury's ability to fulfill its historical role effectively flows in part from its unusual position in the Constitution's structure. The grand jury belongs to no branch of government, but is a constitutional fixture in its own right." *Caruto*, 663 F.3d at 398 (quotation marks omitted). Thus, the Fifth Amendment "presupposes an investigative body acting independently of either prosecuting attorney or judge." *United States v. Dionisio*, 410 U.S. 1, 16 (1973) (quotation marks omitted). "The Fifth Amendment may be violated," and dismissal required, "if the independence of the grand jury in performing its historical function is substantially infringed." *Caruto*, 663 F.3d at 398.

A prosecutor is generally not required to instruct the grand jury in order to secure an indictment, *see United States v. Kenny*, 645 F.2d 1323, 1347 (9th Cir. 1981), nor must a prosecutor present exculpatory evidence to the grand jury, *see United States v.*

*Williams*, 504 U.S. 36, 55 (1992).  Nevertheless, error results when the government undertakes to instruct the grand jury and does so "incompletely or erroneously."  *United States v. Smith*, 105 F. Supp. 3d 255, 260 (W.D.N.Y. 2015); *see also United States v. Hoey*, No. S3 11-cr-337 (PKC), 2014 U.S. Dist. LEXIS 91093 at *8 (S.D.N.Y. Jul. 2, 2014) (same); *United States v. Kasper*, No. 10CR813S, 2011 U.S. Dist. LEXIS 152388 at *20 (W.D.N.Y. Jun. 20, 2011) (same).  When the prosecution misleadingly instructs the grand jury, such error can infringe upon the independence of the grand jury; dismissal of an indictment is appropriate if the grand jury received misleading instructions and the error "substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  *United States v. Navarro*, 608 F.3d 529, 539 (9th Cir. 2010) (relying on *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988)); *see also, e.g., Caruto*, 663 F.3d at 399; *United States v. Bowling*, No. 7:14-CR-98-D, 2015 U.S. Dist. LEXIS 70802 at *22-23 (E.D.N.C. May 26, 2015); *United States v. Stevens*, 771 F. Supp. 2d 556, 567-68 (D. Md. 2011); *United States v. Cerullo*, No. 05-cr-1190, 2007 U.S. Dist. LEXIS 101358 at *8-9 (S.D. Cal. Aug. 28, 2007).  To obtain a dismissal, the defendant need not show willful misconduct by the government.  *Stevens*, 771 F. Supp. 2d at 568 ("This is not a case in which the Government attempted to affirmatively mislead the grand jury to obtain an indictment — rather it is a case in which prosecutors simply misinstructed the grand jury on the law.  However, even in the absence of willful prosecutorial misconduct, 'a defendant is entitled to dismissal of an indictment.'").

**B.     The Prosecution's Erroneous ███████████████████ ████████ Require Dismissal**

Each of the crimes charged in the indictment require the government to prove

that FedEx acted with guilty knowledge and specific intent.  "To prove a conspiracy

under 18 U.S.C. § 371, the government must establish: (1) an agreement to engage in

criminal activity, (2) one or more overt acts taken to implement the agreement, and (3)

the requisite intent to commit the substantive crime."  *United States v. Montgomery*, 384

F.3d 1050, 1062 (9th Cir. 2004) (citation and internal quotation marks omitted); *see also*

Ninth Circuit Manual of Model Criminal Jury Instructions, Instruction 8.20.  Conviction of

conspiracy to violate the Controlled Substances Act under 21 U.S.C. § 846 would

require proof of the same specific intent, *see, e.g., United States v. Reed*, 575 F. 3d

900, 923 (9th Cir. 2009); Ninth Circuit Manual of Model Criminal Jury Instructions,

Instruction 9.19, as would conviction for conspiracy to launder money under 18 U.S.C.

§ 1956, *see, e.g., United States v. Gurolla*, 333 F.3d 944, 957 (9th Cir. 2003).  Finally,

as this Court recognized in *United States v. Napoli*, No. 10-cr-642 (CRB), conviction for

illegal distribution of a controlled prescription medication under 21 U.S.C. § 841 requires

proof that "the defendant knew and intended that the delivery be made by means of a

prescription issued by a physician not for a legitimate medical purpose and not in the

usual course of professional practice."  *See Napoli* Docket #1056 at 25 (2012).

But the defendants in this case are corporations.  How can a corporation be said

to have knowledge and specific intent?  "[A]s a general rule a corporation is liable . . .

for the acts of its agents in the scope of their employment."  *United States v. Hilton

Hotels Corp.*, 467 F.2d 1000, 1007 (9th Cir. 1972); *accord United States v. Potter*, 463

F.3d 9, 25 (1st Cir. 2006).

1
2
3
4          ███████████████████████████ misstated the law about both corporate knowledge and

5     intent, and the misstatements were severely prejudicial.

6          1.    A "Collective Knowledge" Theory is Not a Proper Basis for Liability

7          A few courts have suggested that corporate criminal culpability may encompass

8     a "collective knowledge" theory of proof.  In *United States v. Bank of New England,*

9     *N.A.*, 821 F.2d 844 (1st Cir. 1987), for example, the First Circuit Court of Appeals stated

10    that

11
12
13
> [c]orporations compartmentalize knowledge, subdividing the elements of
> specific duties and operations into smaller components.  The aggregate of
> those components constitutes the corporation's knowledge of a particular
> operation.  It is irrelevant whether employees administering one component
> of an operation know the specific activities of employees administering
> another aspect of the operation:
>
>> [A] corporation cannot plead innocence by asserting that the
>> information obtained by several employees was not acquired
>> by any one individual who then would have comprehended its
>> full import. Rather the corporation is considered to have
>> acquired the collective knowledge of its employees and is held
>> responsible for their failure to act accordingly.

21    *Id.* at 856 (quoting *United States v. T.I.M.E.-D.C., Inc.*, 381 F. Supp. 730, 738-39 (W.D.

22    W. Va. 1974)).

23         The *Bank of New England* holding has been the subject of considerable

24    subsequent criticism.  As one district court recently explained, "commentators and later

25
26
27    ―――――――――――――――――――
      2 ████████████████████████████████████
28    ██████████████████████████████████████
      ████████████████ FedEx does not seek to challenge that articulation in this motion.

decisions have undermined the force of *Bank of New England*'s collective knowledge doctrine" by showing that it has applied only in cases of willful blindness — even in civil litigation.  *Ginena v. Alaska Airlines, Inc.*, No. 2:04-CV-01304-MMD-CWH, 2013 U.S. Dist. LEXIS 86162 at *22-23 (D. Nev. June 19, 2013) (citing Thomas A. Hagemann & Joseph Grinstein, *The Mythology of Aggregate Corporate Knowledge: a Deconstruction*, 65 GEO. WASH L. REV. 210, 226-36 (1997)); *see also, e.g., Staub v. Proctor Hospital*, 562 U.S. 411, 418 (2011) (questioning whether, under the federal common law of torts, "the malicious mental state of one agent cannot generally be combined with the harmful action of another agent to hold the principal liable for a tort that requires both"); *United States v. Science Applications Int'l Corp.*, 626 F.3d 1257, 1275-76 (D.C. Cir. 2010) (refusing to apply a "collective knowledge" theory in a False Claims Act case).

As the *Ginena* court observed:

> [T]he collective knowledge doctrine conflates "knowing" culpability with "negligent" culpability, at least when applied to corporate wrongdoing.  For instance, the collective knowledge doctrine favors liability where various corporate agents have different pieces of information, but the corporation was negligent in compiling these pieces of information.  But then liability is premised on negligence, not on the "intentional" conduct that is at the heart of the higher levels of mens rea, knowing and willful conduct.

2013 U.S. Dist. LEXIS 86162 at *24 (citations omitted).

The Ninth Circuit has never held that corporate knowledge may be proved by aggregation in a criminal case.  Indeed, two recent civil cases demonstrate that our court is very unlikely to approve a "collective" mechanism for proving knowledge.  In *Glazer Capital Management, LP v. Magistri*, 549 F.3d 736 (9th Cir. 2008), the question was whether, under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), a civil complaint could pass muster when it attempted to plead the necessary scienter

through a "collective" theory.  *Id.* at 743.  The *Glazer* court noted that some circuits have disallowed such an approach, *id.* (citing *Southland Securities Corp. v. INSpire Insurance Solutions Inc.*, 365 F.3d 353, 363-64 (5th Cir. 2004) and *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1018 (11th Cir. 2004)), but ultimately declined to decide the question.  *Id.* at 745.  Nonetheless, the court discussed the manner in which the doctrine might conceivably be applied to some civil complaints: "there could be circumstances in which a company's public statements were so important and so dramatically false that they would create a strong inference that at least some corporate officials knew of the falsity upon publication."  *Id.* at 744.

In *Cohen v. NVIDIA Corp. (In re NVIDIA Corp. Sec. Litig.)*, 768 F.3d 1046 (9th Cir. 2014), the court again recognized, without deciding, that a collective mechanism for *pleading* scienter could theoretically be available.  *Id.* at 1063.  Again, however, the court found the mechanism inapplicable in the case before it because the allegations in the complaint failed to "create an inference of scienter that at least some corporate officials knew of the falsity upon publication."  *Id.*

These authorities are important because, "[t]o plead scienter properly under the PSLRA, [the plaintiff is] required to 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Glazer*, 549 F.3d at 742 (quoting 15 U.S.C. § 78u-4(b)(2)).  The *Glazer* and *NVIDIA* courts recognized that, in theory, such an inference might be raised *in a complaint* through the use of a collective scienter theory.  *NVIDIA*, 768 F.3d at 1066; *Glazer*, 549 F.3d at 744.  However, the Ninth Circuit's decisions in each case rested on the assumption that the *ultimate proof* that the defendant corporation acted with the necessary scienter would

be a demonstration that "*corporate officials knew of the falsity*" alleged.  *NVIDIA*, 768 F.3d at 1066 (emphasis added); *Glazer*, 549 F.3d at 744 (same).

This Court should apply the lessons of *Glazer* and *NVIDIA*.  It would make no sense for criminal liability to be susceptible to broader proof than civil liability. Corporate knowledge should not be proved through aggregation in a criminal case.  The government's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ was inappropriate and incorrect.[3]

> ## 2.   No Court Has Ever Permitted Specific Intent to be Proved Through Aggregation

Even if corporate *knowledge* could be proved by aggregating different bits of employees' knowledge, no court has held that a corporation may be found to have *specific intent* based on a "collective intent" theory.  *See Saba v. Compagnie Nationale Air Fr.*, 78 F.3d 664, 670 n.6 (D.C. Cir. 1996) (citing *Bank of New England* for the proposition that "corporate knowledge of certain facts [may be] accumulated from the knowledge of various individuals, but the proscribed intent (willfulness) [must] depend[ ] on the wrongful intent of specific employees"); *see also United States v. Philip Morris USA Inc.*, 566 F.3d 1095, 1122 (D.C. Cir. 2009) (describing as "dubious" the "collective intent" doctrine in a civil RICO action seeking to establish that the defendants possessed the specific intent to defraud consumers); *Gutter v. E.I. DuPont de Nemours*,

---

[3] As the Court may be aware, Judge Thelton Henderson recently had occasion to address a similar issue in the *PG&E* matter.  *See United States v. PG&E*, No. 14-cr-00175-THE, 2015 U.S. Dist. LEXIS 171577 (N.D. Cal. Dec. 23, 2015).  The *PG&E* court relied on *Bank of New England* for the proposition that "[a] collective knowledge instruction is entirely appropriate in the context of corporate criminal liability."  *Id.* at *8 (quoting *Bank of New England*, 821 F.2d at 856).  For the reasons discussed above, we respectfully disagree with Judge Henderson on this point.

124 F. Supp. 2d 1291, 1311 (S.D. Fla. 2000) ("The knowledge necessary to form the requisite fraudulent intent must be possessed by at least one agent and cannot be inferred and imputed to a corporation based on disconnected facts known by different agents."); *United States v. LBS Bank-New York, Inc.*, 757 F. Supp. 496, 501 n.7 (E.D. Pa. 1990) (stating that "specific intent cannot be aggregated"); *First Equity Corp. v. Standard & Poor's Corp.*, 690 F. Supp. 256, 260 (S.D.N.Y. 1988) ("A corporation can be held to have a particular state of mind only when that state of mind is possessed by a single individual.").  Indeed, as the *Saba* court observed, even the *Bank of New England* court did not approve a collective intent theory.  There, the district court had instructed that "[t]he [defendant] bank is deemed to have acted willfully if one of its employees in the scope of his employment acted willfully."  821 F.2d at 855.  In discussing the "Evidence of Willfulness," the court of appeals focused on the *mens rea* of specific bank employees.  *Id.* at 857.

The holdings of all of these courts are eminently reasonable.  Adding together "bits" of affirmative intent would be nonsensical.  If no person within a corporation has evil intent, then all of the employees must have non-culpable intents.  Yet "a corporation can act only through its agents and employees."  *Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985).  To find that a corporation comprised entirely of employees with non-culpable intents nonetheless itself somehow had evil intent would be to dispense with the basic requirement that the prosecution prove each element of a charged criminal offense.  *See, e.g., In re Winship*, 397 U.S. 358, 364 (1970); *Mejia v. Garcia*, 534 F.3d 1036, 1042 (9th Cir. 2008).

Judge Henderson's recent ruling concerning collective intent in the *PG&E* matter

reveals the outside boundary to which the theory could rationally be taken.  Relying on *T.I.M.E.-D.C.*, the *PG&E* court found that *willfulness* may be proved through aggregation, but only in certain circumstances: "[W]here a corporation has a legal duty to prevent violations, and the knowledge of that corporation's employees collectively demonstrates a failure to discharge that duty, the corporation can be said to have 'willfully' disregarded that duty."  2015 U.S. Dist. LEXIS at *14.  The *PG&E* and *T.I.M.E.-D.C.* rulings are the closest any court has come to approving a "collective intent" theory.  But even those courts would not approve a collective intent theory of prosecution in a *specific intent* case like the one at bench.  The reasoning of both cases depends wholly on the fact that the charged crimes involved violations of an affirmative legal duty, and thus the *mens rea* at issue — willfulness — could be proved by knowing failure to discharge the duty.

Our case is not like *PG&E* or *T.I.M.E.-D.C.*  Each of the charged crimes in the case at bench requires proof of specific intent.  None involve an affirmative legal duty to prevent violations.  Indeed, to the contrary, as discussed below, this case was charged despite specific statutory exemptions that expressly *relieve* the corporate defendants of any such duty.  *See* 21 U.S.C. § 373(a) and 822(c)(2).  Even under the reasoning of *PG&E*, then, the government's instruction concerning "collective" intent was erroneous.

      **3.**    **There Is Grave Doubt that the Grand Jury's Decision to Indict Was Free from the Substantial Influence of the Instructional Errors**

As discussed, the Court must dismiss an indictment when an error in the underlying grand jury proceeding "substantially influenced the grand jury's decision to indict or if there is grave doubt that the decision to indict was free from the substantial influence of such violations."  *Navarro*, 608 F.3d at 539.  That standard is satisfied here.

First, the defendants in this case are corporations.  Each charge in the indictment requires a showing that the corporations had knowledge and specific intent.  As the Court has observed, it was the government that "decided to go criminally," Dkt. 122 (8/19/2015 Tx) at 11:10, and it likewise decided to charge FedEx with specific intent crimes.  Having done so, the demanding requirements of knowledge and specific intent lie at the heart of this case — and the principles that govern what constitutes corporate knowledge and intent were entirely fundamental to the grand jury's understanding of the matter.  A misunderstanding about this bedrock principle cannot help but substantially influence the grand jury's decision.

Second, the government has conceded in court filings that it never determined "the identity of the ultimate decision-maker responsible for the conduct alleged in this case," and suggested that this was the reason it did not charge individuals along with the corporate defendants.  Dkt. 127 at 2 n.1; *see also* 1/13/2016 Govt. Mtn. for Disclosure of Certain Information.  FedEx denies that it committed any crimes.  In any event, however, the government's concession is a vital one in the context of the instructional errors discussed above.  As we have shown, under the proper legal regime, the government should have been required to demonstrate that one or more FedEx employees possessed the necessary guilty knowledge and guilty intent.  Yet the government concedes that, even now, it has identified no such person.  Before the grand jury, the government was able to elide this problem — which should have been fatal — by giving erroneous instructions.  ██████████████████ ████████████████████████████████████████ the prosecution was able to obtain an indictment despite its failure to identify a culpable employee.  The

Court should have "grave doubt" that the grand jury's decision to indict was free from the influence of the government's erroneous instructions ███████████████████ ██ .

**C.    The Prosecution's Incomplete and Misleading Instructions ███████ ███████████████████████████████  Require Dismissal**

The government further misled the grand jury about the fundamental legal principles governing FedEx's potential culpability by entirely omitting to mention the common carrier exemptions enshrined in 21 U.S.C. §§ 373(a) and 822(c)(2).

**1.    The Government Misled the Grand Jury ██████████ ████████████████████████████████████████ ████████████████████**

This Court previously asked the prosecution to supply any cases in which an otherwise innocent transportation company has been prosecuted for the transportation and delivery of illegal drugs.  The government found no examples.  *See* Dkt. 127 (government's filing); 140 (FedEx response).  The absence of prior prosecutions is hardly surprising.  The law recognizes that intermediaries and carriers, which are generally indifferent to the contents of what they transmit, are not criminally culpable simply because wrongdoers use their services.

The Seventh Circuit articulated the principle in *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), a case involving a civil lawsuit against GTE, a corporate internet hosting service that allegedly hosted websites that sold improperly-obtained videos:

> GTE's activity does not satisfy the ordinary understanding of culpable assistance to a wrongdoer, which requires a desire to promote the wrongful venture's success.  A web host, like a delivery service or phone company, is an intermediary and normally is indifferent to the content of what it transmits.  Even entities that know the information's content do not become liable for the sponsor's deeds.  Does a newspaper that carries an

advertisement for "escort services" or "massage parlors" aid and abet the crime of prostitution, if it turns out that some (or many) of the advertisers make money from that activity? How about Verizon, which furnishes pagers and cell phones to drug dealers and thus facilitates their business? GTE does not want to encourage the surreptitious interception of oral communications, nor did it profit from the sale of the tapes. It *does* profit from the sale of server space and bandwidth, but these are lawful commodities whose uses overwhelmingly are socially productive. That web hosting services likewise may be used to carry out illegal activities does not justify condemning their provision whenever a given customer turns out to be crooked . . . . Just as the telephone company is not liable as an aider and abettor for tapes or narcotics sold by phone, and the Postal Service is not liable for tapes sold (and delivered) by mail, so a web host cannot be classified as an aider and abettor of criminal activities conducted through access to the Internet. Congress is free to oblige web hosts to withhold services from criminals (to the extent legally required screening for content may be consistent with the first amendment), but [Congress did not do so].

*Id.* at 659 (citation omitted, emphasis in original); *see also, e.g., United States v. Giovannetti*, 919 F.2d 1223, 1227 (7th Cir. 1990) ("[I]t is not the law that every time a seller sells something that he knows will be used for an illegal purpose he is guilty of aiding and abetting, let alone of actual participation in the illegal conduct.").

The case at bench fits neatly into the scenario described by the *GTE* court. It is undisputed that FedEx provides shipping services to the public at large, and that FedEx charges its customers for its services. Online pharmacy shippers allegedly used FedEx's services to transport medications that had been prescribed outside the usual course of professional medical practice and not for a legitimate medical purpose. But FedEx did not derive profit from those alleged crimes other than the usual transportation fees and accessorial charges it earns from the provision of shipping services to any customer — shipping services that "overwhelmingly are socially productive."

As the *Doe* court observed, Congress may choose to impose upon an intermediary or carrier an affirmative duty to inquire into the lawfulness of a customer's

activities.  347 F.3d at 659.  In the pharmaceutical context, however, there is more than just an absence of legislation imposing a duty of inquiry upon carriers who transport pharmaceuticals.  Instead, Congress took the opposite route: it established specific exemptions relieving carriers of any such duty under the Controlled Substances Act ("CSA") or the Food, Drug and Cosmetic Act ("FDCA").  21 U.S.C. § 822(c)(2) provides that a common carrier "shall not be required to register and may lawfully possess any controlled substance or list I chemical under this subchapter" if the carrier's "possession of the controlled substance or list I chemical is in the usual course of his business or employment."  21 U.S.C. § 373(a) similarly provides that carriers "shall not be subject to the other provisions of [the FDCA] by reason of their receipt, carriage, holding or delivery of . . . drugs . . . in the usual course of business as carriers . . . ."

FedEx recognizes that the parties have a dispute about the ultimate meaning of those exemptions, and that the Court declined to grant a Rule 12 motion based on the common carrier exemptions.  *See* Dkt. 105.  But the exemptions must have *some* meaning: "[i]t is a fundamental canon of statutory construction that a statute should not be construed so as to render any of its provisions mere surplusage."  *United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003).  ███████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████

This incomplete presentation of the law resulted in a terribly misleading impression.  The government essentially instructed the grand jury that, ███████████████████

1

2

3

4                                                But that is simply not so.  As the

5  *GTE* court taught, the government's simplistic assertion would not hold even in the

6  absence of the common carrier exemptions enshrined in Title 21.  In light of those

7  exemptions, which each expressly permit carriers to transport medications in the "usual

8  course of . . . business," *see* 21 U.S.C. §§ 373(a) and 822(c)(2), a fair discussion of

9  FedEx's potential culpability would have to acknowledge that a carrier is not criminally

10  liable if it was merely indifferent to the contents of pharmacy packages — or treated

11  those packages as it would any other package in the usual course of its business.  *See,*

12  *e.g.,* FDA Compliance Guide § 100.500 (1989) ("The proviso in section 703 of the

13  Federal Food, Drug, and Cosmetic Act, grants *immunity from prosecution* to carriers by

14  reason of their receipt, carriage, holding, or delivery of products subject to the Act in

15  their usual course of business as carriers." (emphasis added)).

16          In a previous filing, the government argued that it "was not required to present

17  exculpatory evidence to the grand jury."  Dkt. 146 at 15.  But this is not about evidence

18  — it is about the *law*: the government misled the grand jury about the line that separates

19  criminal culpability from innocent conduct.  Understanding the location of that line was

20  fundamental to the grand jury's task, and it was certainly not an understanding that a

21  juror could be expected to reach on her own.  As the Court recently recognized, this is a

22  "unique . . . prosecution."  Dkt. 165 at 8.  The government has never before sought to

23  prosecute an "otherwise innocent" common carrier, *see* Dkt. 122 at 12, for allowing

24  medications dispensed by state-licensed and DEA-registered pharmacies to pass

25

26

27

28

through its system.  Given the unique posture of the case and the unusual legal

principles in play, it was incumbent upon the government, if it undertook to explain the

law, to explain it in full.  *See Smith*, 105 F. Supp. 3d at 260 (stating that "incomplete"

instructions to the grand jury may give rise to error); *Hoey*, 2014 U.S. Dist. LEXIS 91093

at *8 (same); *Kasper*, 2011 U.S. Dist. LEXIS 152388 at *20 (same); *cf. also, e.g., SEC

v. Alexander*, No. 10-CV-04535-LHK, 2015 U.S. Dist. LEXIS 93476 at *12-13 (N.D. Cal.

Jul. 15, 2015) (failure to disclose material information may make an affirmative

statement misleading).  The government plainly did not do so.

> **2.**      **There Is Grave Doubt that the Grand Jury's Decision to Indict Was Free from the Substantial Influence of the Error**

The culpability of a common carrier for shipping pharmaceuticals is not a

tangential issue — it goes to the very heart of this case.  When the prosecution gives a

misleading instruction concerning such a central matter, the error must give rise to a

grave doubt that the grand jury's decision to indict was not influenced by the error.  *See,

e.g., Stevens*, 771 F. Supp. 2d at 566-67; *Cerullo*, 2007 U.S. Dist. LEXIS at *9-11.

Furthermore, prejudice may be demonstrated in the grand jury context by

considering the cumulative impact of multiple prosecutorial errors.  *See United States v.

Samango*, 607 F.2d 877, 884 (9th Cir. 1979); *United States v. Breslin*, 916 F. Supp.

438, 446 (E.D. Penn. 1996).  Here, the prosecution's errors compounded one another.

████████████████████████████████████████ impermissibly broadened the proof

available for the prosecution's case.  ██████████████████████████████

████████████ simultaneously lowered the bar that such evidence would have to

clear to demonstrate that a crime had been committed.  Together, these errors almost

certainly influenced the grand jury's decision.

III.     **CONCLUSION**

For all of the above-stated reasons, the Court should dismiss the indictment against FedEx.

Dated:  February 26, 2016

Respectfully submitted,                          ARGUEDAS, CASSMAN & HEADLEY, LLP


By: _____/s/_____
                    Raphael M. Goldman
                    803 Hearst Avenue
                    Berkeley, CA 94710
                    (510) 845-3000

                    Counsel for Federal Express
                    Corporation, FedEx Corporation and
                    FedEx Corporate Services, Inc.