IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FEDEX CORPORATION, et al.,<br><br>　　　　Defendants.　　　　　　　／ | No. C14-00380 CRB<br><br>**ORDER RE MOTION TO DISMISS COUNTS DUE TO EXPIRATION OF THE STATUTE OF LIMITATIONS** |

　　　FedEx has moved to dismiss a number of the counts pending against two of its corporate entities in this case as barred by the statute of limitations. See Motion (dkt. 60). In response, the government requests relief that it concedes is "unprecedented." See Hearing Transcript (dkt. 229) at 4. The government entered the name of the wrong defendant in a tolling agreement, and now—in the context of a criminal prosecution—it requests that the Court cross out the name of the defendant who signed the tolling agreement and replace it with the name of a defendant who did not. No criminal case, the government admits, supports this course of action. The Court is not surprised. Nevertheless, the government argues that FedEx should have perceived that the government intended to bind a different defendant to the agreement, and thus FedEx should have corrected the government's mistake. The government appears to have forgotten that in a criminal prosecution, the defendant is not required to make the government's case. FedEx's corporate structure is clearly described on numerous public websites—including sec.gov—which the government could have used to check its work in drafting the tolling agreement that underpins this novel prosecution. But the government did not check its work. Accordingly, for these reasons and those set forth below, the Court GRANTS FedEx's motion to dismiss.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The government indicted three FedEx defendants here: FedEx Corporation (FedEx Corp.), Federal Express Corporation (FedEx Express), and FedEx Corporate Services, Inc. (FedEx Services) (collectively, "Defendants" or the "FedEx Entities"). Defendant FedEx Corp. is a parent company, and FedEx Express and FedEx Services are its subsidiaries. Opp'n at 3; Supp. Klank Decl. (dkt. 204) ¶¶ 2, 4 and Ex. A at 1, 24. Between January 2010 and October 2011, the government entered into four tolling agreements (the "Agreements") with attorneys for one or another of the FedEx Entities, ostensibly tolling the statute of limitations from January 1, 2010 through June 30, 2012. Opp'n at 6–13.

| Date Signed | Effective Date | End Date |
|---|---|---|
| February 18, 2010 | January 1, 2010 | December 31, 2010 |
| February 15, 2011 | January 1, 2011 | June 30, 2011 |
| May 9, 2011 | June 1, 2011 | December 31, 2011 |
| Sept. 24, Oct. 3, 2011 | January 1, 2012 | June 30, 2012 |

Each agreement identified the parties as the United States and "Federal Express Corporation (FedEx) and its subsidiaries." Id. at 7. Each agreement also provided that it applied to "any and all federal criminal offenses relating to activities engaged in by any FedEx employee or corporate entity concerning the shipment of pharmaceuticals and/or collection of payment related to the operation of Internet pharmacies," or substantively similar language. Goldman Decl. (dkt. 162) Ex. A at ¶¶ B, C. The government suspended its investigation for at least part of the two-and-a-half years covered by the tolling agreements and did not seek indictment during that time, likely to foster negotiations involving a non-prosecution agreement. Id. at 10, 13; Ault Decl. ¶ 32.

During the tolled period, the government subpoenaed information and documents from a number of persons affiliated with the FedEx entities. See Ault Decl. ¶ 4. The following is a brief synopsis of the evidence the government offers to show that (1) the FedEx Entities had the opportunity to either correct the government's misapprehension regarding FedEx's corporate structure; (2) the government incorrectly believed that FedEx Express was the parent company and the other two entities were subsidiaries; or (3) FedEx attorneys led the government to believe it had named the correct party in the agreements:

- Blumberg, attorney for "FedEx Express," produced documents for employees associated with FedEx Corp. and FedEx Services pursuant to a 2008 subpoena directed to "FedEx." Ault Decl. ¶ 6.

- Blumberg's colleague agreed to answer questions regarding FedEx Services employees. Id. ¶ 9.

- Blumberg sent a letter regarding documents he would produce pertaining to employees of all three entities, and describing "performance evaluations" for several employees of a "FedEx Express operating company." Id. Ex. F.

- Blumberg explained to AUSA Ault that FedEx Ground was a separate operating company, agreed that a separate subpoena for FedEx Ground was unnecessary, but made no such remark regarding FedEx Corp. or FedEx Services. Id. ¶ 14.

- Koehler of Sidley Austin did not take any issue with the draft of any tolling agreement naming "FedEx Express Corporation (FedEx) and its subsidiaries" as a party to the agreement. Id. ¶ 20, 24. Nor did she or any other attorney suggest that FedEx Corp. and FedEx Services were not a party to the agreements signed. Id.

- Another FedEx attorney, Thomas Green, sent a letter stating that FedEx Corporation had inadvertently produced privileged documents, although Blumberg had produced those documents on behalf of "Federal Express Corporation." Id. Exs. H and C ¶¶ 8 and 17. Green then referred to his client as "FedEx," "Federal Express Corporation," or "Federal Express." Ault Decl. ¶ 17.

- Koehler signed a second tolling agreement stating that the parties "enter[ed] into [it] to provide the parties with the opportunity to continue on-going discussions and to provide FedEx, and their counsel an opportunity to present any information they believe may be relevant to the Office's decision-making process regarding FedEx." Goldman Decl. Ex. A at 1 (emphasis added). The second agreement would "effect a waiver and tolling of the statute of limitations . . . for any violation of federal law described [in the following section]." The second agreement carried much of the same language as the first agreement. Id. Exs. B, C (emphasis added).

- The government requested documents from and interviewed employees who worked for all three entities, which the defense attorneys produced on behalf of "Federal Express Corporation." Ault Decl. ¶ 22–23.

3

- In a document produced by FedEx Express, the entities' corporate structure showed a "FedEx Corporation" at the top, and a "FedEx Express" subsidiary, but no "Federal Express Corporation." Id. Ex. J.

- A white paper Koehler and Green provided to Ault (recommending against seeking an indictment) alternatively used the names "FedEx," "Federal Express Corporation (FedEx Express)," and "the Company" to refer to the FedEx organization. Id. ¶ 23.

- Green used the terms "FedEx Corporation," "Federal Express Corporation," and "FedEx" to refer to his client while negotiating the June-December 2011 tolling agreement. Id. ¶¶ 25–26.

The FedEx Entities have numerous public disclosures since the inception of the government's investigation regarding their corporate structure, all of which are publicly available. These disclosures include 10-Q and 10-K reports with the SEC. Supp. Klank Decl. ¶ 5 & Ex. B; ¶ 4 & Ex. A; ¶ 7 & Ex. D, ¶ 8 & Ex. E.; ¶ 10 & Ex. G; ¶ 11 & Ex. H; ¶ 13 & Ex. J. Those filings state, among other things, that FedEx Corporation held "primary operating companies includ[ing] Federal Express Corporation ('FedEx Express') . . . and . . . FedEx Corporate Services ('FedEx Services')." See Supp. Klank Decl. Ex. A at 24.

Both grand jury subpoenas in this case went to the address of FedEx Express, not FedEx Corp. See Ault Decl. Ex. A. In July 2011, the government sent FedEx counsel a draft non-prosecution agreement that would have applied to "FedEx Corporation . . . including FedEx Express . . . and any and all subsidiaries of FedEx Corporation." Ault Decl. ¶ 29. In October 2012, Cristina Arguedas, another attorney for FedEx Express, told the government that FedEx declined to enter into a non-prosecution agreement. Ault Decl. ¶ 31.

In July 2014—six years after the first subpoena issued in 2008—the government filed an initial indictment against three defendants: FedEx Corporation, FedEx Express, Inc., and

4

FedEx Corporate Services. See Indictment (dkt. 1). The government states that it first learned of the naming misunderstanding at issue here when Arguedas filed Defendants' Rule 12.4 disclosures eleven days later. In August 2014, the grand jury issued a superseding indictment that set forth charges against FedEx Corporation, Federal Express Corporation, and FedEx Services. See Superseding Indictment (dkt. 28).

Counts Two through Twelve, Fourteen, and Fifteen all allege conduct that concluded before July 2009, five years before the government filed its initial indictment:

- Counts One, Eleven, and Twelve (for violations of 21 U.S.C. § 846, 18 U.S.C. § 371, and 18 U.S.C. § 1956, respectively) allegedly occurred on February 20, 2008. See Mot. at 2–3.

- Counts Two through Ten (for violations of 21 U.S.C. § 841) allegedly occurred between July 19 and July 27, 2008. Id.

- Counts Fourteen and Fifteen (for violations of 21 U.S.C. § 841) allegedly occurred on February 7, 2008 and August 15, 2008, respectively. Id.

## II. LEGAL STANDARD

The statute of limitations for federal non-capital crimes is generally five years. See 18 U.S.C. § 3282. "A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12 also directs parties to raise a "defect in indictment" before trial if the motion "can be determined on the merits." See Fed. R. Crim. P. 12(3)(3) & (b)(3)(B).

Courts may look to "general principles for interpreting contracts" in reviewing tolling agreements. See Saavedra v. Donova, 700 F.2d 496, 498 (9th Cir. 1983). The government, as the drafter here, is ordinarily held to the agreement's literal terms. See United States v. Anglin, 215 F.3d 1064, 1067 (9th Cir. 2000) (discussing plea agreements); United States v.

Johnson, 1099 F.3d 1015, 1020 (9th Cir. 1999).  A court may hold an evidentiary hearing on a motion to dismiss an indictment when a party "allege[s] with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist."  United States v. Cano-Gomez, 460 Fed. App'x 656, 657 (9th Cir. 2011).

## III.     DISCUSSION

FedEx Corp. and FedEx Services bring this Motion to dismiss the counts listed above, arguing that they were never named in the relevant tolling agreements.  They further assert that, contrary to the government's belief, FedEx Express was not the parent company that held the other two defendant entities as subsidiaries.  See generally Mot.  Defendants thus argue that the tolling agreements do not bind them, and they seek dismissal because the fourteen counts at issue all involve acts that occurred five years before the indictment.  Id.

The government responds that it thought the tolling agreements bound all the FedEx Entities.  See generally Opp'n.  According to the government, the FedEx Entities and their attorneys had many opportunities to either correct or clarify the record, it was their duty to do so, and their failure constitutes a bad faith or fraudulent basis for the Court to reform the language of the agreements to effect their "intended" meaning—i.e., that the agreements tolled the statute of limitations as to all counts for all the relevant FedEx Entities, regardless of which criminal defendant actually signed the agreements.  The government also suggests that by FedEx's attorneys engaged in gamesmanship and only disclosed the government's mistake after the statute of limitations had lapsed.  Id.

Both sides agree that the parties to the tolling agreements were FedEx Express Corporation and the United States.  See Mot. at 3; Opp'n at 1.  The parties further agree that

6

the alleged violations set forth in counts Two through Twelve, Fourteen, and Fifteen occurred more than five years ago. See Mot. at 2–3; Opp'n at 14. Finally, although the parties agree that the rules of contract construction apply to tolling agreements in a criminal case, the government's contract arguments fail for two reasons: (1) they have not and cannot establish facts sufficient to meet the standard for reformation of the agreements; and (2) the government has not identified any criminal law authority supporting its requested relief. For the following reasons, the Court GRANTS FedEx's motion to dismiss.

### A. The Government Fails to Meet the Standard for Contract Reformation

The government argues that three attorneys for the FedEx Entities knew that either (1) the government was confused about the name of the parent corporation, (2) that the government, at the time of signing, believed it was binding all of the named entities, or both. Ault Dec. ¶ 16. According to the government, the FedEx attorneys who signed the various tolling agreements (Blumberg, Koehler, and Arguedas) received drafts of the agreements before signing, giving them an opportunity to correct any misconceptions. See, e.g., Opp'n at 6–7. The government seeks reformation either on the basis of mistake or for fraudulent misrepresentation by omission. The Court concludes that these arguments fail.

A unilateral mistake that is not known or suspected by a party is not a basis for reformation. See Bonaparte v. Allstate Ins. Co., 49 F.3d 486, 488 (9th Cir. 1994). To grant reformation, a court must find that a party's assent was induced by the other party's misrepresentations as to the terms or effect of the contract, and the party seeking reformation was justified in relying on the other party's misrepresentations. If only one party is mistaken and the other party has fraudulently misrepresented the writing's contents or effect, a court

7

may reform a contract so that it evidences the agreement of the parties.  See Restatement § 166.  The Restatement defines "misrepresentation" as an assertion that is not in accord with the facts, id. § 159, and equates a non-disclosure with an assertion where a party

> (b) knows that disclosure of the fact would correct a mistake of the other party as to a basic assumption on which that party is making the contract <u>and if non-disclosure . . . amounts to a failure to act in good faith and in accordance with reasonable standards of fair dealing</u>.
>
> (c) <u>knows that disclosure of the fact would correct a mistake</u> of the other party as to the contents or effect of a writing, evidencing or embodying an agreement in whole or in part.

Id. § 161(b) (emphasis added).  A misrepresentation is "fraudulent" when it is both (1) consciously false and (2) intended to mislead another.  Id. § 162 cmt. (a).

FedEx argues persuasively that the defendants here disclosed volumes of evidence from which the government could have ascertained FedEx's corporate structure, and asserts that the government cannot justify its confusion given that it had access to the considerable investigatory powers of a grand jury proceeding.  See generally Reply (dkt. 203).  All three FedEx Entities made public filings clearly describing FedEx's corporate structure, see generally Supp. Klank Decl. & Exs., and the government had extensive tools that it could have used to discover this information.  FedEx's corporate filings are available through sec.gov and FedEx's website—the government cannot reasonably argue that it was misled by FedEx's purported omissions.  The information presented in the government's declarations only shows that attorneys for FedEx Express knew that the government was investigating one or more FedEx entities; it does not prove that FedEx was hiding the ball, and it certainly does not justify the government's inattention to the details of the agreements that it drafted.

8

Next the government argues that because all the discovery conferences, investigation discussions, and other communications that it had with FedEx involved documents and persons across all the FedEx Entities, FedEx's attorneys knew or should have known that "FedEx Express Corporation" meant the parent "FedEx Corporation" in the tolling agreements. See Opp'n at 18. The government asserts that by the time the government signed the first tolling agreement in April 2010, FedEx knew the government's investigation was "not limited to Federal Express Corporation and its subsidiaries." See Opp'n. But knowledge that the government was investigating all three entities does not mean FedEx knew which parties the government intended to prosecute or which statutes it wanted to toll.

Furthermore, the government possesses substantial investigatory powers in an ongoing grand jury investigation. See, e.g., Blair v. United States, 250 U.S. 273, 280 (1919). FedEx correctly states that, had the government required more information on FedEx's corporate structure, it could have asked directly during any one of the communications cited in the government's opposition or sought the information via subpoena. Additionally, the government's declarations indicate that the it did take the time to get the defendants' names right in some legal documents: at least one non-prosecution agreement draft properly indicated that FedEx Corporation was the parent company. See Ault Decl. ¶ 29. The first indictment reflected the same. Indictment (dkt. 1).

Finally, the discussions the government had with the FedEx attorneys here do not reveal omissions or misdirection because a reasonable person would have assumed that the government was primarily focused on FedEx Express. The language "and its subsidiaries,"

in reference to FedEx Express, similarly would not have raised red flags—FedEx Express has many subsidiaries. Supp. Klank Decl. ¶ 16.

The government thus fails to establish (1) the basis for reformation under the Restatement given the government's inability to show that non-disclosure or bad faith gave rise to the government's mistake; (2) that the government's reliance on any purported misstatement or omission was justified; and (3) fraudulent misrepresentation given the facts indicating that FedEx lacked the intention to mislead.  Furthermore, no criminal law authority supports reformation of the tolling agreements at issue here, and the Court concludes that an evidentiary hearing is unnecessary given the available record.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS FedEx's motion to dismiss.

**IT IS SO ORDERED.**

Dated: March 18, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE